Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
* *Pro Hac Vice Paperwork Forthcoming*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No. _____ |
| v. | ) ) ) |  |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## <u>VERIFIED COMPLAINT FOR DECLARATORY</u>
## <u>AND INJUNCTIVE RELIEF</u>

COME NOW the Plaintiffs, Todd Yukutake and David Kikukawa, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendants as follows:

### I.      <u>PARTIES</u>

1.      Plaintiff Todd Yukutake is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

2.      Plaintiff David Kikukawa is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

3.      Defendant Clare E. Connors is the Attorney General of the State of Hawaii and is sued in her official capacity and is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii's on the registration of firearms. Defendant Connors may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813.

4.      Defendant City and County of Honolulu ("City") is a municipal corporation incorporated under the laws of the State of Hawaii.  The City is authorized by law to control and maintain the Honolulu Police Department, an agency of the city, who acts on the City's behalf in the area of law enforcement.  The City is therefore ultimately responsible for Honolulu Police Department ("HPD") and its actions, and therefore, must assume the risks incidental to the maintenance

2

of HPD, its employees, laws, customs and policies.  The City and County of Honolulu can be served by serving the Department of the Corporation Counsel, City and County of Honolulu, 530 S. King Street, Room 110, Honolulu, HI  96813.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

6.    Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.    STATEMENT OF FACTS

### a.    The Second Amendment

7.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

8.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

9.    Handguns are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

10.    Given the decision in *Heller*, Defendants may not infringe on the keeping and bearing of handguns, deprive individuals of the right to keep or carry

handguns in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment. *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015).

11.    Hawaii law requires the registration of all handguns. *See* H.R.S. 134-3.

12.    Hawaii law requires that "[e]very person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition." *See* HRS 134-3.

13.    Prior to purchasing a handgun, all persons must apply for a permit to acquire. *See* H.R.S. 134-2.

14.    As applied by the City and County of Honolulu, "[t]o obtain a Permit to Acquire a Firearm, or to register a firearm, you MUST appear in person at the Honolulu Police Department's Firearms Unit. Office hours are from 7:45 a.m. to 3:00 p.m., Monday through Friday excluding holidays." See http://www.honolulupd.org/information/index.php?page=gunmain (last visited 10/2/2019).

15.    The Records and Identification Division, Firearms Section is located at 801 South Beretania Street Honolulu, Hawaii 96813. *Id.*

16.    To obtain a permit to acquire, one must have the serial number, make and model of handgun one wishes to purchase.[1]

17.    This requires that an applicant go to the store selling the firearm to physically purchase (but not take possession of) the handgun so that the applicant can have the serial number, make and model of the handgun and so that the handgun at issue will not be sold to someone else.[2]

18.    Then an applicant must appear in person at HPD during their aforementioned business hours, and only during a weekday, to drop off the permit to acquire paperwork.

19.    Afterwards an applicant must wait fourteen calendar days, pursuant to Hawaii law, while HPD conducts the background check.

20.    Assuming the applicant passes the background check, the applicant has ten days after the fourteen days lapses to return to HPD to pick up his or her permit to acquire during the aforementioned business hours and to pick up the firearm from the store.  However, HPD states on its website that "[a]fter the 14-day waiting period

---

[1] Comparing a state with similarly strict firearm purchase laws, in New Jersey, a permit to purchase a pistol does not require that the make, model and serial number of a handgun be provided up front before the permit issues.  Additionally, New Jersey allows online application for the permit to purchase.  *See* https://www.njportal.com/NJSP/fars (last accessed 10/14/2019).

[2] If an applicant is denied a permit to acquire, the dealer usually refunds the price of the handgun minus a restocking fee of fifteen to twenty percent which the applicant loses.

the permit will be valid for only 6 calendar days.  Permits not picked up by the 6th day will be voided.  Applicants will need to reapply and go through another 14-day waiting period…"

*See*     http://www.honolulupd.org/information/index.php?page=gunmain     (last accessed 10/14/2019).

21.    HPD's website states that within five calendar days of the applicant retrieving the handgun from the gun store, applicants must return with their newly acquired handgun to HPD to allow HPD to inspect the handgun in order for HPD to complete the registration of the handgun.

> For in state registration, take your firearm in person to the Main Police Station Firearms Unit no later than 5 calendar days from a purchase or acquisition for registration. You need the following when you register your firearm:
>
> Valid photo identification
> Your original firearms permit
> Name, address, phone number of seller, in state registration only
> The firearm for inspection (In a gun case, unloaded)
> ***

http://www.honolulupd.org/information/index.php?page=gunmain     (last    visited 10/2/2019).

