Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-578 (JMS-RT) |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU | ) ) ) ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| | ) ) | TRIAL: January 12, 2021 9AM JUDGE: Hon. J. Michael Seabright HEARING DATE: N/A |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   Introduction…………………………………………………………………1

    a.  Plaintiff Todd Yukutake……………………………………….………1

    b.  Plaintiff David Kikukawa…………………………….…………..2

II.  Legal Standard………………………………………….……...………..3

III. Hawaii Law…………………………………………...……………..3

IV.  Argument…………………………………………………………….4

    a.  Strict Scrutiny Applies to Both Requirements…………..……………..4

    b.  The Ten-Day Expiration of the Permit to Acquire Handguns is Unconstitutional…………………………………...………………..6

    c.  Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Underinclusive…………………………………..………...………..9

    d.  The In-Person Registration is Unconstitutional……………….…….…..15

V.   Conclusion…………………………………………………….………18

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469  (1989)................................9

*Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252 (9th Cir. 1999)...................3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)..............................3

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ......................10

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) .................5, 6

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017)......................................................6

*Fla. Bar v. Went For It, Inc.*, 515 U.S. 618 (1995) .....................................................9

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014)........6

*Heller v. Dist. of Columbia*, 801 F.3d 264, (D.C. Cir. 2015) (*Heller III*) ...........1, 17

*Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014)......5

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ...............................................9

*NYSRPA v. NYC*, 140 S.Ct. 1525 (2020) ..................................................................14

*Parents for Privacy v. Barr*, 2020 U.S. App. LEXIS 4503 ....................................10

*Pena v. Lindley*, 898 F.3d 969, 2018 U.S. App. LEXIS 21565, *23, 2018 WL

  3673149 ...............................................................................................................10

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ...................................................9

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ........................................ 5, 6, 7, 8

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622  (1994) (plurality opinion)

  ("*Turner I*") .........................................................................................................8

*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) ....................... 5, 6, 8

*United States v. National Treasury Employees Union,* 513 U.S. 454 (1995) ...........9

*Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169 (9th Cir. 1999) .........................18

**Statutes**

D.C. Code § 7-2502.04(c).........................................................................................17

iii

H.R.S. § 134-2(e) .......................................................................... 3, 10, 14

H.R.S. § 134-2(f) ..................................................................................15

H.R.S. § 134-3(b) ...................................................................................4

H.R.S. § 134-3(c) ...................................................................................4

H.R.S. 134-2 .....................................................................................4, 12

HRS § 134-2(g) .....................................................................................14

HRS § 846-2.7(a) ...................................................................................12

HRS § 846-2.7(b)(43) .............................................................................12

Mich. Comp. Laws § 28.429 ...................................................................16

## Other Authorities

Jospeh Tussman and Jacobus tenBroek, *The Equal Protection of the Laws*, 37 Cal.

   L. Rev. 341 (1949) .............................................................................10

## Rules

Fed. R. Civ. P. 56(a) ................................................................................3

LR7.8 ...................................................................................................18

I.    Introduction

Come now Todd Yukutake and David Kikukawa ("Plaintiffs"), and in support of their Motion for Summary Judgment, file this Memorandum in Support. Plaintiffs challenge Hawaii law to the extent that it 1) requires firearms to be brought to the police station to be registered and 2) that permits to acquire handguns expire ten days after issuance.   An identical bring-your-gun-to-the-station requirement was already struck down by the D.C. Court of Appeals in *Heller v. Dist. of Columbia*, 801 F.3d 264, (D.C. Cir. 2015) (*Heller III*). This Court should follow that Court's precedent here.  For the reasons set out below, both requirements are insufficiently tailored to survive any applicable level of scrutiny and should be struck as violative of the Second Amendment.

Plaintiffs filed their verified complaint on October 24, 2019 [Docket No. 1].

a.    Plaintiff Todd Yukutake

Plaintiff Todd Yukutake ("Yukutake") is a native Hawaiian and currently resides on the island of Oahu.  [*Id*. at ¶¶ 49-50].  Yukutake is an honorably retried Army Captain after twenty years of service in the Army National Guard.  [*Id*. at ¶ 51].  Yukutake is employed as an armed protective security officer for a company which contracts with the federal government and he guards federal property. [*Id*. at ¶¶ 52-54].  Yukutake is unable to take personal firearms onto federal property and typically parks on federal property.  As such, in order to register a new firearm,

Yukutake must take time off work, drive home to retrieve the firearm, drive to Honolulu Police Department [HPD] to register it, drive back home to secure the firearm, then drive back to work.  [*Id*. at ¶ 54].

