# HAWAII REVISED STATUTES

## 2018 CUMULATIVE SUPPLEMENT

### VOLUME 3

TITLES 10 – 12, CHAPTERS 121 – 200D

FOR USE WITH THE 2011 REPLACEMENT VOLUME

AND

### VOLUME 4

TITLES 13 – 14, CHAPTERS 201 – 257

FOR USE WITH THE 2017 REPLACEMENT VOLUME



PUBLISHED BY AUTHORITY

**EXHIBIT "M"**

134-1       PUBLIC SAFETY AND INTERNAL SECURITY

## CHAPTER 134
## FIREARMS, AMMUNITION AND DANGEROUS WEAPONS

PART I.   GENERAL REGULATIONS
SECTION
134-1  DEFINITIONS
134-2  PERMITS TO ACQUIRE
134-3  REGISTRATION, MANDATORY, EXCEPTIONS
134-6.5  RELIEF FROM FEDERAL FIREARMS MENTAL HEALTH PROHIBITOR
134-7.2  PROHIBITION AGAINST SEIZURE OF FIREARMS OR AMMUNITION DURING EMERGENCY OR DISASTER; SUSPENSION OF PERMIT OR LICENSE
134-7.3  SEIZURE OF FIREARMS UPON DISQUALIFICATION
134-8.5  BUMP FIRE STOCK, MULTIBURST TRIGGER ACTIVATOR, OR TRIGGER CRANK; PROHIBITION
134-16  RESTRICTION ON POSSESSION, SALE, GIFT, OR DELIVERY OF ELECTRIC GUNS

## PART I. GENERAL REGULATIONS

§134-1   Definitions.   As used in this chapter, unless the context indicates otherwise:
***

"Assault pistol" means a semiautomatic pistol that accepts a detachable magazine and has two or more of the following characteristics:
(1)   An ammunition magazine that attaches to the pistol outside of the pistol grip;
(2)   A threaded barrel capable of accepting a barrel extender, flash suppressor, forward hand grip, or silencer;
(3)   A shroud that is attached to or partially or completely encircles the barrel and permits the shooter to hold the firearm with the second hand without being burned;
(4)   A manufactured weight of fifty ounces or more when the pistol is unloaded;
(5)   A centerfire pistol with an overall length of twelve inches or more; or
(6)   It is a semiautomatic version of an automatic firearm;
but does not include a firearm with a barrel sixteen or more inches in length, an antique pistol as defined in this section, or a curio or relic as those terms are used in 18 United States Code section 921(a)(13) or 27 Code of Federal Regulations section 478.11.
***

"Crime of violence" means any offense, as defined in title 37, that involves injury or threat of injury to the person of another, including sexual assault in the fourth degree under section 707-733 and harassment by stalking under section 711-1106.5.
***

[am L 2016, c 55, §1 and c 109, §2]

#### Revision Note

Only the definitions amended are compiled in this Supplement.

§134-2   Permits to acquire.   ***
(b)   The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health history and shall require the fingerprinting and

38

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-2

photographing of the applicant by the police department of the county of registration; provided that where fingerprints and a photograph are already on file with the department, these may be waived.

\*\*\*

(d)   The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

(e)   The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to issue a permit or to deny an application is made.

(f)   In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to

**134-2**          PUBLIC SAFETY AND INTERNAL SECURITY

whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority that issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable.

\*\*\*

(i)     No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued.

(j)     In all cases where a permit application under this section is denied because an applicant is prohibited from owning, possessing, receiving, or controlling firearms under federal or state law, the chief of police of the applicable county shall, within ten business days from the date of denial, send written notice of the denial including the identity of the applicant and the reasons for the denial to the:

(1)   Prosecuting attorney in the county where the permit was denied;
(2)   Attorney general;
(3)   United States Attorney for the District of Hawaii; and
(4)   Director of public safety.

If the permit to acquire was denied because the applicant is subject to an order described in section 134-7(f), the chief of police shall, within three business days from the date of denial, send written notice of the denial to the court that issued the order.

