# JOURNAL

## of the

## SENATE OF THE

## FIFTEENTH LEGISLATURE

## of the

## STATE OF HAWAII

### Regular Session of 1990

**Convened Wednesday, January 17, 1990**
**Adjourned Friday, May 4, 1990**

EXHIBIT "O"

although the language indicates that a natural parent may request access to adoption records, the procedure set out only covers situations where an adopted individual or adoptive parents request access.

(9) A provision has been added for adoptions occurring prior to January 1, 1991, to permit a natural parent or an adoptee to file an affidavit consenting to the inspection of records by the other.

(10) A new provision has been added to allow a natural parent to obtain a copy of the original birth certificate.

(11) Technical, nonsubstantive amendments were made for purposes of clarity and style.

Your Committee recognizes that there are compelling arguments for fully opening up adoption records; and that this bill as amended by your Committee, while it is a major step, may be just the first step to more liberal access to adoption records in the future.

Your Committee on Judiciary is in accord with the intent and purpose of H.B. No. 2089, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2089, H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

### SCRep. 3057   Judiciary on H.B. No. 2184

The purpose of this bill is to outlaw gambling aboard ships whether it takes place on ships operated solely for that purpose or on ones which offer gambling incidental to other legitimate activities.

Your Committee received testimony in support of the bill from the Attorney General and the Department of Transportation. The Attorney General noted that the State has long taken a stand against gambling because of its traditional association with organized crime and because it tends to diminish the State's reputation as the premier tourist destination, especially for families, with a corresponding economic impact. He indicated that this bill would prevent a recent proposal to begin inter-island operation of one of these ships from becoming a reality.

The Department of Transportation expressed its support for the bill but indicated concern that the language of the bill was not sufficiently specific to exclude ships travelling to and from foreign ports and the continental United States from being placed within its ambit. These ships close down and lock their gambling equipment when they sail in State waters and, therefore, do not present the cause for concern represented by gambling ships operated locally. Accordingly, your Committee has amended the bill to make it clear that these ships are not in violation of the proposed law if they conduct gambling activity when travelling to or from foreign ports or the continental United States.

Your Committee has also amended the bill to make it clear that operators of legitimate tour ships, on which gambling is being conducted without their consent or knowledge, will not be subjected to criminal liability for gambling conducted by employees or passengers. Your Committee further amends the bill so that persons transporting passengers to and from ships on which gambling is taking place would not be covered under this new section. The final amendment made by your Committee deletes the provision which subjects persons soliciting, enticing, inducing, persuading or procuring persons from visiting gambling ships to criminal liability. Your Committee is of the opinion that these provisions raise questions of equal protection, as persons are permitted to make identical solicitations and promotions for gambling operations conducted outside of the State.

Your Committee on Judiciary is in accord with the intent and purpose of H.B. No. 2184, H.D. 1, as amended, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2184, H.D. 1, S.D. 1 and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

### SCRep. 3058   Judiciary on H.B. No. 2191

The purpose of this bill is to prohibit the possession of firearms, ammunition, and certain weapons in, on or within 750 feet of the real property comprising a public or private elementary or secondary school.

Testimony in support of this bill was offered by the Attorney General, the Department of Education and the Hawaii State Teachers Association. They all testified in favor of the bill, which was originally drafted to create a "weapon free zone" within 750 feet of the real property comprising a public or private school. The Attorney General recounted a series of recent events in which a teacher was shot while conducting class, students were shot in drive-by shootings, and a student was methodically stalked, shot and killed in a high school parking lot. This statement was echoed by the Department of Education which reported that in the last school year, seven firearms and 61 other weapons were taken from public school students.

Testimony in opposition to the bill was offered by the Public Defender and a number of firearm enthusiasts. The Public Defender submitted that a mandatory sentence of 20 years was too severe, particularly when compared to other serious offenses. The firearm enthusiasts were concerned by the fact that numerous legitimate firearm activities take place on school campuses, such as ROTC training, hunter safety courses and rifle matches.

While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that our entire community should be a safe place to live and learn and that everyone deserves to feel free from the threat of harm wherever they go. To achieve this goal, your Committee has undertaken substantial amendments to the bill. First, weapons offenses have been reclassified to reflect their severity. For example, a new subsection has been added to section 134-6, Hawaii Revised Statutes, which makes it a class A felony to possess, use or threaten to use a

firearm in the commission of a felony. A person who violates the requirement that firearms be confined to the person's place of business, residence or sojourn or that they be transported between these and certain other destinations in a specified manner or that handguns not be carried on the person without a permit would be guilty of a class B instead of a class C felony. Those who violate the requirement that firearms other than handguns not be carried on the person would be guilty of a class C felony instead of a misdemeanor. Consistent therewith, a person who uses a switchblade or other deadly weapon in the commission of a crime would be guilty of a class C felony.

