Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA )<br><br>) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 19-578 (JMS-RT) |
| v. ) | |
| ) | MEMORANDUM IN OPPOSITION |
| CLARE E. CONNORS, in her ) | TO DEFENDANT'S MOTION FOR |
| Official Capacity as the Attorney ) | SUMMARY JUDGMENT |
| General of the State of Hawaii ) | |
| and the CITY and COUNTY ) | |
| OF HONOLULU )TRIAL: January 12, 2021 9AM | |
| )JUDGE: Hon. J. Michael Seabright | |
| )HEARING: October 19, 2020 10AM | |
| Defendants. ) | |
| _____) | |

i

# Table of Contents

I.    Everytown's Historical Analysis is Inapplicable to the Instant Challenge .........1

II.   The Challenged Laws Are Not Longstanding ....................................................2

III.   The Ten-Day Expiration on a Handgun Permit Fails Heightened Scrutiny ....9

IV.   State Law Requires In-Person Registration....................................................13

V.   Conclusion .........................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

## Cases

*Avagyan v. Holder*, 646 F.3d 672 (9th Cir. 2011) ..................................................3, 4

*Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016)............................7, 8

*Citizens United v. FEC*, 558 U.S. 310 (2010)...........................................................13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. 2, 5, 8, 23

*Duncan v. Becerra*, 2020 U.S. App. LEXIS 25836 (9th Cir. 2020).......................2, 3

*Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) ................................3

*Heller v. District of Columbia*, 419 U.S. App. D.C. 287, 801 F.3d 264 (2015)

    (*Heller III*) ................................................................................................................7

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*).... 4, 8, 9

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014).......................... 2, 5, 6

*Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684 (D. N.

    Mar. I. Sep. 28, 2016) ..........................................................................................21

*NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185 (5th Cir. 2012) .............................4

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) .....................................................5, 6

*Perez-Mejia v. Holder*, 641 F.3d 1143 (9th Cir. 2011) ...........................................15

*Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) (Callahan, J., dissenting)

    .............................................................................................................................20

*Seminole Tribe v. Fla.*, 517 U.S. 44 (1996) ..............................................................3

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ................................................5, 7

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) .......................8

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) .......................................2, 3

## Statutes

18 U.S.C. § 922(g)(1) .............................................................................................7

18 U.S.C. § 922(g)(4) .............................................................................................8

18 U.S.C. § 922(g) ................................................................................................19

H.R.S. § 134-2(e) .................................................................................................12

H.R.S. § 134-2(f) ..................................................................................................19

H.R.S. § 134-23(a)(6) ...........................................................................................17

H.R.S. § 134-24(a)(6) ...........................................................................................17

H.R.S. § 134-25(a)(6) ...........................................................................................17

H.R.S. § 134-3 .....................................................................................................14

H.R.S. § 134-6 .....................................................................................................17

H.R.S. § 134-7............................................................................................... 12, 19

H.R.S. § 134-7(3)(f) ..............................................................................................11

H.R.S. § 134-7.3 ...................................................................................................11

H.R.S. § 134-7(g) .................................................................................................11

H.R.S. § 134-3(c) .......................................................................................... 13, 16

I.     **Everytown's Historical Analysis is Inapplicable to the Instant Challenge**

Amicus Everytown for Gun Safety ("Everytown") cite to militia inspection laws from the colonial era to argue that Hawaii's in-person registration requirement is a law with a longstanding pedigree and thus should not be subject to constitutional scrutiny. As a preliminary matter, *Heller* already rejected a militia-centric view of the Second Amendment. Thus, these laws are inapplicable on these grounds alone. The colonial laws citied to by Everytown are also inapposite because they deal with laws for the inspection of firearms required for military duty. There were no colonial laws which required inspection of personal firearms that were not used for colonial military duties. Laws requiring the inspection of firearms for military duty do not support the constitutionality of the inspection of firearms for private use. Furthermore, unlike Hawaii law, the laws at issue did not require that the firearms be inspected prior to being owned. Rather these laws required inspection of firearms that were already owned by colonial citizens in order to determine whether they qualified as being proper firearms for militia duty. As Plaintiffs are seeking to own firearms for private use rather than in service in an organized militia, all of the colonial laws which amicus Everytown cite to are inapplicable to the instant challenge.

