CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI         3835
KENDALL J. MOSER         6515
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: (808) 586-1494
Facsimile: (808) 586-1369
E-Mail: Caron.M.Inagaki@hawaii.gov
        Kendall.J.Moser@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii and the CITY and COUNTY OF HONOLULU,<br><br>　　　　　　Defendants. | CIVIL NO. 19-00578 JMS-RT<br><br>DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S REPLY MEMORANDUM IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>ECF No. 60 |

<u>Hearing on Parties' Motions</u>
Date: October 19, 2020
Time: 10:00 a.m.
Chief Judge J. Michael Seabright

Trial Date: January 12, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

I. The Laws Plaintiffs Challenge Are Longstanding ........................................... 1

II. HRS § 134-2 Survives Intermediate Scrutiny ................................................. 2

III. HRS § 134-3 Survives Intermediate Scrutiny ................................................. 5

IV. Conclusion . ..................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Calvary Chapel Bible Fellowship v. County of Riverside*,
    948 F.3d 1172 (9th Cir. 2020) ................................................................... 6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................................... 3, 6

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ...................................................... 1

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .............................. 2

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ................................ 7

*Jackson v. City and County of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ................................................................. 2-3

*Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) ......................................................... 3

*National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco,
    Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012) ............................... 2

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ..................................................... 3, 4

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ...................................................... 6

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ...................................... 7

*United States v. One (1) Palmetto State Armory PA-15 Machinegun
    Receiver/Frame, etc.* 822 F.3d 136 (3d Cir. 2016) .......................................... 3

## STATUTES

Hawaii Revised Statutes § 134-7(g) ............................................................................ 4

DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY
AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S
REPLY MEMORANDUM IN SUPPORT OF COUNTER
MOTION FOR SUMMARY JUDGMENT

Defendant Clare E. Connors, in her Official Capacity as the Attorney General of the State of Hawaii ("Defendant"), by and through her attorneys, Caron M. Inagaki and Kendall J. Moser, Deputy Attorneys General, hereby submits this Reply Memorandum in support of her Counter Motion for Summary Judgment filed on August 12, 2020 [ECF No. 60].

I. The Laws Plaintiffs Challenge Are Longstanding.

As set out in Defendant's Counter Motion, the provisions in the Hawaii Revised Statutes ("HRS") that the Plaintiffs challenge, § 134-2 (permit to acquire) and § 134-3 (registration), date back more than 100 years to 1907 and 1919, only a few years after Hawaii became a Territory, and took their modern form in 1933-1934.[1] Yet Plaintiffs argue that these laws are not longstanding. Plaintiffs' Memorandum at p. 2. As discussed in Defendant's Counter Motion, numerous federal cases hold that firearms regulations dating back to the early 20th century are sufficiently longstanding so as to qualify for what the Supreme Court in *Heller I* called "presumptively lawful regulatory measures." *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (mentioning "early twentieth century" laws);

---

[1] See Exhibits "A," "B," and "G" to Defendant's Concise Statement of Material Facts [ECF No. 61].

*National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012) ("By 1923, therefore, twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1254-55 (D.C. Cir. 2011) ("*Heller II*") ("The Court in *Heller [I]* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century.").

There can be no reasonable dispute that Hawaii's permit to acquire and registration provisions are therefore presumptively lawful under *Heller I*. That should end the analysis. Plaintiffs argue, however, that they have rebutted the presumption of constitutionality because the challenged provisions are a substantial burden on their rights, and the justifications for registration laws have been eclipsed by modern technology. Plaintiffs' Memorandum at p. 9.

II.  HRS § 134-2 Survives Intermediate Scrutiny.

As explained in Defendant's Counter Motion, using a permit to acquire a handgun within ten days is not a substantial burden on conduct protected by the Second Amendment. Strict scrutiny therefore does not apply. The ten-day requirement in HRS § 134-2 affects the only ***the manner*** in which a person obtains a handgun. It is not a ban. *See Jackson v. City & County of San Francisco*, 746

2

F.3d 953, 961 (9th Cir. 2014). Defendant briefed these issues on pp. 12-18 of her Counter Motion and need not repeat her arguments here.

In response to Plaintiffs' arguments beginning at p. 9 of their Memorandum, it was the Hawaii Legislature's decision whether to treat pistols and revolvers differently than rifles and shotguns. "[I]n the face of policy disagreements, or even conflicting legislative evidence, 'we must allow the government to select among reasonable alternatives in its policy decisions.' . . . Our role is not to re-litigate a policy disagreement that the [Hawaii] legislature already settled, and we lack the means to resolve that dispute." *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018). If the Legislature felt that the concealability of pistols and revolvers justified limiting permits to acquire to ten days rather than the one year accorded to rifles and shotguns, it was entitled to make that determination. Furthermore, *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), itself makes a significant distinction between handguns and other firearms, such as long guns. *Heller I* gave handguns "special consideration" because they are the "quintessential self-defense weapon." *See Kolbe v. Hogan*, 849 F.3d 114, 138-39 (4th Cir. 2017); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 144 (3d Cir. 2016). If the Supreme Court can distinguish handguns from long guns, so can the Hawaii Legislature.

