Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
* *Admitted Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>Plaintiffs,<br><br>v.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii<br><br>Defendant. | Civil No. 19-00578 (JMS-RT) |

## FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

COME NOW the Plaintiffs, Todd Yukutake and David Kikukawa, ("Plaintiffs"), by and through their undersigned counsel, and complain of the Defendant as follows:

## I.     PARTIES

1. Plaintiff Todd Yukutake is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

2. Plaintiff David Kikukawa is an adult male resident of the State of Hawaii and resides in Honolulu County and is a citizen of the United States.

3. Defendant Clare E. Connors is the Attorney General of the State of Hawaii and is sued in her official capacity and is responsible for enforcing the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii's on the registration of firearms. Defendant Connors may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813.

## II.

## III.    JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## IV.    STATEMENT OF FACTS

**a.     The Second Amendment**

6. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

7. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 1027 (2016).

8. Handguns are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

9. Given the decision in *Heller*, Defendants may not infringe on the keeping and bearing of handguns, deprive individuals of the right to keep or carry handguns in an arbitrary and capricious manner, or impose regulations on the right to keep and carry arms that are inconsistent with the Second Amendment. *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015).

10. Hawaii law requires that "[e]very person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition." *See* HRS § 134-3.

11. Hawaii law requires the in-person registration of all handguns. *See* H.R.S. § 134-3(c) (as amended by HB 2744 H.D. 1, S.D. 2).

12. Additionally, Hawaii mandates purchasers of firearms to be entered into an FBI database for "constant criminal record monitoring." HRS § 846-2.7(b)(43) provides authority for "The county police departments on applicants for permits to acquire firearms pursuant to section 134-2 and on individuals registering their firearms pursuant to section 134-3…" to enter firearm purchasers in "rap back".

13. Rap back is a "service of the [FBI] that provides continuous criminal record monitoring … and notifies them when an individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country. This notification will allow county police departments in Hawaii to evaluate if the owner of a firearm may continue to legally possess and own firearms." *See* https://www.capitol.hawaii.gov/session2016/bills/SB2954_HD1_.htm (last accessed 10/23/2020).

14. H.R.S. § 134-7(g) requires "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3" and H.R.S. § 134-7(3)(f) notifies the police and requires that they seize firearms owned by anyone that has had a protective order issued against them.

15. Prior to purchasing a handgun, all persons must apply for a permit to acquire. *See* H.R.S. § 134-2.

16. To obtain a permit to acquire, one must have the serial number, make and model of handgun one wishes to purchase.[1]

17. This requires that an applicant go to the store selling the firearm to physically purchase (but not take possession of) the handgun so that the applicant can have the serial number, make and model of the handgun and so that the handgun at issue will not be sold to someone else.[2]

18. Then an applicant must appear in person at HPD during its business hours, only by appointment, <u>and</u> only during a weekday, to drop off the permit to acquire paperwork.

19. Initially, Plaintiffs sued the City and County of Honolulu due to the requirements of in person registration, HPD's hours being too short, mandating in-person pickup of already issued permits to acquire (instead of mailing via postal

---

[1] Comparing a state with similarly strict firearm purchase laws, in New Jersey, a permit to purchase a pistol does not require that the make, model and serial number of a handgun be provided up front before the permit issues. See https://www.njsp.org/info/pdf/firearms/sts-033.pdf. Additionally, New Jersey allows online application for the permit to purchase and provides the permit electronically to the applicant upon approval. *See* https://www.njportal.com/NJSP/fars (last accessed 10/26/2020).

[2] If an applicant is denied a permit to acquire, the dealer usually refunds the price of the handgun minus a restocking fee of fifteen to twenty percent which the applicant loses.

service or email) and making things generally too difficult for the average law abiding person, and Plaintiffs, to acquire and register handguns.