22.    Upon information and belief, HPD's policy, custom or law actually is shorter than what HPD states on its website for registration after the permit to acquire is issued and the applicant picks up his or her handgun from the dealer.  It is alleged that HPD only allows forty-eight (48) hours in which to register the handgun with

HPD.  This is shorter than the time period allowed by statute and there is no governmental interest in shortening the time period allowed by statute.

23.     A permit to acquire a rifle or a shotgun (long gun), however, is valid for one year from the date of issue and can be used repeatedly to purchase long guns for that one year from date of issue.  *Id*.

24.     And for long guns, HPD allows as "an option, long-gun applicants may have their processed permits mailed to them."  *Id*.  This is not an option for handguns and only further demonstrates that if HPD wanted to lessen the burden on applicants for handgun permits to acquire, it could simply mail (or transmit by other means) the permit to the applicant or directly to the dealer.

25.     Most adults eligible to own a firearm in Hawaii work during HPD's Firearms Unit Office business hours.

26.     Most people who wish to own a firearm, including the litigants in this matter, must take time off work to complete the lengthy application process.

27.     Once the 14-day waiting period lapses, HPD is capable of transmitting the approved permit to the gun dealer listed in the permit to acquire or the applicant which would eliminate the requirement for the applicant to take off work and physically appear at HPD to pick up the approved permit to acquire.

28.     Due to this, there is no government interest in requiring an applicant to return to HPD in order to pick up the permit to acquire.

29.     There is also an insufficient government interest in HPD maintaining the work-day times they are open and willing to receive applications and registration of these firearms rather than an equivalent amount of time during the times most people are available to appear at HPD without taking time off work.

30.     Opening the Firearms Unit's Office to include Saturday's and/or the evening is within HPD's budgetary constraints especially if the Firearms Unit closed its office for one business day a week in exchange for opening for one day on the weekend. The Firearms Unit's Office could decide which day of the week is the least busy day in which it typically handles applications, and then substitute a Saturday or even just maintain later hours to accommodate the applicants' needs and to lessen the burden on applicants' Second Amendment rights.

31.     Requiring Plaintiffs to file their permit to acquire paperwork during those limited business hours when people are typically at work rather than in the evening, on the weekends, by mail or online is not related to either an important or compelling government interest.

32.     Bringing in a firearm to HPD for registration during a workday typically requires an applicant to take time off of work and to drive home to retrieve the firearm, drive to HPD to register it, drive back home to secure the firearm, then drive back to work as most people, including Plaintiffs, are not able to bring a personal firearm to their workplace or want to leave it unattended in a parked vehicle.

33.     Further, a three-day holiday weekend makes it even more difficult to meet the arbitrary five-day deadline to register a firearm.  For example, if Monday is a holiday, and an applicant picks up a firearm on Friday evening after work, then the applicants only possible day to register the firearm is on Tuesday during the Firearm Unit's business hours.

34.     If an applicant's work schedule prevents him from registering the firearm in the five-day window, the applicant would be in violation of Hawaii law.

35.     There is no government interest in requiring applicants to bring their firearm to the station when they are already required to send all the firearm information to HPD *vis à vi*s the permit to acquire.

36.     Additionally, HPD has a custom, policy or practice that requires applicants to bring the permit to acquire back with the applicant when he or she registers the firearm with HPD.

37.     Plaintiff Yukutake appeared at HPD to register a handgun but had misplaced his permit to acquire.  HPD informed Plaintiff Yukutake that he needed the permit to acquire to register the handgun and that HPD would hold the firearm until he found the permit to acquire or reapplied for a permit.  HPD completed a police report and stored the firearm in the evidence room.

38.     After Plaintiff Yukutake found his permit to acquire, he returned to HPD the next day and retrieved his firearm.  If, however, the permit to acquire

expired after ten days, he would have to reapply for his permit to acquire and then wait, again, the fourteen (14) days for his waiting period and background check and go through the entire process over again.

39.    But, because the permit to acquire was issued by HPD, and HPD would have a copy of the permit to acquire, this custom, policy or practice that HPD maintains is unnecessary and there is no governmental interest in mandating that the applicant returns with his permit to acquire or must reapply for another permit to acquire.

40.    According to Dwayne Lim of Danger Close Tactical, a Federal Firearm Licensee (FFL), Mr. Lim signs the back of the permit to acquire a handgun along with writing the make, model, serial number, etc. to show HPD that he transferred the handgun to the purchaser.  For long gun permits, he does not sign the permit and instead notifies HPD that the long gun was transferred to the purchaser.