Yukutake is also a firearms instructor and currently legally owns handguns. [*Id*. at ¶¶ 55-56].  Yukutake routinely works during the time that HPD's Firearms Unit Office is open.  [*Id*. at ¶¶ 57].  Yukutake plans on purchasing additional handguns in the near future and will be required to take additional time off work in order to do so.  [*Id*. at ¶¶ 60-61].  Yukutake is not a prohibited person and does not use illegal drugs or abuse alcohol.  [*Id*. at ¶¶ 64-66].

  b.  Plaintiff David Kikukawa

Plaintiff David Kikukawa ("Kikukawa") is employed as a Diver Medic and Lead Systems Operator for an emergency medical and critical care facility.  In order to bring a firearm to HPD for registration during a workday, Kikukawa must take time off work, drive home to retrieve the firearm, drive to HPD to register the firearm, drive back home to secure the firearm and then drive back to work.  [*Id*. at ¶ 69].

Kikukawa currently legally owns handguns.  [*Id*. at ¶ 70].  Kikukawa routinely works during the time that HPD's Firearms Permit Unit Office is open and he must take time off of work to purchase and register handguns.  [*Id*. at ¶¶ 71-72]. Kikukawa states that it is often difficult for him to take off from work and when he does, he

2

either has to use personal time or a vacation day to take off. [*Id.* at ¶ 73]. Kikukawa's position as a Diver Medic requires that he be on call for emergencies and maintain a thirty-minute response time to the hospital where he works. These emergencies may make it impossible to register his newly purchased handgun within the time constraints that HPD requires. [*Id.* at ¶ 74]. Kikukawa plans on purchasing additional handguns in the near future and will be required to take additional time off work to do so. [*Id.* at ¶¶ 75-76]. Kikukawa is not a prohibited person and does not abuse alcohol or use drugs. [*Id.* at ¶¶ 77-79].

## II.   Legal Standard

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). *See* Fed. R. Civ. P. 56(a).

## III.   Hawaii Law

H.R.S. § 134-2(e) provides, in relevant part, that: "Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue.

Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction." With regard to long guns, "Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition…"

H.R.S. § 134-3(b) provides, in relevant part, that: "Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant."

H.R.S. § 134-3(c) provides that "Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration."

IV.   <u>Argument</u>

a.   <u>Strict Scrutiny Applies to Both Requirements</u>

The Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).  If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny. "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny. *Id*. at 961.  That is what was involved in *District of Columbia v. Heller*, 554 U.S. 570, 628-629, 128 S. Ct. 2783 (2008). A law that implicates the core of the Second

5

Amendment right and severely burdens that right warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, the court may apply intermediate scrutiny." *Silvester*, 843 F.3d at 821. "Indeed, in *Chovan*, we applied 'intermediate' rather than 'strict' judicial scrutiny in part because section 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by those mechanisms." *Fisher v. Kealoha*, 855 F.3d 1067,1071 (9th Cir. 2017).

Here, strict scrutiny should apply to both laws because they both implicate a core Second Amendment right and impose a substantial burden Plaintiffs' Second Amendment rights. Regardless of whether this Court "implements an 'important government objective' (intermediate scrutiny) or a 'compelling state interest' (strict scrutiny)", these laws are "neither 'substantially related' nor 'narrowly tailored' to such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014).

b. The Ten-Day Expiration of the Permit to Acquire Handguns is Unconstitutional

It is important to note that the issue here is the Permit to Acquire a handgun. As the Supreme Court stated, "… the American people have considered the handgun to be the quintessential self-defense weapon." *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008). While not a ban on the possession

inside the home like the *Heller* case, Hawaii's law imposes substantial burdens on the core right secured by the Second Amendment.