When the director of public safety receives notice that an applicant has been denied a permit because of a prior criminal conviction, the director of public safety shall determine whether the applicant is currently serving a term of probation or parole, and if the applicant is serving such a term, send written notice of the denial to the applicant's probation or parole officer. [am L 2016, c 108, §2; am L 2017, c 63, §1]

**Revision Note**

Only the subsections amended or added are compiled in this Supplement.

**Case Notes**

Plaintiff firearm permit applicant's allegations that: (1) plaintiff was deprived of plaintiff's fundamental constitutional right to bear operational firearms and ammunition as guaranteed by the Second Amendment; and (2) plaintiff was wrongfully denied a permit under this section without

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-3

being afforded minimal due process protection such as a meaningful opportunity to be heard and to
have the decision reviewed, were sufficient to state a 42 U.S.C. §1983 claim for denial of procedural
due process under the Fourteenth Amendment. 869 F. Supp. 2d 1203 (2012).

Interpreting subsection (d) to deny plaintiff the opportunity to apply for and to obtain, if other-
wise qualified, a permit to acquire firearms solely because plaintiff was not a United States citizen,
violated the Second Amendment. Assuming that subsection (d)'s general permit requirement imple-
mented an important government objective (intermediate scrutiny), or a compelling state interest
(strict scrutiny), it was neither substantially related nor narrowly tailored to such interests. 54 F.
Supp. 3d 1136 (2014).

Under subsection (d), plaintiff, a lawful permanent resident alien of the United States and a resi-
dent of the State, was denied the opportunity to apply for a permit to acquire firearms based solely
upon plaintiff's alienage; the classification violated the equal protection clause. Thus, subsection (d)
was unconstitutional as applied to plaintiff and other lawful permanent resident aliens. 54 F. Supp.
3d 1136 (2014).

§134-3  Registration, mandatory, exceptions.  (a) Every person arriving
in the State who brings or by any other manner causes to be brought into the
State a firearm of any description, whether usable or unusable, serviceable or
unserviceable, modern or antique, shall register the firearm within five days after
arrival of the person or of the firearm, whichever arrives later, with the chief of
police of the county of the person's place of business or, if there is no place of
business, the person's residence or, if there is neither a place of business nor resi-
dence, the person's place of sojourn. A nonresident alien may bring firearms not
otherwise prohibited by law into the State for a continuous period not to exceed
ninety days; provided that the person meets the registration requirement of this
section and the person possesses:

(1)  A valid Hawaii hunting license procured under chapter 183D, part II,
or a commercial or private shooting preserve permit issued pursuant
to section 183D-34;

(2)  A written document indicating the person has been invited to the
State to shoot on private land; or

(3)  Written notification from a firing range or target shooting business
indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not
more than ten firearms for the purpose of the above activities.

Every person registering a firearm under this subsection shall be finger-
printed and photographed by the police department of the county of registra-
tion; provided that this requirement shall be waived where fingerprints and pho-
tographs are already on file with the police department. The police department
shall perform an inquiry on the person by using the International Justice and
Public Safety Network, including the United States Immigration and Customs
Enforcement query, the National Crime Information Center, and the National
Instant Criminal Background Check System, pursuant to section 846-2.7 before
any determination to register a firearm is made.

(b)  Every person who acquires a firearm pursuant to section 134-2 shall
register the firearm in the manner prescribed by this section within five days of
acquisition. The registration shall be on forms prescribed by the attorney gen-
eral, which shall be uniform throughout the State, and shall include the follow-
ing information: name of the manufacturer and importer; model; type of action;
caliber or gauge; serial number; and source from which receipt was obtained,
including the name and address of the prior registrant. If the firearm has no se-
rial number, the permit number shall be entered in the space provided for the se-
rial number, and the permit number shall be engraved upon the receiver portion
of the firearm prior to registration. All registration data that would identify the
individual registering the firearm by name or address shall be confidential and
shall not be disclosed to anyone, except as may be required:

41

134-3 PUBLIC SAFETY AND INTERNAL SECURITY

(1) For processing the registration;
(2) For database management by the Hawaii criminal justice data center;
(3) By a law enforcement agency for the lawful performance of its duties; or
(4) By order of a court.
***

(e) No fee shall be charged for the registration of a firearm under this section, except for a fee chargeable by and payable to the registering county for persons registering a firearm under subsection (a), in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint registration, the fee provided for in this section may be charged to each person. [am L 2013, c 254, §2; am L 2016, c 108, §3]

**Revision Note**

Only the subsections amended are compiled in this Supplement.