Your Committee has addressed the very real concern within the community regarding the use by criminals of semi-automatic "assault" weapons. To that end, your Committee has amended the bill by adding a new subsection to Section 706-660.1, Hawaii Revised Statutes, to provide for severe mandatory minimum sentences for the use of these weapons in the commission of a felony. Under current law a first "firearm felony" offender may be sentenced to a minimum term of up to 15 years while a second "firearm felony" offender must be sentenced to a mandatory minimum term of up to 20 years. This bill would require that a first semi-automatic or automatic "firearm felony" offender be sentenced to a mandatory minimum term of up to 20 years. Your Committee believes that these harsh sentences are necessary to keep these weapons out of the hands of criminals.

Your Committee has also amended the definition of "automatic firearm" to include the parts that are currently available to convert a firearm to automatic operation.

Your Committee is in accord with the intent and purpose of H.B. No. 2191, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 2191 H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by all members of the Committee.

SCRep. 3059   Judiciary on H.B. No. 2398

The purpose of this bill is to ensure that mental health treatment is offered to convicted sex offenders and to create new offenses relating to "peeping tom" behavior and sexually harassing telephone calls.

Your Committee received testimony from the Attorney General, the Honolulu Prosecutor, the Honolulu Police Department, the Public Defender, and a number of private citizens. The Attorney General expressed strong support for the bill, particularly the provision that would require that treatment be offered to sex offenders. The Honolulu Prosecutor also expressed strong support for the treatment provision, noting that the compulsive, repetitive behavior of sex offenders can be changed only by specialized therapy.

Support was also expressed for the provision of the bill that would address the "peeping tom" type of offenses which are not currently covered by the Penal Code.

Your Committee found the testimony provided by the private citizens regarding these offenses to be particularly compelling. One person recounted a series of incidents over a period of four years during which a male intruder stole undergarments from a clothesline, began knocking at the door during the early morning hours and hounded her to the point of a nervous breakdown. Ultimately, she was forced to move.

Another person testified about similar conduct occurring over a two year period. An unknown man stole lingerie, prowled outside the bedroom window at night and was caught twice looking in. This person was so disturbed by this conduct that she spoke to other women and found that many in her neighborhood had experienced repeated visits from men who masturbate outside and into their windows. She even interviewed one offender by arrangement with his therapist. The man reported that he had a twenty year career as a peeping tom and public masturbator and that, while he had been arrested seven or eight times, he had spent only three days in jail and that was imposed on the mainland. He also stated that he was not required to undergo treatment. Another person testified about a peeping tom lurking in her yard who was later identified as a rapist being sought by the police.

These people also expressed frustration about the ability of the courts to deal with these offenders. These offenders are often not recognized or treated as sex offenders. As a result, they are routinely processed along with the rest of the large case load handled by the District Court and frequently receive only a fine with little, if any, counseling. As a further result, the opportunity to examine the offender and provide treatment that will prevent escalation in the severity of these offenses is often lost.

Your Committee finds that the need for early intervention and treatment of sexual offenders is imperative. While "peeping toms" and "exhibitionists" may seem harmless, these offenses are typically perceived by the victims as potential burglaries or sexual assaults. The criminal records of these individuals justify this concern because the rate of recidivism amongst this class of offenders is extremely high and many go on to commit more serious, violent crimes. Treatment must be afforded to these offenders and they must be monitored closely. At the same time, however, the seriousness of these offenses must be recognized and appropriate sanctions, in addition to treatment, must be imposed.

Accordingly, your Committee has amended the bill to require that all convicted sex offenders undergo presentence mental and medical examinations. If the resulting report indicates that it is appropriate, the Court would be required to offer specialized mental health treatment to these offenders while they are under sentence of the court. This would mandate that treatment be offered to offenders placed on probation whereas currently such treatment is offered only discretionarily under Section 706-624(2)(k), Hawaii Revised Statutes. Treatment would also be offered to incarcerated offenders and the Hawaii Paroling Authority would be required to consider the offender's willingness to undergo treatment and their progress, if any, when considering whether to grant parole. The authority would also be required to condition parole on continued treatment if recommended by the offender's therapist.