## II.     The Challenged Laws Are Not Longstanding

The State presents evidence that registration laws began in 1907 in Hawaii. However, Plaintiffs do not challenge Hawaii's registration scheme in total.  Rather, they challenge specific portions of the registration scheme and the time of enactment of those specific requirements.  "By 1933-1934"… "[t]he ten day requirement to use a permit to acquire was adopted" *See* Def.'s Memorandum at p. 5. While the State's submissions do not make it clear when the in-person registration began, it appears that also began in 1933-1934.

These are not longstanding laws based on Circuit precedent. "In *Chovan,* for example, we expressed strong doubts that bans on firearm possession for violent offenders were sufficiently longstanding because the first known restriction was not enacted until 1938. [citation omitted] In *Jackson*, we reviewed regulations on handgun storage and sales of certain ammunition, keying our analysis to analogues in founding-era and Reconstruction-era fire safety laws." *Duncan v. Becerra*, 2020 U.S. App. LEXIS 25836, *30 (citation omitted).  Furthermore, the State relies solely on its own laws and has not presented evidence that another jurisdiction has similar laws. "In sum, laws restricting ammunition capacity emerged in 1927 and all but one have since been repealed. *Cf. Heller*, 554 U.S. at 632 ("[W]e would not stake our interpretation of the Second Amendment upon a single law . . . that contradicts the overwhelming weight of other evidence regarding the [Second Amendment].")…

2

Thus, the LCM restrictions of section 32310 cannot be considered longstanding, and thus do not enjoy a presumption of lawfulness." *Id.* at 31-32.

While it is true that dicta from *Fyock* suggests that "early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record", this dicta is not binding on this court. *Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015). "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe v. Fla.*, 517 U.S. 44, 67 (1996). Here, *Fyock's* dicta about longstanding regulation was not necessary to its result. In *Fyock,* the court found that the magazine law at issue was not longstanding, high capacity magazines are protected by the Second Amendment and then applied intermediate scrutiny to uphold the ban. *Fyock*, 779 F.3d at 1001. "The limited nature of that opinion [*Fyock*] is self-evident; in its eight pages, it referenced the abuse of discretion standard twelve times, and it repeatedly emphasized the narrow scope of the ruling." *Duncan v. Becerra*, 2020 U.S. App. LEXIS 25836, *61. More to the point, *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) predates *Fyock,* and when a panel contradicts each other, generally the earlier panel opinion must be the controlling precedent because the later panel cannot overrule the prior panel. See *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011) ("A three-judge panel cannot reconsider or overrule

circuit precedent unless 'an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.'").

The State also cites to the D.C. Circuit and Fifth Circuit for support on this issue. However, both of these cases are inapposite. In *Heller II*, the D.C. Circuit merely "presume[d]" that "the District's basic registration requirement…does not impinge upon the right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (*Heller II*).[1] It only upheld that presumption because it "[found] no basis in either the historical record or the record of this case to rebut that presumption" and because the "basic registration requirements are self-evidently de minimis." *Id.* at 1255. Similarly, and contrary to the State's suggestion, the Fifth Circuit did not find restrictions on 18-to-20-year olds longstanding based on laws from 1923. The Fifth Circuit's extensive historical analysis of the founding era determined "the term 'minor' or 'infant'—as those terms were historically understood—applied to persons under the age of 21." *NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185, 201 (5th Cir. 2012). It concluded that if "a representative citizen of the founding era conceived of a 'minor' as an individual who was unworthy of the Second Amendment guarantee, and conceived of 18-to-20-year-olds as 'minors,' then it stands to reason that the citizen would have

---

[1] Plaintiffs have not challenged the basic registration requirement of permits to acquire. Plaintiffs instead challenge the additional burdens of in-person registration and the expiration of permits to acquire after an arbitrary ten days after issuance.

supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id*. at 202.
Even then, "in an abundance of caution", the Fifth Circuit assumed intermediate
scrutiny applied to the restriction before upholding it. *Id*. at 204. The State's position
that either of the challenged laws are longstanding is without merit.