Plaintiffs further argue that the difference between the expiration periods for handguns and long guns makes the permitting statute constitutionally underinclusive. However, the Ninth Circuit has held that "underinclusiveness does not doom [a statute] under intermediate scrutiny." *Pena*, 898 F.3d at 981. Under intermediate scrutiny, "[t]he government must show that the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, but not necessarily that the chosen regulation is the least restrictive means of achieving the government's interest." *Id.* at 979 (internal quotation marks omitted). Here the ten-day expiration date promotes public safety, which would be less effectively achieved otherwise, and even if a longer expiration date, such as for long guns, were possible, it is not required.

Plaintiffs argue that permits should be given a longer expiration date than ten days because under HRS § 134-7(g), "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3." Relying on voluntary surrender in this way ignores reality. Many people may not realize that they are supposed to turn in their firearms. Other people may simply refuse to do so. The requirement of having to get a new permit for each pistol or revolver, with an expiration date of ten days for each, ensures that a person's qualifications will be checked again each

time he or she applies for a new permit. The governmental objective of public safety is promoted because a relatively short expiration date will ensure that the information in a person's application remains accurate when they acquire their firearm.

III.  HRS § 134-3 Survives Intermediate Scrutiny.

Plaintiffs discuss their written discovery requests to Defendant and the City and County of Honolulu and the responses thereto at pp. 13-16 of their Memorandum. Defendant denied Plaintiffs' requested admissions because they do not distinguish between what the statute requires on its face, and what the statute has been interpreted as requiring as-applied. Defendant denied the requested admissions based on the confusing and ambiguous nature of those requests ("Please admit that Hawaii state law does not require in-person handgun registration after purchase of a handgun.").

Defendant is neither bound by the City's interpretation of the statute nor by the City's discovery responses. The City and Defendant are and were separate parties. Even if the City interpreted HRS § 134-3 as requiring in-person inspection, what matters for a facial challenge is what the statute says on its face. On its face, HRS § 134-3 does not expressly require in-person inspection.

Plaintiffs make much of the fact that police stations were added to the place to keep statutes so as to make clear that people can take their firearms to police

stations. All this demonstrates is that the practice, as applied, has been to bring firearms to police stations for registration. It still does not change the fact that the firearm statutes do not, on their face, impose such a requirement. *See Calvary Chapel Bible Fellowship v. County of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020) ("when reviewing a facial challenge," courts are "limited to reviewing the text of the [statute] itself"; "[h]ow the statute has been interpreted and applied by local officials is the province of an as-applied challenge").

In any event, even if the Court were to treat the statutes as requiring in-person inspection, such a requirement is constitutional. The provisions at issue date back to 1907 and 1919, respectively, and constitute longstanding "conditions and qualifications on the commercial sale of arms." *Heller I*, 554 U.S. at 626-27 & n.26. *See also Silvester v. Harris*, 843 F.3d 816, 829-32 (9th Cir. 2016) (Thomas, C.J., concurring) (applying the "conditions and qualifications on the commercial sale of arms" exception). If the Court goes on to the second step of the analysis, intermediate scrutiny should be applied because an in-person inspection requirement merely affects the manner in which registration takes place rather than imposing a complete ban. And it is not hard to bring a firearm to a police station in any event. Moreover, an in-person inspection protects public safety by ensuring that the registration information is accurate, ensuring that the firearm complies with Hawaii law, and confirming the identity of the firearm to facilitate tracing by

6

law enforcement. *See Heller v. District of Columbia*, 801 F.3d 264, 285-86 (D.C. Cir. 2015) ("*Heller IV*") (Henderson, J., concurring in part and dissenting in part); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

Plaintiffs seem to think that just because the police should expect people to bring their firearms to police stations means that they are required to do so by statute. However, the fact that a practice has developed, as-applied, where people bring their firearms to the police station for registration does not mean that it is required by the statute on its face. What it does mean is that the police should not be surprised if people bring their firearms to the police station, and the majority's position in *Heller IV*, 801 F.3d at 277, that the police might shoot people when they bring their firearms to the police station, is absurd.

Finally, Plaintiffs continue to complain about the practices of the Honolulu Police Department, now arguing that firearm appointments are not being scheduled in the next ninety days. However, Plaintiffs settled their claims with the City and the City has been dismissed from this case. If Plaintiffs had wanted to continue to pursue as-applied claims against the City then they should not have agreed to dismiss the City from this case. Instead, they chose to pursue only their claims against Defendant in her official capacity, i.e. the State, and those claims cannot be as-applied challenges since the State does not apply the firearm permitting and registration laws. *See* HRS §§ 134-2 & 134-3 (specifying that "the chief of police"

issues permits and registrations).

IV. Conclusion

Based on the foregoing reasons and authorities, and those in her Counter Motion, Defendant respectfully requests that this Court enter summary judgment in her favor and against the Plaintiffs.

DATED: Honolulu, Hawaii, October 5, 2020.

        STATE OF HAWAII

        CLARE E. CONNORS
        Attorney General
        State of Hawaii

        /s/ Kendall J. Moser
        KENDALL J. MOSER
        Deputy Attorney General

        Attorney for Defendant
        CLARE E. CONNORS, in her
        Official Capacity as the Attorney
        General of the State of Hawaii