20. Plaintiffs and the City and County settled that portion of the case and the City and County (and HPD) agreed to extend the business hours for permits to acquire and for registration one day per week. Additionally, it was agreed that permits to acquire would be sent via email to those that applied so as not to make that person come to the station to pick up an already issued permit to acquire.

21. Now, HPD has gone to an appointment only system and it is almost impossible to get appointments within 90 days to apply for a permit to acquire OR to register a handgun as required under the statute.

22. As of the time of this writing, HPD has no availability NINETY (90) days in the future for appointment for HPD's regular hours to apply for a permit to acquire or to register a handgun and all "extended hours" appointments in the next seven (7) days are unavailable.

23. Assuming the application gets an appointment and applies for a permit to acquire, the applicant must wait fourteen calendar days, pursuant to Hawaii law, while HPD conducts the background check.

24. Then, assuming the applicant passes the background check, the applicant has ten days after the fourteen days lapse to return to HPD to pick up his

or her issued permit to acquire during the aforementioned business hours <u>and</u> to pick up the firearm from the store.

25. The ten-day expiration of an already issued permit to acquire a handgun is arbitrary and capricious and serves no governmental interest. This is especially true when permits to acquire long guns are valid for one year from date of issuance and can be used to purchase multiple long guns.

26. The ten-day expiration increases the burden on Plaintiffs and all other law-abiding citizens who wish to exercise their rights to armed self-defense with a handgun inside their home. This is because if a person cannot complete the purchase within the ten-day validity period, the person must start the entire process over, including an additional background check.

27. After picking up the firearm from the store, the person has five days to register it with the HPD. *See* H.R.S. § 134-3(b).

28. A permit to acquire a rifle or a shotgun (long gun), however, is valid for one year from the date of issue and can be used repeatedly to purchase long guns for one year from date of issue. *See* H.R.S. § 134-2(e).

29. Most people who wish to own a firearm, including the litigants in this matter, must take time off work to complete the lengthy application process.

30. If an applicant's work schedule prevents him from registering the firearm in the five-day window, the applicant would be in violation of Hawaii law.

Likewise, if they are unable to get an appointment to perform the in-person registration, they would be in violation of Hawaii law.

31. There is no government interest in requiring applicants to bring their firearm to the station when they are already required to send all the firearm information to HPD *vis à vi*s the permit to acquire.

32. The in-person registration requirement unnecessarily burdens Second Amendment conduct and is not a de minimus burden.

33. For example, Plaintiff Yukutake appeared at HPD to register a handgun but had misplaced his permit to acquire. HPD informed Plaintiff Yukutake that he needed the permit to acquire to register the handgun and that HPD would hold the firearm until he found the permit to acquire or reapplied for a permit. HPD completed a police report and stored the firearm in the evidence room.

34. After Plaintiff Yukutake found his permit to acquire, he returned to HPD the next day and retrieved his firearm. If, however, the permit to acquire expired after ten days, he would have to reapply for his permit to acquire and then wait, again, the fourteen (14) days for his waiting period and background check and go through the entire process over again. This in-person registration scheme wastes both the time of the person registering it and the police having to register the firearm when all the forms, permits, and federal requirements for purchasing a handgun have the information necessary to satisfy any governmental interest.

35. For another example, on November 11, 2018, Yukutake got a Kimber handgun at a "Friends of the NRA" banquet. The handgun was held for him at Kaneohe Gun Shop.

36. On December 13, 2018, Yukutake applied for his permit to acquire at HPD. He picked up the issued permit to acquire on December 27th or December 28th at HPD.

37. Yukutake went to the gun shop to complete paperwork, but the shop was closed and the sign on the door stated it would be closed through January 9, 2019. This exceeded the 10-day expiration date on the permit to acquire.

38. Yukutake then had to go back to HPD and reapply for his permit to acquire, wait an additional 14 days for the background check and then pick up the issued permit to acquire and then go to the gun shop to pick up the handgun and then back to HPD to register it.