41.    Upon receipt of firearms from the manufacturer or distributor, FFLs transmit the firearm information to HPD.  As such, HPD already has this information before the firearm is purchased from the FFL.

42.    With regards to in-person registration, the District of Colombia previously had a similar requirement.

43.    In the District of Columbia's former code, it stated that "[t]he Metropolitan Police Department (MPD) can require a potential registrant to present

his firearm for inspection. D.C. Code § 7-2502.04(c)." *Heller v. Dist. of Columbia*, 801 F.3d 264, 285, 419 U.S. App. D.C. 287, 308, 2015.

44.     The MPD wanted to conduct a physical inspection to "verify that the application information is correct and that the firearm has not been altered." *Id.*

45.     The D.C. Circuit struck this requirement as violative of the Second Amendment.

46.     "[C]ommon sense suggests a person would not go to the trouble of obtaining a registration certificate for a weapon other than a weapon in his possession. On the contrary, common sense suggests that bringing firearms to the MPD would more likely be a threat to public safety; as Heller maintains, there is a 'risk that the gun may be stolen en route or that the [would-be registrant] may be arrested or even shot by a police officer seeing a 'man with a gun' (or a gun case).' *Heller v. Dist. of Columbia*, 801 F.3d 264, 277, 419 U.S. App. D.C. 287, 300, 2015 U.S. App. LEXIS 16632, *26, 92 Fed. R. Serv. 3d (Callaghan) 1039.

47.     For the same reasons, HPD's requirement that Plaintiffs and other similarly situated individuals bring their handguns to the station to register violates the Second Amendment.

48.     Even if this Court disagrees with the D.C. Circuit, the requirement for Plaintiffs and other similarly situated individuals to register their handguns during

business hours when people are typically at work rather than in the evening or on the weekends or even online is not sufficient tailored to serve a government interest.

### b. Plaintiff Todd Yukutake

49.    Plaintiff Yukutake was born and raised on the island of Oahu.

50.    Plaintiff Yukutake currently resides on Oahu.

51.    Plaintiff Yukutake is an honorably retired Army Captain after 20 years of service in the Army National Guard.

52.    Plaintiff Yukutake is employed as an armed protective security officer for a company that contracts with the federal government.

53.    In this capacity, Plaintiff Yukutake guards federal property.

54.    He is unable to take a personal firearm onto federal property and typically parks on federal property. In order to bring a firearm to HPD for registration during a workday, he must take time off of work, drive home to retrieve the firearm, drive to HPD to register it, drive back home to secure the firearm, then drive back to work.

55.    Plaintiff Yukutake is also a firearms instructor.

56.    Plaintiff Yukutake currently legally owns handguns.

57.    Plaintiff Yukutake routinely works during the time that HPD's Firearms Unit Office is open.

58.    Plaintiff Yukutake routinely must take time off work to purchase and register handguns.

59.    It is often difficult for Plaintiff Yukutake to take time off from work.

60.    Plaintiff Yukutake plans on purchasing additional handguns in the near future.

61.    Plaintiff Yukutake will be required to take additional time off work to do so.

62.    Plaintiff Yukutake is also currently trying to sell one of his handguns to a co-worker.

63.    His co-worker works during the time that HPD's Firearms Unit is open so Plaintiff Yukutake has been unable to sell him the handgun because of the HPD's Firearms Unit hours.

64.    Plaintiff Yukutake has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

65.    Plaintiff Yukutake has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

66.    Plaintiff Yukutake does not take illegal drugs or abuse alcohol.

### c.  Plaintiff David Kikukawa

67.    Plaintiff Kikukawa is employed as a Diver Medic and Lead Systems Operator for an emergency medicine and critical care facility.

68.     Plaintiff Kikukawa is also employed as the Director of Training for a firearms agency that sells firearms and provides training to the public as well as security companies charged with guarding federal and state assets.

69.     In order to bring a firearm to HPD for registration during a workday he must take time off work, drive home to retrieve the firearm, drive to HPD to register it, drive back home to secure the firearm, then drive back to work.

70.     Plaintiff Kikukawa currently legally owns handguns.

71.     Plaintiff Kikukawa routinely works during the time that HPD's Firearms Unit Office is open.

72.     Plaintiff Kikukawa must take time off work to purchase and register handguns.

73.     It is often difficult for Plaintiff Kikukawa to take time off from work and when Plaintiff does, Plaintiff is either using his personal time or a vacation day in order to take that time off.