Hawaii's ten-day expiration period for permits to acquire handguns is within the scope of the Second Amendment because there is no historical evidence that demonstrates otherwise, and the law directly burdens Plaintiffs' ability to acquire a handgun. This law appears to have been enacted in 1988.[1] In *Silvester v. Harris,* the Ninth Circuit reviewed and ultimately upheld, California's ten-day waiting period to purchase a firearm and assumed intermediate scrutiny applied. The Ninth Circuit upheld the waiting period because the purpose of the waiting period was to provide a "cooling-off period to deter violence resulting from impulsive purchases of firearms" and was sufficiently tailored to the government's interest of public safety. *Silvester v. Harris*, 843 F.3d 816, 829 (9th Cir. 2016). The instant case is distinguishable. They already must undergo a 14-day waiting period pursuant to Hawaii law. *See* H.R.S. 134-2. Unlike the waiting period in *Silvester*, the ten-day requirement to use a permit to acquire does not further any public safety interest because the applicants have already been vetted and cleared under the 14-day waiting period/background check. Instead, invalidating an otherwise valid permit

---

[1] https://advance.lexis.com/api/permalink/e5b2bc4c-59ff-4f6d-b455-3dbc05ccece3/?context=1000516 (last accessed 7/13/2020).

on an arbitrary timeline creates a substantial burden on Plaintiffs' Second Amendment rights.

Strict scrutiny applies when a law causes a "substantial burden" on a litigant's Second Amendment rights. *See Silvester,* 843 F.3d at 827. Here, the law is a substantial burden on Plaintiffs' Second Amendment rights as Plaintiffs are required to take time off work to make their firearms purchase in quick succession after they have already taken several other days off work to obtain the permit to acquire and after they have already waited 14 days for the waiting period/background check. This Court should strike Hawaii's law because it does not survive strict scrutiny.

But even under intermediate scrutiny, the law is unconstitutional. The intermediate scrutiny test under the Second Amendment requires that "(1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *United States v. Chovan*, 735 F.3d at 1139). Under intermediate scrutiny, the government must "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 664 (1994) (plurality opinion) ("*Turner I*"). Those precise words have commanded majorities in numerous

decisions. *E.g., Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995); *United States v. National Treasury Employees Union,* 513 U.S. 454, 475 (1995).

The stated government interest is to "ensure[] that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale. An example is if someone gets a permit but does not use it, and a month late commits a felony and is charged. Without an expiration date, that person could let a registered firearm be seized and then use the permit to purchase another firearm." *See* Defendant's Responses to Interrogatories, No. 9, Exhibit "A". Yet if this were the case, as described more fully below, then permits to acquire long guns would expire in 10 days as well. Because the ten-day handgun permit to acquire expiration date substantially burdens Plaintiffs' Second Amendment rights, it fails heightened scrutiny.

c. Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Underinclusive

Under inclusivity is a doctrine that can be used to determine whether a law is properly tailored. In constitutional law, under inclusivity follows necessarily from the evaluation of a fit between means and ends. S*ee Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). The assessment of fit looks to the relation between the class that comes within the scope of the regulation's stated objective, and the class actually affected by the regulation. *See,*

*e.g.,* Joseph Tussman and Jacobus tenBroek, *The Equal Protection of the Laws*, 37 Cal. L. Rev. 341 (1949). Under this standard, what matters is not whether a regulation is specifically overinclusive, but rather by how much it is either over- or underinclusive. *See, e.g., City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428 (1993) (holding a city ordinance intended to advance safety and aesthetic interests unconstitutional because it unjustifiably affected only a small fraction of operating news racks, thus constituting an unreasonable fit between ends and means). *See also Parents for Privacy v. Barr*, 2020 U.S. App. LEXIS 4503, *53 ("Underinclusiveness is determined with respect to the burdens on religious and non-religious conduct and the interests sought to be advanced by the policy"). In this Circuit, when applying intermediate scrutiny, if the exceptions to the law are "so pervasive or without basis as to make the fit unreasonable" it is unconstitutionally underinclusive. *Pena v. Lindley*, 898 F.3d 969, 981, 2018 U.S. App. LEXIS 21565, *23, 2018 WL 3673149.

Here, the law is underinclusive because permits to acquire long guns (rifles and shotguns, *see* H.R.S. § 134-2(e)) are valid for one year but permits to acquire handguns are valid only for ten days. There is no legitimate reason or basis in making a long gun permit to acquire one year and a handgun permit to acquire for ten days. Whatever government interest there might be in one is the same as for the other. The State's response to an interrogatory demonstrates the ill fit of this

10

requirement.  Plaintiffs asked the State to "explain in detail how mandating a permit to acquire a handgun becomes void if 'not used within ten days after the date of issue' further[s] a governmental interest."   The Defendant's response was that it "ensures that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale.  An example is if someone gets a permit but does not use it, and a month late commits a felony and is charged.  Without an expiration date, that person could let a registered firearm be seized and then use the permit to purchase another firearm."  *See* Defendant's Responses to Interrogatories, No. 9, Exhibit "A".