[§134-6.5] **Relief from federal firearms mental health prohibitor.** (a) Any person who is prohibited from shipping, transporting, possessing, or receiving any firearm or ammunition, pursuant to title 18 United States Code section 922(d)(4) or (g)(4), having been adjudicated as a mental defective or having been committed to a mental institution under the laws of this State, may petition the circuit court in the circuit where the adjudication or commitment was made, in a civil proceeding, for relief from the federal firearm prohibitor based on the adjudication or commitment. The attorney general shall represent the State; provided that the attorney general, with the prosecuting agency's consent, may designate the prosecuting attorney for the county in which the petitioner seeks relief to represent the State.

(b) In the civil proceeding, the court shall consider:
(1) The circumstances regarding the adjudication or commitment from which relief is sought, including the court files of the adjudication or commitment;
(2) The petitioner's mental health and criminal history records, if any;
(3) The petitioner's reputation in the community, developed at a minimum through character witness statements, testimony, or other character evidence; and
(4) Changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought, including medical documentation that the petitioner is no longer adversely affected by the condition that resulted in the petitioner's adjudication or commitment and is not likely to act in a manner dangerous to public safety.

(c) The court shall grant the petition for relief if the petitioner proves, by clear and convincing evidence, that the petitioner will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. The court shall make written findings of facts and conclusions of law on the issues before it and issue a final order.

(d) When a court issues an order granting or denying a petition for relief, the court shall forward this information to the Hawaii criminal justice data center, which in turn shall forward this information to the Federal Bureau of Investigation, or its successor agency, for inclusion in the National Instant Criminal Background Check System database. The information shall also be maintained by the Hawaii criminal justice data center for disclosure to and use by law enforcement officials for the purpose of firearms permitting or registration pursuant to chapter 134.

42

## FIREARMS, AMMUNITION AND DANGEROUS WEAPONS   134-7.2

(e)   A person may file a petition for relief under this section no less than two years after the adjudication or commitment from which the relief is sought, and no more frequently than once every three years thereafter.

(f)   For purposes of this section, the terms "adjudicated as a mental defective", "committed to a mental institution", and "mental institution" shall be construed in accordance with title 18 United States Code section 922, title 27 Code of Federal Regulations section 478.11, and judicial interpretations of those provisions.

(g)   Any relief granted pursuant to this section shall not constitute relief from any other federal prohibitors or from any state prohibition pursuant to chapter 134. The State, its officers, and its employees shall not be liable for any damages, attorneys' fees, or costs related to this relief process.

(h)   The petitioner may appeal a denial of relief, and the standard of review on appeal shall be de novo. [L 2014, c 87, §2]

### §134-7   Ownership or possession prohibited, when; penalty.

#### Case Notes

Summary judgment granted to defendants where plaintiff's 1997 harassment conviction constituted a conviction for a "misdemeanor crime of domestic violence" and, as a matter of statutory construction, the unavailability of a procedure for either expungement, set-aside, pardon, or civil rights restoration did not remove plaintiff from the ambit of federal prohibition or by extension, this section. 855 F.3d 1067 (2017).

Defendant police chief was entitled to qualified immunity from plaintiff firearm permit applicant's 42 U.S.C. §1983 claims for monetary damages for alleged violations of plaintiff's Second Amendment right to bear arms and Fourteenth Amendment procedural due process right because a reasonable official in defendant's circumstances would not have understood that defendant's conduct violated a right that was clearly established at the time of the denial of plaintiff's permit; this section, on which the denial was based, had not been invalidated by case or legislative action. 869 F. Supp. 2d 1203 (2012).

Plaintiff firearm permit applicant's allegations that plaintiff was denied a permit and ordered to surrender plaintiff's weapons due to a conviction of harassment under §711-1106 more than ten years before and that the conviction was not a crime of violence under subsection (b) or federal law for the purposes of prohibiting ownership or possession of firearms were sufficient to state a 42 U.S.C. §1983 claim for a violation of plaintiff's Second Amendment rights. 869 F. Supp. 2d 1203 (2012).