The State is also incorrect in arguing that the ten-day requirement is a
conditions and qualifications on the commercial sale of arms as opined by *Heller*.
As a preliminary matter, Plaintiffs do not agree with the State's reading of that
portion of *Heller*. That passage does not suggest some commercial regulation of
arms falls outside of constitutional scrutiny.  Rather unlike historically unprotected
conduct, the *Heller* Court was simply stating that post-*Heller,* many regulations on
the sale of arms would still be constitutional rather than outside of constitutional
scrutiny. Plaintiffs' position makes more sense in light of *Heller*'s holding that
"Constitutional rights are enshrined with the scope they were understood to have
when the people adopted them" *District of Columbia v. Heller*, 554 U.S. 570, 634.
Precedent makes clear that the regulations at issue in this litigation infringes on
protected conduct. In *Jackson v. City & Cty. of S.F*., 746 F.3d 953 (9th Cir. 2014)
upholding a ban on the sale of hollow point bullets; in *Silvester v. Harris*, 843 F.3d
816 (9th Cir. 2016) upholding California's ten-day waiting period; in  *Pena v.
Lindley*, 898 F.3d 969 (9th Cir. 2018) upholding the California Safe Handgun

5

Roster; and in *Heller v. District of Columbia*, 419 U.S. App. D.C. 287, 801 F.3d 264 (2015) (*Heller III*) regarding a host of registration requirements.

In *Jackson*, the Ninth Circuit reviewed San Francisco's ban on the sale of hollow point ammunition. "[S]ection 613.10(g) prohibits only the sale of hollow-point ammunition within San Francisco, not the use or possession of such bullets. Such a sales prohibition burdens the core right of keeping firearms for self-defense only indirectly, because Jackson is not precluded from using the hollow-point bullets in her home if she purchases such ammunition outside of San Francisco's jurisdiction." *Jackson*, 746 F.3d at 968.   Despite the law at issue regulated commercial sales of ammunition, the Ninth Circuit still applied intermediate scrutiny to review the ban.

Similarly, in reviewing ten separate registration requirements, the D.C. Circuit court found that all were subject to constitutional scrutiny. "In *Heller II*, we held the additional requirements, as they then stood, 'affect[ed] the Second Amendment right because they [we]re not de minimis' — that is, they 'ma[d]e it considerably more difficult for a person lawfully to acquire and keep a firearm ... for the purpose of self-defense in the home.' *Id*. at 1255… Those requirements are therefore subject to intermediate scrutiny." *Heller III,* 801 F.3d at 274. Similarly, the Ninth Circuit assumed intermediate scrutiny applied in *Pena v. Lindley*, 898 F.3d 969, when evaluating a challenge to a ban on the sale, but not ownership of, certain types of

6

handguns. And in *Silvester v. Harris*, 843 F.3d 816, in evaluating a challenge to California's ten day waiting period, the Ninth Circuit "assume[d], without deciding, that the regulation is within the scope of the Amendment and is not the type of regulation that must be considered presumptively valid." *Id*. at 826-827. On the other hand, the State cannot point to a single case that supports their position that the laws at issue in this case are outside of constitutional scrutiny. The case law simply does not support the State's position and this Court should find that the laws Plaintiffs complain of infringe on protected conduct.