39. Should the in-person registration scheme be eliminated, it would free up considerable HPD resources to work on permits to acquire and other matters.

40. The standard policy of a Federal Firearm Licensee (FFL) is to sign the back of the permit to acquire a handgun along with writing the make, model, serial number, etc. to show HPD that the FFL transferred the handgun to the purchaser. For long gun permits, the FFL does not sign the permit and instead notifies HPD that the long gun was transferred to the purchaser.

41. Upon receipt of firearms from the manufacturer or distributor, FFLs transmit the firearm information to HPD. As such, HPD already has this information before the firearm is purchased from the FFL.

42. If an FFL is not involved, H.R.S. § 134-2(f) requires that "[i]n all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm."

43. Hawaii is an outlier state as it is the only state left with this requirement as Michigan repealed a similar requirement for handguns, and that law aimed only to allow for "safety inspections" rather than crime control. 2008 Mich. Pub. Acts No. 195 (2008) (repealing Mich. Comp. Laws § 28.429).

44. With regards to in-person registration, the District of Colombia previously had a similar requirement.

45. In the District of Columbia's former code, it stated that "[t]he Metropolitan Police Department (MPD) can require a potential registrant to present his firearm for inspection. D.C. Code § 7-2502.04(c)." *Heller v. Dist. of Columbia*, 801 F.3d 264, 285, 419 U.S. App. D.C. 287, 308, 2015.

46. The MPD wanted to conduct a physical inspection to "verify that the application information is correct and that the firearm has not been altered." *Id.*

47. The D.C. Circuit struck this requirement as violative of the Second Amendment.

48. "[C]ommon sense suggests a person would not go to the trouble of obtaining a registration certificate for a weapon other than a weapon in his possession. On the contrary, common sense suggests that bringing firearms to the MPD would more likely be a threat to public safety; as Heller maintains, there is a 'risk that the gun may be stolen en route or that the [would-be registrant] may be arrested or even shot by a police officer seeing a 'man with a gun' (or a gun case).'" *Heller v. Dist. of Columbia*, 801 F.3d 264, 277, 419 U.S. App. D.C. 287, 300, 2015 U.S. App. LEXIS 16632, *26, 92 Fed. R. Serv. 3d (Callaghan) 1039.

49. For the same reasons, the State's law that Plaintiffs and other similarly situated individuals bring their handguns to the station to register violates the Second Amendment.

### b. Plaintiff Todd Yukutake

50. Plaintiff Yukutake was born and raised on the island of Oahu.

51. Plaintiff Yukutake currently resides on Oahu.

52. Plaintiff Yukutake is an honorably retired Army Captain after 20 years of service in the Army National Guard.

53. Plaintiff Yukutake is employed as an armed protective security officer for a company that contracts with the federal government.

54. In this capacity, Plaintiff Yukutake guards federal property.

55. He is unable to take a personal firearm onto federal property and typically parks on federal property. In order to bring a firearm to HPD for registration during a workday, he must take time off of work, drive home to retrieve the firearm, drive to HPD to register it, drive back home to secure the firearm, then drive back to work.

56. Plaintiff Yukutake is also a firearms instructor.

57. Plaintiff Yukutake currently legally owns handguns.

58. Plaintiff Yukutake routinely works during the time that HPD's Firearms Unit Office is open.

59. Plaintiff Yukutake routinely must take time off work to purchase and register handguns.

60. It is often difficult for Plaintiff Yukutake to take time off from work.

61. Plaintiff Yukutake plans on purchasing additional handguns in the near future.

62. Plaintiff Yukutake will be required to take additional time off work to do so.

63. Plaintiff Yukutake has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

64. Plaintiff Yukutake has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

65. Plaintiff Yukutake does not take illegal drugs or abuse alcohol.

### c. Plaintiff David Kikukawa

66. Plaintiff Kikukawa is employed as a Diver Medic and Lead Systems Operator for an emergency medicine and critical care facility.