74.     Plaintiff Kikukawa's position as a Diver Medic requires that he be on call for medical emergencies and maintain a thirty (30) minute response time to the hospital where he works. He may be called into work to assist with these medical emergencies that could mean the difference between life and death for his patients. These emergency treatments may make it impossible to register his newly purchased handgun within the time constraints that HPD requires.

75.   Plaintiff Kikukawa plans on purchasing additional handguns in the near future.

76.   Plaintiff Kikukawa will be required to take additional time off work to do so.

77.   Plaintiff Kikukawa has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

78.   Plaintiff Kikukawa has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

79.   Plaintiff Kikukawa does not abuse alcohol or use illegal drugs.

## COUNT I

## U.S. CONST., AMEND. II

80.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

81.   The Defendants' requirement that Plaintiffs bring their firearm to HPD's Firearms Unit to register them violates Plaintiff's Second Amendment rights.

82.   Defendants' implementation of Hawaii's permit to acquire requirements violates the Second Amendment because it is a significant impediment to handgun ownership and HPD's Firearms Unit could open on the weekends and/or later in the evening to ameliorate the burden on the Second Amendment rights of Plaintiffs and all those similarly situated.

83.    Defendants also have the capability to transmit electronically or by other means the permit to acquire directly to the dealer or to the applicant, as the case may be, instead of mandating that the applicant pick up the permit in person.

84.    Defendants' laws, customs and/or policies dictating that permits to acquire handguns are only valid for either ten days after issuance or six days after issuance is arbitrary and capricious, serves no substantial government interest and are not narrowly tailored where permits to acquire long guns are valid for one year from the date of issuance.

## COUNT II

## (DECLARATORY JUDGMENT)

85.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

86.    The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

87.    Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future in the form of a violation of their Second Amendment rights.

16

88.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

89.     This Court possesses an independent basis for jurisdiction over the parties.

90.     A judgment declaring that Defendants' requirement that Plaintiff bring their firearms to the station in order to register them violates the Second Amendment would be in the public interest.

91.     Defendants' implementation of Hawaii's permit to acquire requirements violates the Second Amendment because it is a significant impediment to handgun ownership and HPD's Firearms Unit could open on the weekends and/or later in the evening.

92.     Defendants also have the capability to transmit electronically or by other means the permit to acquire directly to the dealer or to the applicant, as the case may be, instead of mandating that the applicant pick up the permit in person.

93.     Defendants' laws, customs and/or policies dictating that permits to acquire handguns are only valid for either ten days after issuance or six days after issuance is arbitrary and capricious, serves no substantial government interest and are not narrowly tailored where permits to acquire long guns are valid for one year from the date of issuance and can be used to buy more than one long gun.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendants' requirement that firearm registration applicants bring their firearms to the station in order for them to be registered as applied to Plaintiffs and facially. In the alternative, if this Court finds that requirement constitutional, enjoining this requirement as currently applied to the extent that it requires the applicant to do so on weekdays during business hours;

2.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing HI Rev Stat §§ 134-2 and 134-3 as implemented by HPD as applied to Plaintiffs and to all other law abiding citizens to the extent that it requires applicants to submit and retrieve their permits to acquire during weekdays and only during business hours;

3.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing

the requirement that permits to acquire be retrieved in person from HPD as applied to Plaintiffs and all other law abiding persons;

4.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the custom, policy or law regarding the expiration of permits to acquire after ten days of issuance as applied to Plaintiffs and all other law abiding persons ;

5.      Declaratory relief that HPD's implementation of HI Rev Stat §§ 134-2 and 134-3 which requires applicants to bring their firearm to the station to register it is unconstitutional as applied to Plaintiffs and all other law-abiding persons;

6.      Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

7.      Nominal Damages;

8.      Such other Declaratory relief consistent with the injunction as appropriate; and

9.      Such other further relief as the Court deems just and appropriate.

Dated: October 24, 2019.

Respectfully submitted,


/s/ Alan Beck
Counsel for Plaintiffs

19

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com


Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
* *Pro Hac Vice Paperwork Forthcoming*

## <u>VERIFICATION</u>

I, Todd Yukutake, declare as follows:

1.   I am a Plaintiff in the present case and a citizen of the United States of America.

2.   I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3.   I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on October 23, 2019.

_____
Todd Yukutake

## VERIFICATION

I, David Kikukawa, declare as follows:

1.   I am a Plaintiff in the present case and a citizen of the United States of America.

2.   I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3.   I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on October 24, 2019.

David Kikukawa