But the Defendant completely ignores the differing treatment of long guns and handguns.  Plaintiffs sought out this information in another interrogatory, asking the Defendant to "describe the difference in permits to acquire long guns and handguns" and to explain "why permits to acquire long guns are valid for one year and multiple long guns, but permits to acquire handguns are valid for ten days and one handgun." Defendant merely objected to the interrogatory and claimed that it would not "lead to the discovery of admissible evidence."   *See* Defendant's Responses to Interrogatories, No. 13, Exhibit "A".  In short, there is no real difference and they should not be treated differently.  The ten-day expiration of handgun permits to acquire is an arbitrary number and unsupported by any evidence.

11

Further, Defendant's purported justification is belied by current State law requiring purchasers of firearms to be entered into an FBI database for "*constant criminal record monitoring*." HRS § 846-2.7(b)(43) provides authority for "The county police departments on applicants for permits to acquire firearms pursuant to section 134-2 and on individuals registering their firearms pursuant to section 134-3…" to enter firearm purchasers in "rap back".[2]  Rap back is a "service of the [FBI] that provides continuous criminal record monitoring … and notifies them when an individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country.  This notification will allow county police departments in Hawaii to evaluate if the owner of a firearm may continue to legally possess and own firearms." *See* Exhibit "B", p. 1 (SB 2954, signed into law on *6/22/2016).*[3]

In other words, if the Defendant's stated interest in blocking a person from using a permit after committing a felony, it is unnecessary and an additional unjustifiable burden because Hawaii's rap back provides the same "service". Rap back would constantly monitor the criminal records of the gun owner and notify the proper authorities if the owner became prohibited.  As such, the government interest

---

[2] HRS § 846-2.7(a) explicitly mandates that these individuals participate in the "rap back program".

[3] https://www.capitol.hawaii.gov/Archives/measure_indiv_Archives.aspx?billtype=SB&billnumber=2954&year=2016 (last accessed July 13, 2020).

in having a ten day expiration on handguns permits does not fit at all with Hawaii's stated interest or their ability to register their gun owners on a national database and have "constant criminal record monitoring".

Defendant's other briefly stated interest, of having information that isn't "stale", doesn't hold any water either. The person's "qualifications" is that he or she isn't a prohibited person and that he or she has completed (at any time prior to the issuance of the permit):

> (1) An approved hunter education course as authorized under section 183D-28;
> (2) A firearms safety or training course or class available to the general public offered by a law enforcement agency of the State or of any county;
> (3) A firearms safety or training course offered to law enforcement officers, security guards, investigators, deputy sheriffs, or any division or subdivision of law enforcement or security enforcement by a state or county law enforcement agency; or
> (4) A firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least two hours of firing training at a firing range and a total of at least four hours of classroom instruction, which may include a video, that focuses on:
> (A) The safe use, handling, and storage of firearms and firearm safety in the home; and
> (B) Education on the firearm laws of the State.
> An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph.

*See* HRS § 134-2(g).  Nowhere in this section does it state these qualifications expire. As such, Defendant's interest in not having "stale" information doesn't make sense because this information doesn't go "stale".  And, as already stated, if Defendant is worried about a permit being used to acquire a firearm after the person becomes prohibited, then rap back covers that already.  And in any event, it completely ignores how long gun permits are treated as they are valid for one year and can be used multiple times to purchase multiple long guns.  Further, H.R.S. § 134-2(e) mandates that "if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority."  There is simply no fit here for the purported interest.

Here, the law at issue bears striking similarities to *NYSRPA v. NYC*, 140 S.Ct. 1525 (2020). There, a majority of the Court vacated as moot a decision upholding a New York City ordinance that restricted the scope of Second Amendment, with four Justices of the Court (three dissenters lead by Justice Alito and Justice Kavanaugh in concurrence), writing separately to explain why lower court's Second Amendment analysis was error. The dissent found it is not a reasonable fit to allow people to travel on a road to in-City ranges but not on the same road to ranges outside the City.