Genuine issue of material fact existed regarding: (1) whether plaintiff had been under counseling for addiction to, abuse of, or dependence upon a drug or intoxicating liquor; and (2) whether plaintiff had been "medically documented to be no longer adversely affected" by drugs or intoxicating liquor. As a result, plaintiff had not established a Second Amendment right to possess firearms. 976 F. Supp. 2d 1200 (2013).

Subsection (b) did not disqualify plaintiff from exercising plaintiff's Second Amendment rights because the court could not conclude that plaintiff's convictions for harassment constituted a crime of violence. 976 F. Supp. 2d 1200 (2013).

Where defendants argued that plaintiff was prohibited from possessing firearms under federal law because of the federal Lautenberg Amendment, which prohibits firearm ownership by any person who "has been convicted in any court of a misdemeanor crime of domestic violence", plaintiff's convictions for harassment did not qualify as a misdemeanor crime of domestic violence under federal law. 976 F. Supp. 2d 1200 (2013).

Where defendants asserted that plaintiff lacked standing to bring a lawsuit because plaintiff was precluded from obtaining firearms under this section, and, therefore, could not establish a violation of plaintiff's Second Amendment rights, police department's denial of plaintiff's application for a firearms permit, order to surrender firearms plaintiff possessed, and letter affirming the denial of the application constituted an "injury-in-fact" sufficient to meet the minimum requirements of Article III standing. 49 F. Supp. 3d 727 (2014).

Where plaintiff was disqualified from possessing firearms under 18 U.S.C. §922(g)(9) and applying subsection (a) would not have an impermissible retroactive effect, subsection (a) precluded plaintiff from acquiring a firearms permit. 49 F. Supp. 3d 727 (2014).

Where the State's evidence only went so far as to show defendant's ownership and presence in the vehicle and defendant's proximity to the firearm and ammunition, absent evidence of intent, the circuit court correctly granted defendant's renewed motion of judgment of acquittal; the appeals court thus erred in vacating circuit court's judgment by concluding that there was sufficient evidence of intent for jury to infer that defendant constructively possessed the subject rifle and ammunition in violation of subsection (b). 128 H. 18, 282 P.3d 560 (2012).

### §134-7.2   Prohibition against seizure of firearms or ammunition during emergency or disaster; suspension of permit or license.   (a) Notwithstanding any

134-7.2          PUBLIC SAFETY AND INTERNAL SECURITY

provision of chapter 127A or any other law to the contrary, no person or government entity shall seize or confiscate, under any emergency or disaster relief powers or functions conferred, or during any emergency period, as defined in section 127A-2, or during any time of national emergency or crisis, as defined in section 134-34, any firearm or ammunition from any individual who is lawfully permitted to carry or possess the firearm or ammunition under part I of this chapter and who carries, possesses, or uses the firearm or ammunition in a lawful manner and in accordance with the criminal laws of this State.

(b)   Notwithstanding any provision of chapter 127A or any other law to the contrary, no person or government entity shall suspend, revoke, or limit, under any emergency or disaster relief powers or functions conferred, any lawfully acquired and maintained permit or license obtained under and in accordance with part I of this chapter.
***

[am L 2014, c 111, §7]

### Revision Note

Only the subsections amended are compiled in this Supplement.

§134-7.3   Seizure of firearms upon disqualification.   (a) If any applicant is denied a permit, the chiefs of police of the respective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition. If an applicant fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date notice was mailed, the chief of police may seize all firearms and ammunition.

(b)   Any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7, within seven days of disqualification, shall voluntarily surrender all firearms and ammunition to the chief of police where the person resides or dispose of all firearms and ammunition. If any person fails to voluntarily surrender or dispose of all firearms and ammunition within seven days from the date of disqualification, the chief of police may seize all firearms and ammunition.