Even if a law from the early 20th century is longstanding and thus, presumptively lawful, Plaintiffs have rebutted this presumption. "Unless flagged as irrebutable, presumptions are rebuttable. [citations omitted]" *Binderup v. AG of United States*, 836 F.3d 336, 350, (3d Cir. 2016). In *Binderup*, the Third Circuit reviewed an as-applied challenge by a felon to the federal ban on felons owning firearms. It first described its previous precedent to explain how to rebut a presumption of constitutionality:

> In that regard, we first determined that "*Heller*'s statement regarding the presumptive validity of felon gun dispossession statutes does not foreclose" an as-applied challenge. … Next, we explained what was required to mount a successful as-applied Second Amendment challenge to [18 U.S.C.] § 922(g)(1). We looked to the "historical pedigree" of the statute to ascertain "whether the traditional justifications underlying the statute support a finding of permanent disability in this case." … For the reasons discussed, we concluded that "[t]o raise a successful as-applied challenge, [one] must present facts about himself and his background that distinguish his circumstances

7

from those of persons historically barred from Second Amendment protections." [] We explained further: For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society."

*Binderup*, 836 F.3d at 360-361 (citations and punctuation omitted).

This is in accord with the Sixth Circuit's reasoning in *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) which found some people who have been involuntarily committed may have Second Amendment rights. "As the Seventh Circuit has recognized, the *Heller* Court's observation regarding the presumptive lawfulness of longstanding bans is precautionary, not conclusive…." *Tyler*, 837 F.3d at 687 (citation omitted). "In the face of what is at best ambiguous historical support, it would be peculiar to conclude that [18 U.S.C.] § 922(g)(4) does not burden conduct within the ambit of the Second Amendment as historically understood based on nothing more than *Heller*'s observation that such a regulation is 'presumptively lawful.' 554 U.S. at 627 n.26. We proceed to step two, then, with an understanding that people who have been involuntarily committed are not categorically unprotected by the Second Amendment." *Tyler,* 837 F.3d 678 at 690.  Similarly, in *Heller II*, the D.C. Circuit "presume[d]" that "the District's basic registration requirement…does not impinge upon the right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011). It only upheld that presumption because it "[found] no basis in either the historical record or the record of this case

8

to rebut that presumption" and because the "basic registration requirements are self-evidently de minimis." *Heller II*, 670 F.3d at 1255.

By analogy, this Court should find that Plaintiffs have rebutted the presumption of constitutionality if it finds the Hawaii laws at issue are longstanding. First, the restrictions are not de minimis. They are a substantial burden on Plaintiffs rights as shown below. Second, the traditional justification for the relevant registration laws are no longer present with digital programs such as Rap Back in use, as discussed in Plaintiffs' Memorandum in Support of Summary Judgment, and modern Federal Firearm Licensee (FFL) requirements as discussed below.  For all these reasons, even if this Court finds that the laws at issue are longstanding and thus, presumptively constitutional, it should find that Plaintiffs have rebutted that presumption and subject them to constitutional scrutiny.

## III.   The Ten-Day Expiration on a Handgun Permit Fails Heightened Scrutiny[2]

The State's primary argument for distinguishing handgun permits from long arm permits is that "pistols and revolvers are more dangerous". *See* Def.'s Memorandum at p. 15. However, the State presented absolutely no evidence to substantiate that argument.  And common-sense dictates that a long arm is more dangerous than a handgun.  While handguns are more concealable than rifles, rifles

---

[2] Plaintiffs briefed this issue on pp. 10-14 of their Motion for Summary Judgment (PageID#194-198).

shoot further, tend to be more reliable and rifle rounds are overall deadlier which is probably why our infantry enters combat with rifles as the primary weapon and not handguns. Rifle rounds are longer and thus, hold more powder. This makes them have more penetration power than handgun rounds. Shotguns fire a spread of shot that make them much more efficient at shooting close range targets. These attributes make both of these variants of long arms arguably more dangerous than handguns.

If the State wanted to rely on handguns being more concealable than long arms to demonstrate they are more dangerous, then they were required to actually produce evidence and legal argument tying these two things together. They have not done so and thus, made no showing to justify their different treatment of long arm permits versus handgun permits. This is an implicit concession that the law is constitutionally underinclusive.