67. In order to bring a firearm to HPD for registration during a workday he must take time off work, drive home to retrieve the firearm, drive to HPD to register it, drive back home to secure the firearm, then drive back to work.

68. Plaintiff Kikukawa currently legally owns handguns.

69. Plaintiff Kikukawa routinely works during the time that HPD's Firearms Unit Office is open.

70. Plaintiff Kikukawa must take time off work to purchase and register handguns.

71. It is often difficult for Plaintiff Kikukawa to take time off from work and when Plaintiff does, Plaintiff is either using his personal time or a vacation day in order to take that time off.

72. Plaintiff Kikukawa's position as a Diver Medic requires that he be on call for medical emergencies and maintain a thirty (30) minute response time to the hospital where he works. He may be called into work to assist with these medical emergencies that could mean the difference between life and death for his patients. These emergency treatments may make it impossible to register his newly purchased handgun within the time constraints that HPD requires.

73. Plaintiff Kikukawa plans on purchasing additional handguns in the near future.

74. Plaintiff Kikukawa will be required to take additional time off work to do so.

75. Plaintiff Kikukawa has never been convicted of a crime that would disqualify him from firearms ownership under either Hawaii or federal law.

76. Plaintiff Kikukawa has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

77. Plaintiff Kikukawa does not abuse alcohol or use illegal drugs.

## COUNT I

## U.S. CONST., AMEND. II

78. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

79. The Defendant's requirement that Plaintiffs bring their firearm to the police station to register them violates Plaintiffs' Second Amendment rights.

80. Defendant's laws, customs and/or policies dictating that permits to acquire handguns are only valid for ten days after issuance serves no substantial government interest and is not narrowly tailored where permits to acquire long guns are valid for one year from the date of issuance.

## COUNT II

## (DECLARATORY JUDGMENT)

81. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein.

82. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

83. Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future in the form of a violation of their Second Amendment rights.

84. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

85. This Court possesses an independent basis for jurisdiction over the parties.

86. A judgment declaring that Defendant's requirement that Plaintiffs bring their firearms to the police station in order to register them violates the Second Amendment would be in the public interest.

87. Defendant's laws, customs and/or policies dictating that permits to acquire handguns are only valid for ten days after issuance is arbitrary and capricious, serves no substantial government interest and is not narrowly tailored where permits to acquire long guns are valid for one year from the date of issuance and can be used to buy more than one long gun.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with it who receive actual notice of the injunction, from enforcing Defendant's requirement that firearm registration applicants bring their firearms to

the station in order for them to be registered, both as-applied to Plaintiffs and facially;

2. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with it who receive actual notice of the injunction, from enforcing the custom, policy or law regarding the expiration of permits to acquire after ten days of issuance both as applied and facially to Plaintiffs and all other law abiding persons;

3. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

4. Such other Declaratory relief consistent with the injunction as appropriate; and

5. Such other further relief as the Court deems just and appropriate.

Dated: October 30, 2020.

          Respectfully submitted,

          /s/ Alan Beck
          Counsel for Plaintiffs

          Alan Alexander Beck
          Law Office of Alan Beck
          2692 Harcourt Drive
          San Diego, CA  92123
          (619) 905-9105
          Hawaii Bar No. 9145
          Alan.alexander.beck@gmail.com

                Stephen D. Stamboulieh
                Stamboulieh Law, PLLC
                P.O. Box 428
                Olive Branch, MS  38654
                (601) 852-3440
                stephen@sdslaw.us
                MS Bar No. 102784
                * *Admitted Pro Hac Vice*

## **VERIFICATION**

I, Todd Yukutake, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *First Amended Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *First Amended Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on October 30, 2020.

_____
Todd Yukutake

## **VERIFICATION**

I, David Kikukawa, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *First Amended Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *First Amended Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on October 29, 2020.

_____
David Kikukawa