14

d.    The In-Person Registration is Unconstitutional

The in-person registration requirement is found in H.R.S. § 134-3.  While the statute is not a model of clarity, subsection (c) exempts "dealers" from the requirement to "have the firearms physically inspected by the chief of police at the time of registration."  As such, all non-dealers, (like the Plaintiffs) are required to register their firearms in-person with the chief of police.[4]  The in-person registration requirement is not sufficiently tailored to survive either strict or intermediate scrutiny.  The permit to acquire requires the make, model, serial number, and other identifying marks on the firearm. *See* H.R.S. § 134-2(f).[5]  A registrant would provide that information correctly to ensure the accuracy of the registration certificate, which protects the person from arrest for an unregistered firearm. Hawaii is an outlier state

---

[4] *See also* Defendant's Response to Request for Admission No. 4: "Please admit that Hawaii state law does not require in-person handgun registration after purchase of a handgun."  Response: "Defendant denies this request."  *See* Exhibit "D".  *See also* Exhibit "A", Defendant's Response to Interrogatories, No. 5.

[5] "In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information:  name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable.  The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm." H.R.S. 134-2(f).

as it is the only state left with this requirement as Michigan repealed a similar requirement for handguns, and that law aimed only to allow for "safety inspections" rather than crime control. 2008 Mich. Pub. Acts No. 195 (2008) (repealing Mich. Comp. Laws § 28.429).

The Defendant has not provided any evidence that in-person registration is required to promote any real government interest. The Defendant's only proffered justification is that "[i]n-person handgun registrations can prevent fraud and reduce or eliminate discrepancies."[6] *See* Response to Interrogatories, No. 6, Exhibit "A". The Defendant was specifically asked in Plaintiffs' Request for Production of Documents to "Produce all documents that support Hawaii's interest in maintaining an in-person registration of handguns." The State responded as follows: "Discovery is ongoing. Defendant will supplement her responses as appropriate in accordance with applicable court rules." *See* Responses to Plaintiffs' Request for Production of Documents, No. 10, Exhibit "C".

What in-person registration also does, as alleged in the Verified Complaint, is cause a hardship on plaintiffs such as Plaintiff Yukutake by mandating that he takes off work on an additional day to get the firearm registered, and if he misses that day, or if it were to fall on a day the police department is closed for registration, then he

---

[6] But, the response does not say that it "does" prevent fraud and reduce discrepancies, only that it "can".

16

could be in violation of the law by not registering the firearm in person.   See Complaint, ¶¶ 32-35.

The District of Columbia also offered no real justification for the in-person requirement, which created the "risk that the gun may be stolen en route or that the person may be arrested or even shot by a police officer seeing a man with a gun (or a gun case)." *Heller v. Dist. of Columbia*, 801 F.3d 264, 277 (D.C. Cir. 2015) (*Heller III*).   The District of Colombia's in-person registration requirement was struck as violating the Second Amendment. In the District of Columbia's former code, it stated that "[t]he Metropolitan Police Department (MPD) can require a potential registrant to present his firearm for inspection. D.C. Code § 7-2502.04(c)." *Heller*, at 285.

The MPD wanted to conduct a physical inspection to "verify that the application information is correct and that the firearm has not been altered." *Id.* The D.C. Circuit struck this requirement as violative of the Second Amendment. "[C]ommon sense suggests a person would not go to the trouble of obtaining a registration certificate for a weapon other than a weapon in his possession. On the contrary, common sense suggests that bringing firearms to the MPD would more likely be a threat to public safety; as Heller maintains, there is a 'risk that the gun may be stolen en route or that the [would-be registrant] may be arrested or even shot by a police officer seeing a 'man with a gun' (or a gun case)." *Heller*, at 277.   For

17

the same reasons, the State's requirement that Plaintiffs and other similarly situated individuals bring their handguns to the station to register them violates the Second Amendment.

This Court should also rule in favor of Plaintiffs because to do otherwise would mean a lack of uniformity in the case law of the nation. In the past, the Ninth Circuit has warned against creating circuit splits and is "hesitant to create such a split, and we do so only after the most painstaking inquiry…" *Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169, 1184 (9th Cir. 1999). The same reasoning should apply to a District Court.  The people of Hawaii should be afforded the same rights as the people of the District of Colombia

In sum, requiring a person to bring the firearm to their police station does nothing to reduce crime, protect police officers or increase public safety.

V.     Conclusion

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor, holding that the requirements of in-person registration and the ten day expiration of permits to acquire handguns violate the Second Amendment to the United States Constitution.

Certification Pursuant to LR7.8

This motion is made following the conference of counsel pursuant to LR7.8 which took place on July 13, 2020.

Dated: July 20, 2020

/s/ Alan Alexander Beck
Alan Alexander Beck

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

19