(c)   For any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7(c), or because the person has been admitted to a psychiatric facility, whether for emergency or involuntary hospitalization, pursuant to part IV of chapter 334, once the chief of police is notified that the person is disqualified, the chief of police shall promptly issue a notice to the disqualified person to immediately surrender all firearms and ammunition. The notice shall be in writing, shall set forth the reasons for the disqualification, and shall state the requirement that the person immediately surrender all firearms and ammunition to the chief of police. If any person fails to voluntarily surrender all firearms and ammunition upon receiving notice, the chief of police may seize all firearms and ammunition. The firearms and ammunition shall be held in police custody until the person has been medically documented to be no longer adversely affected as provided in section 134-7 or until transferred or sold by the owner. Nothing in this subsection shall be construed to limit the duties imposed by subsection (b).

(d)   For the purposes of this section, "dispose" means selling the firearms to a gun dealer licensed under section 134-31, transferring ownership of the firearms to any person who meets the requirements of section 134-2, or surrender-

44

**FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-16**

ing all firearms to the chief of police where the person resides for storage or disposal; provided, for a person subject to section 134-7(f), "dispose" shall not include transferring ownership of the firearms to any person who meets the requirements of section 134-2.

(e)   The chief of police of the respective counties shall adopt procedures to implement and administer the provisions of this section by December 31, 2001. [L 2000, c 127, §1; am L 2004, c 4, §2; am L 2016, c 110, §2; am L 2018, c 158, §1]

**[§134-8.5]   Bump fire stock, multiburst trigger activator, or trigger crank; prohibition.**   (a) Any person in this State who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any bump fire stock, multiburst trigger activator, or trigger crank shall be guilty of a class C felony.

(b)   As used in this section:

"Bump fire stock" means a butt stock designed to be attached to a semiautomatic firearm and designed, made, or altered to increase the rate of fire achievable with such firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

"Multiburst trigger activator" means:

(1)   A device that simulates automatic gunfire by allowing standard function of a semiautomatic firearm with a static positioned trigger finger or a device that fires multiple shots with the pull and release of the trigger; or

(2)   A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it simulates automatic gunfire.

"Trigger crank" means any device to be attached to a semiautomatic firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion, but does not include any firearm initially designed and manufactured to fire through the use of a crank or lever. [L 2018, c 157, §1]

**§134-9   Licenses to carry.**

Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

**§134-16   Restriction on possession, sale, gift, or delivery of electric guns.**
***

(b)   Any electric gun possessed, offered for sale, held for sale, sold, given, lent, or delivered in violation of subsection (a) shall be confiscated and disposed of by the chief of police.

(c)   This section shall not apply to:

(1)   Law enforcement officers of county police departments;

(2)   Law enforcement officers of the department of public safety;

(3)   Conservation and resources enforcement officers of the department of land and natural resources;

(4)   Members of the Army or Air National Guard when assisting civil authorities in disaster relief, emergency management, or law enforcement functions, subject to the requirements of section 121-34.5; and

**45**

134-16        PUBLIC SAFETY AND INTERNAL SECURITY

    (5)  Vendors providing electric guns to the individuals described in paragraphs (1) through (4);

provided that electric guns shall at all times remain in the custody and control of the law enforcement officers of the county police departments, the law enforcement officers of the department of public safety, the conservation and resources enforcement officers of the department of land and natural resources, or the members of the Army or Air National Guard.
    ***

    (e)  The department of land and natural resources and the department of public safety shall ensure that each of its conservation and resources enforcement officers and law enforcement officers who is authorized to use an electric gun and related equipment shall first receive training from the manufacturer or from a manufacturer-approved training program, as well as by manufacturer-certified or approved instructors in the use of electric guns prior to deployment of the electric guns and related equipment in public. Training for conservation and resources enforcement officers of the department of land and natural resources and law enforcement officers of the department of public safety may be done concurrently to ensure cost savings.

    (f)  No later than June 30, 2018, the conservation and resources enforcement program of the department of land and natural resources shall meet the law enforcement accreditation or recognition standards of the Commission on Accreditation for Law Enforcement Agencies, Inc., in the use of electric guns. [am L 2012, c 148, §1; am L 2014, c 111, §28]

**Revision Note**

Only the subsections amended are compiled in this Supplement.

**[§134-23]  Place to keep loaded firearms other than pistols and revolvers; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-24]  Place to keep unloaded firearms other than pistols and revolvers; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-25]  Place to keep pistol or revolver; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-26]  Carrying or possessing a loaded firearm on a public highway; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-27]  Place to keep ammunition; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).