The State's further argues that the ten-day expiration is needed to notify HPD whether applicants have become addicted to drugs, diagnosed with mental disorders, and/or had a restraining order issued against them. What they fail to acknowledge is that there is already a mechanism within the H.R.S. to notify the police of these facts. It is specious to argue that a person who applied for a permit to acquire and passed the State's fourteen day background check and retrieved the permit to acquire is realistically going to become addicted to drugs or become diagnosed with a disqualifying mental disorder and slip through the cracks if the handgun permits

10

expired in thirty days rather than ten.[3]  H.R.S. 134-7(g) already requires "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3." As for protective orders, H.R.S. § 134-7(3)(f) already notifies the police and requires that they seize firearms owned by anyone that has had a protective order issued against them.

Defendant's explanations about someone's physical appearance, address, or mental health history changing over time (*see* Def.s' Memorandum at p. 18) precisely demonstrates the misfit of the treatment between handguns and rifles/shotguns.  Defendant states that "[a] relatively short expiration date will ensure that the information remains accurate when the person acquires his or her firearm." *Id*.  But long gun permits are good for a year, and if someone's appearance, address

---

[3] The State also downplays Rap Back because it doesn't provide notifications for individuals with mental health issues or those subject to "civil protective orders or restraining orders" and that the "Rap Back Service is not infallible." *See* Def.'s Memorandum p. 17.  What the State fails to take in to account is the burden on Plaintiffs (and other law-abiding citizens) to be constantly monitored, entered into federal and State databases, to completely waive medical privilege, and be subject to the whim of the legislature adding more restrictions on them, simply for exercising a constitutional, fundamental right.  In any event, Hawaii law already deals with individuals who becomes a prohibited possessor as that person "within forty-eight hours of disqualification, shall voluntarily surrender all firearms and ammunition…" *See* H.R.S. § 134-7.3.

or mental health history can change in 10 + 1 days, the same argument has to apply to long gun permits and their 365 days validity because H.R.S. § 134-7 doesn't discriminate on handguns or long guns, it deals with prohibitions on "firearms" which encompasses both.

Defendant also makes the argument that "ten days is not unreasonably burdensome.  For pistols and revolvers, a separate application and permit is required for each transaction.  H.R.S. § 134-2(e).  Consequently, each permit is good for only one thing."  *See* Def.'s Memorandum at p. 14.  Defendant would like the Court to ignore the process of getting the permit.  As briefed in Plaintiffs' Memorandum in Support on p. 7, Plaintiffs (and other law-abiding citizens) must wait fourteen (14) days after completing the application for the waiting period/background check. Once the permit is issued, Plaintiffs have ten (10) days to use it.  This is not an instant process though as Plaintiffs must physically pick up the permit from HPD[4] and then complete the transaction.

Strict Scrutiny should apply because the ten-day expiration for permits to acquire constitutes a substantial burden on Plaintiffs' rights. Even if it does not, the

---

[4] Plaintiffs have entered into a settlement with HPD to be allowed to retrieve permits to acquire by email instead of physically retrieving them at the station.  This part of the settlement will begin "no later than December 31, 2021."  Yet, as of this writing, and explained further on in the brief, HPD's current system is by appointment only and there are simply no appointments available for the next 90 days.

statute still fails because the State has not established a reasonable fit between the expiration of a permit to acquire after ten days and public safety.

### IV.    State Law Requires In-Person Registration

As a preliminary matter, the State misstates the difference between an as-applied challenge and a facial challenge. The difference between the two has nothing to do with who needs to be sued in order to achieve the relief sought. *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010) ("the distinction between facial and as-applied challenges * * * goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."). It is not relevant that the City was dismissed from the suit for Plaintiffs to bring an as-applied challenge.  And while Plaintiffs do bring both a facial and an as-applied challenge, those challenges are not meaningfully different because contrary to the State's position, and as briefed fully below, H.R.S. § 134-3 requires in-person registration.

Defendant cites to bill HB 2744 H.D. 1, S.D. 2, which amends HRS § 134-3(c) to add physical inspection of firearms during registration.  Defendant suggests "that the statute previously did not require [physical registration]".  *See* Def.'s Motion for Summary Judgment, p. 20, fn. 3.[5]  This new bill, <u>at best</u>, can be described

---

[5] Governor Ige allowed HB2744 HD1 SD2 "to become law without [his] signature." As such, there is no question that in-person registration is the law. *See* https://www.capitol.hawaii.gov/session2020/bills/GM1184_.PDF?fbclid=IwAR2n 1XRDgYboVD0DKnx1VKft3GOXoBYBAk_41p00FBjby5Ve1HT2NYYCRRM (last accessed 9/17/2020).

13

as clarifying the statute to make it abundantly clear that in-person registration is required, not that it was <u>never</u> required.[6],[7]   Defendant's discovery responses belie that in-person registration was not already state law.   As briefed in Plaintiffs' Memorandum (p.15), Defendant denied that in person registration was not required by Hawaii state law.   *See* Defendant's Response to Request for Admission No. 4: "Please admit that Hawaii state law does not require in-person handgun registration after purchase of a handgun."   Response: "Defendant denies this request."   Exhibit "D" to Plaintiffs' Motion for Summary Judgment.   *See also* Exhibit "A" to Plaintiffs' Motion for Summary Judgment, Defendant's Response to Interrogatories, No. 5 "Please admit that Hawaii state law does not require in-person handgun registration after purchase of a handgun."   Response: "Defendant denies this request."

Defendant had ample opportunity to deny that Hawaii law required in-person firearm registration, but it didn't.   Hawaii is bound to those admissions.   "As we

---

[6] The State argues that this legislation does not impact this litigation because the instant lawsuit was filed prior to the enactment of the law. That is a spurious argument.   Plaintiffs seek injunctive relief so that going forward they will not be burdened by H.R.S. § 134-3's in-person registration requirement. The bill's language which states this new law does not impact rights vested prior to the enactment of this bill is irrelevant.

[7] HB2744 generally creates a new Gun Violence and Violent Crimes Commission, prohibits firearms without serial numbers, adds additional definitions, and clarifies that in-person registration is required. *See* https://www.capitol.hawaii.gov/session2020/bills/HB2744_SD2_.pdf.

have held, [j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151 (9th Cir. 2011) (citation and punctuation omitted).

But the State wasn't the only defendant that made assertions that in-person registration is <u>current</u> state law.  Before the City and County of Honolulu ("City") was dismissed, the City responded to Requests for Admissions and Interrogatories in the same manner.  For instance, Plaintiffs asked the City to "admit that Hawaii state law does not require in-person handgun registration after the purchase of a handgun." City's Response: Deny. *See* Exhibit "1", City's Response to Request for Admission No. 4.  In case that question was misunderstood, Plaintiffs asked a different way: "Please admit that it is currently the Honolulu Police Department's policy, through the City and County of Honolulu, to require in-person registration of handguns after purchase."  City's Response: Deny. *Id*. at Response No. 16.

And in Plaintiffs' Interrogatories to the City, Plaintiffs asked: "If you contend that Hawaii's law requires in-person handgun registration, please explain in detail this contention."  City's Response (minus objections): "*See* HRS § 134-3; 134-3 (c)." *See* Exhibit "2", City's Response to Plaintiffs' Interrogatories No. 5. The City fortified its position in its Response to Interrogatory No. 6 when it stated that "… HRS § 134-3 (c) states <u>only</u> dealers are not required to bring in firearms for

15

registration purposes…". *Id*. at Response No. 6 (underlining added). The City even admitted that it "communicated with the State of Hawaii or any agency thereof, for any interpretation of Hawaii state law regarding the registration of handguns[.]" *Id*. at Response No. 7. And more of the same, the City stated that "Applicants are required to register their firearm in person pursuant to HRS § 134-3(c)…" *Id*. at Response No. 17. *See also* Response No. 18 (same). And then finally, when asked about how many times an applicant must go "in person to the HPD/Firearms Permit Union (sic) in order to complete [the firearm acquisition process]", the City responded: "Per Hawaii state law, an applicant who wishes to acquire a handgun must: … "3) Within 5 days of acquiring the firearm (handgun) return to HPD and register the acquired firearm." *Id*. at Response No. 20.

The reason Hawaii and the City both stated that in-person registration is a requirement under Hawaii law, is because it was the law. That in-person registration is required is further bolstered because persons in Hawaii can take a firearm into a police station. This seems like a strange place to allow a non-law enforcement officer to carry a firearm, yet Hawaii law allows this. Why? Because it is necessary to effectuate in-person registration.

Being able to carry a firearm into a police station appears to have been added in 1988 by Act 275. *See* Exhibit "3", Act 275.[8] The previous version of H.R.S. §

---

[8] https://www.capitol.hawaii.gov/slh/Years/SLH1988/SLH1988_Act275.pdf

134-6 does not include "police station" in the Act.[9]   *See* Exhibit "4", Act 178

(1984).[10]   Committee notes from 1988 plainly state why this language was added:

"Your Committee finds that strict interpretation of the existing law makes it illegal

for firearms to be transported to hunter safety classes or firearm instruction classes,

both of which promote the safe use of firearms. Moreover, transportation of firearms

to the police station as required in order to register them is likewise illegal."[11] *See*

Exhibit "5".  If in-person registration was not required by state law, as both the City

and Defendant already admitted it is, then amending the law to allow a person to

carry a firearm into a police station makes absolutely zero sense.  But the *coup de*

*grâce* to Defendant's argument that in-person registration isn't really required under

current law is the statement that "police should be expecting people to bring their

guns and gun containers to the police station, especially since registration is required

---

[9] https://www.capitol.hawaii.gov/slh/Years/SLH1984/SLH1984_Act178.pdf

[10] H.R.S. §§ 134-23(a)(6), 134-24(a)(6) and 134-25(a)(6) are the current statutes which lists "a police station" as place a person can take a firearm in an enclosed container.  The aforementioned statutes appear to have replaced § 134-6 by Act 66 (2006). *See* 2006 Hi. ALS 66, 2006 Hi. Act 66, 2005 Hi. HB 877.

[11]
https://www.capitol.hawaii.gov/journal/house/1988/1988%20HJournal%2008%20
Standing%20Committee%20Reports%201.pdf.  (p.171, SCRep. 464-88).

17

by HRS 134-3." *See* Def.'s Memorandum at p. 22.  No question remains: in-person registration of handgun is now and has been Hawaii state law.

Defendant further attempts to defend its in-person registration scheme because it claims that it is necessary to verify "identifying marks on a weapon, like the serial number…" for tracing purposes.[12]  *See* Def.'s Memorandum at p. 23.  But, in order to apply for a handgun permit, one needs the "Make, Model, Caliber, Type/Revolver/Semiautomatic etc, Barrel Length, and Serial Number."[13]  If a Federal Firearms Licensee (FFL) is selling the firearm to a prospective purchaser, the FFL is required by federal law to complete a Firearms Transaction Record (ATF Form 4473)[14] which includes the make, model, serial number and caliber or gauge of the firearm being sold.  It also requires the duplicative information required by

---

[12] "Tracing is a systematic process of tracking the movement of a firearm from its manufacture or from its introduction into U.S. commerce by the importer through the distribution chain (wholesalers and retailers), to identify an unlicensed purchaser. That information can help to link a suspect to a firearm in a criminal investigation and identify potential traffickers. Firearms tracing can detect in-state, interstate and international patterns in the sources and types of crime guns." *See* https://www.atf.gov/firearms/national-tracing-center.

[13]   http://www.honolulupd.org/information/index.php?page=gunmain.  *See also* Verified Complaint, ¶ 16.

[14] https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

18

Hawaii state law.[15]  One may ask, what if someone purchases a handgun from a non-

FFL?

> Well, H.R.S. § 134-2(f) contains the requirements for that scenario:

> In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

Common sense dictates that the person selling the firearm will want to verify that all

the permit information is correct, including make, model, serial number and any

other characteristic of the firearm be 100% correct so that IF the firearm is used in a

crime, the person selling can prove the sale and that it wasn't in his or her possession.

And, the "registering authority", which would already be in possession of the initial

registration document, could simply cross-reference the initial registration against

the mailed-in permit.  In short, Defendant's claim that in-person registration is

---

[15]  *See* H.R.S. § 134-7 for list of disqualifications for firearm applicants, much of which mirrors the federal disqualifiers.  *See generally* 18 U.S.C. 922(g).  Also, during discovery, the City provided its forms and applications for the permit to acquire firearms.  *See* Exhibit "6".

19

required to do all the things already required by law is specious and unnecessarily burdensome.

Defendant also makes the argument that "the requirement of bringing the firearm to the registration does not impose a substantial burden." *See* Def.'s Memorandum at p.24. Defendant essentially asks this Court to look at individual, discrete parts of its law, and those burdens piece-meal, instead of the burdens as a whole. "Constitutional rights would become meaningless if states could obliterate them by enacting incrementally more burdensome restrictions while arguing that a reviewing court must evaluate each restriction by itself". *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1111, 2017 U.S. Dist. LEXIS 101549, *3, 2017 WL 2813727 (quoting *Peruta v. Cty. of San Diego*, 824 F.3d 919, 953 (9th Cir. 2016) (Callahan, J., dissenting). But there isn't just one individual requirement to exercise a law-abiding citizen's Second Amendment right in Hawaii like in most of the rest of the United States. Hawaii burdens the right with lengthy applications, medical privacy waivers, fourteen (14) day waiting periods, having to retrieve a permit to acquire, having to provide make/model/serial number of the handgun, having to take off work and go pick up a permit, and then a firearm, and then having to go back to the permitting unit are all still individual burdens on Plaintiffs' rights. Taken as a whole, they rise to an even greater level of burden that cannot be constitutional.

This case is also like a recent case from the Northern Marianas Islands.  There, the district court held that a firearm registration scheme did not "rationally serve [the] interest" of protecting public welfare.  *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, at *35 (D. N. Mar. I. Sep. 28, 2016).  It did so despite the government alleging that the registration was a de minimis burden.

Defendant reminds us that the Plaintiffs settled their claims against the City which was supposed to extend the Firearm Permit Unit hours and allow for the emailing of permits to acquire.  *See* Def.'s Memorandum, p. 25; *See also* Defendant's Concise Statement at ¶ 18.  State law requires that anyone purchasing a handgun must register it within five days of acquiring it.  *See* H.R.S. § 134-3(b).  The Honolulu Police Department has gone to an appointment only scheme after COVID-19, and as of the date of this writing, there are zero appointment times for anyone to register a handgun in the next ninety (90) days.

21



And while the Plaintiffs have not challenged the <u>overall</u> permit to acquire scheme as laid out by Hawaii law, it should be noted that permits to acquire are also impossible to schedule to apply for in the next ninety (90) days.

Firearms - 723-3190

Police Reports - 723-3258

Evidence - 723-3270

Main Police Station appointments may only be scheduled 90-days in advance

Anyone entering a police station will undergo health screening prior to receiving service.

1   Choose Appointment

Firearms: Permit To Acquire - Main Police Station                                    ⌄

Permit to Acquire Firearms - 3 guns or less   (10 minutes)                           ⌄

MORE TIMES ›

All appointments for the next 90-days are booked. Please check back for openings and cancellations.

Should the Court find in-person registration unconstitutional, which the D.C. Circuit has already done, then it would free up the Honolulu Police Department to work on the permits to acquire handguns ("the quintessential self-defense weapon." *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008)). And no one can deny that a 90 day wait (but actually more since there are no appointments in the next 90 days) is a "substantial burden" on any right. Further, since H.R.S. § 134-3(b) requires registration within five (5) days, what happens when compliance with the law is literally impossible?

V.      Conclusion

Hawaii's in-person registration law and invalidation of permits to acquire handguns after ten days serve no purpose other than to burden law-abiding citizens'

23

rights.  As such, these requirements should be declared unconstitutional and the Court should deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated: September 28, 2020

*/s/ Alan Alexander Beck*
Alan Alexander Beck

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh
*\*Admitted Pro Hac Vice*

Attorneys for Plaintiffs