Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
MS Bar No. 102784
*Admitted Pro Hac Vice*
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-578 (JMS-RT) |
| CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii | ) ) ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| | ) ) ) ) | TRIAL: Not Scheduled JUDGE: Hon. J. Michael Seabright HEARING DATE: N/A |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

I.    Introduction…………………………………………………………………1

    a.  Plaintiff Todd Yukutake………………………………………….………1

    b.  Plaintiff David Kikukawa………………………………………...…....……..2

II.   Legal Standard…………………………………………….……...……….3

III.  Hawaii Law………………………………….……………....……………..3

IV.   Argument

    a.  The Challenged Laws Are Not Longstanding……………………………4

    b.  Strict Scrutiny Applies to Both Requirements……………..……………10

    c.  The Ten-Day Expiration of the Permit to Acquire Handguns is Unconstitutional……………………………………..………………13

    d.  Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Underinclusive…………………………………..……...………18

    e.  The In-Person Registration is Unconstitutional………………..….…..……22

V.    Conclusion……………………………………………….…………25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Avagyan v. Holder*, 646 F.3d 672 (9th Cir. 2011) .................................................6

*Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016)................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..3

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) .....................19

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) ........ 8, 11, 13

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017)..................................................12

*Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) ......12

*Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) ...............................6

*Heller v. Dist. of Columbia*, 801 F.3d 264, (D.C. Cir. 2015) (*Heller III*) ...... 1, 9, 24

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*).. 1, 7, 10

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014)........................ 5, 8, 11

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ...........................................18

*Murphy v. Guerrero*, 2016 U.S. Dist. LEXIS 135684, at *35 (D. N. Mar. I. Sep. 28, 2016)..........................................................................................................12

*NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185 (5th Cir. 2012) .............................7

*NYSRPA v. NYC*, 140 S.Ct. 1525 (2020) ................................................................22

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ........................................15

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ............................................ 9, 10, 19

*Renna v. Becerra*, 2021 U.S. Dist. LEXIS 78634 (S.D. Cal. Apr. 23, 2021)..........10

*Seminole Tribe v. Fla.*, 517 U.S. 44 (1996) ...............................................................6

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ...................... 9, 11, 12, 13, 14, 15

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) .......................9

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)................... 5, 6, 11, 12, 15

*Young v. Hawaii*, 2021 U.S. App. LEXIS 8571, at *104 (9th Cir. Mar. 24,

2021)…………………………………………………………………………...5, 6, 7

*Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169 (9th Cir. 1999) ........................25

**Statutes**

18 U.S.C. 922(g) ............................................................................................... 12, 19

Chapter 81, Sec. 2542 (1935) .....................................................................................5

D.C. Code § 7-2502.04(c)..........................................................................................24

H.R.S. § 134-2(e) ............................................................................... 3, 16, 19, 22

H.R.S. § 134-2(f)............................................................................................... 18, 23

H.R.S. § 134-3(b)..........................................................................................................4

H.R.S. § 134-3(c) ....................................................................................................4, 22

H.R.S. § 134-7.............................................................................................................18

H.R.S. § 134-7(3)(f) ...................................................................................................14

H.R.S. § 134-2 ................................................................................................. 4, 13, 20

H.R.S. § 134-7(g)........................................................................................................14

H.R.S. § 134-2(g) ................................................................................21

H.R.S. § 846-2.7(a) ............................................................................20

H.R.S. § 846-2.7(b)(43) ......................................................................20

Mich. Comp. Laws § 28.429 ...............................................................23

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................3

I.   <u>Introduction</u>

Plaintiffs challenge Hawaii law to the extent that it 1) requires firearms to be brought to the police station to be registered and 2) that permits to acquire handguns expire ten days after issuance. *See* Verified Amended Complaint ("VAC") ¶¶ 79-80, 86-87.  An identical bring-your-gun-to-the-station requirement was already struck down by the D.C. Court of Appeals in *Heller v. Dist. of Columbia*, 801 F.3d 264, (D.C. Cir. 2015) (*Heller III*). This Court should follow that Court's precedent here. For the reasons set out below, both requirements are insufficiently tailored to survive any applicable level of scrutiny and should be struck as violative of the Second Amendment.   Plaintiffs filed their verified complaint on October 24, 2019 [Docket No. 1] and their VAC on October 30, 2020 [Docket No. 78].[1]

a.   <u>Plaintiff Todd Yukutake</u>

Plaintiff Todd Yukutake ("Yukutake") is a native Hawaiian and currently resides on the island of Oahu. [VAC at ¶¶ 50-51].  Yukutake is an honorably retried Army Captain after twenty years of service in the Army National Guard.  [*Id*. at ¶ 52].  Yukutake is employed as an armed protective security officer for a company which contracts with the federal government and he guards federal property. [*Id*. at ¶¶ 53-55].  Yukutake is unable to take personal firearms onto federal property and typically parks on federal property.  As such, in order to register a new firearm,

---

[1] All references will be to the Verified Amended Complaint unless stated otherwise.

Yukutake must take time off work, drive home to retrieve the firearm, drive to Honolulu Police Department [HPD] to register it, drive back home to secure the firearm, then drive back to work.  [*Id*. at ¶ 55].

Yukutake is also a firearms instructor and currently legally owns handguns. [*Id*. at ¶¶ 56-57].  Yukutake routinely works during the time that HPD's Firearms Unit Office is open.  [*Id*. at ¶¶ 58].  Yukutake plans on purchasing additional handguns in the near future and will be required to take additional time off work in order to do so.  [*Id*. at ¶¶ 61-62].  Yukutake is not a prohibited person and does not use illegal drugs or abuse alcohol.  [*Id*. at ¶¶ 63-65].

b. Plaintiff David Kikukawa

Plaintiff David Kikukawa ("Kikukawa") is employed as a Diver Medic and Lead Systems Operator for an emergency medical and critical care facility.  [VAC at ¶ 66].  In order to bring a firearm to HPD for registration during a workday, Kikukawa must take time off work, drive home to retrieve the firearm, drive to HPD to register the firearm, drive back home to secure the firearm and then drive back to work.  [*Id*. at ¶ 67].

Kikukawa currently legally owns handguns.  [*Id*. at ¶ 68].  Kikukawa routinely works during the time that HPD's Firearms Permit Unit Office is open and he must take time off of work to purchase and register handguns.  [*Id*. at ¶¶ 69-70]. Kikukawa states that it is often difficult for him to take off from work and when he does, he

either must use personal time or a vacation day to take off. [*Id*. at ¶ 71]. Kikukawa's position as a Diver Medic requires that he be on call for emergencies and maintain a thirty-minute response time to the hospital where he works. These emergencies may make it impossible to register his newly purchased handgun within the time constraints that HPD requires. [*Id*. at ¶ 72]. Kikukawa plans on purchasing additional handguns in the near future and will be required to take additional time off work to do so. [*Id*. at ¶¶ 73-74]. Kikukawa is not a prohibited person and does not abuse alcohol or use drugs. [*Id*. at ¶¶ 75-77].

## II.    Legal Standard

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## III.    Hawaii Law

H.R.S. § 134-2(e) provides, in relevant part, that: "[p]ermits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction." With regard to long guns, "[p]ermits issued to acquire any

rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition…" *Id.*

H.R.S. § 134-3(b) provides, in relevant part, that: "[e]very person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant."

H.R.S. § 134-3(c), as amended by HB 2744 H.D. 1, S.D. 2, requires that "[a]ll other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration."

IV.    Argument

a.    The Challenged Laws Are Not Longstanding

The laws at issue in this litigation are not longstanding. The in-person registration law is less than a year old as it only became law in 2020.  The ten-day expiration appears to have been enacted by L. 1933-4, c. 26, s. 4. and states, in pertinent part, "[s]uch permit shall be void unless used within ten days after the date

4

of issue."  Chapter 81, Sec. 2542 (1935).  This requirement does not trace any historical basis in Hawaii beyond becoming law in 1934 or 1935.  This requirement is less than ninety years old and is of twentieth-century vintage.

These are not longstanding laws based on circuit precedent. Recently, the Ninth Circuit, sitting en banc, stated in *Young v. Hawaii*, 2021 U.S. App. LEXIS 8571, at *104 (9th Cir. Mar. 24, 2021) that "[w]e are not inclined to review twentieth-century developments in detail, in part because they may be less reliable as evidence of the original meaning of the American right to keep and bear arms." Thus, Ninth Circuit precedent strongly suggests that a law must have an analog from the ratification of the Second Amendment in order to be longstanding.  The laws at issue in this litigation are not longstanding and burden activity within the scope of the Second Amendment.  This is in line with prior Ninth Circuit precedent.

In *Chovan,* for example, the Ninth Circuit expressed strong doubts that bans on firearm possession for violent offenders were sufficiently longstanding because the first known restriction was not enacted until 1938. *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013) (citation omitted). In *Jackson*, the Ninth Circuit reviewed regulations on handgun storage and sales of certain ammunition and keyed its analysis to analogues in founding-era and Reconstruction-era fire safety laws. *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 962-63 (9th Cir. 2014).

While dicta from *Fyock* suggests that "early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record"[2], this dicta is not binding on this court. *Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015). "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe v. Fla.*, 517 U.S. 44, 67 (1996). Here, *Fyock's* dicta about longstanding regulation was not necessary to its result. In *Fyock,* the court found that the magazine law at issue was not longstanding, high-capacity magazines are protected by the Second Amendment and then applied intermediate scrutiny to uphold the ban. *Fyock*, 779 F.3d at 1001 More to the point, *Chovan* predates *Fyock,* and when a panel contradicts each other, generally the earlier panel opinion must be the controlling precedent because the later panel cannot overrule the prior panel. *See Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011) ("A three-judge panel cannot reconsider or overrule circuit precedent unless 'an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.'"). More to the point, *Young* has clarified that in this Circuit, twentieth century era laws are not reviewed "in detail" because "they may be less

_____

[2] Even if this were binding, there is no historical prevalence in Hawaii's law for the in-person registration requirement or for a ten-day expiration of a permit.

reliable as evidence of the original meaning of the American right to keep and bear arms." *Young*, 2021 U.S. App. LEXIS at *104.

Case law from the D.C. Circuit and Fifth Circuit also supports the proposition that twentieth century laws are not longstanding. In *Heller II*, the D.C. Circuit merely "presume[d]" that "the District's basic registration requirement…does not impinge upon the right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (*Heller II*).[3] It only upheld that presumption because it "[found] no basis in either the historical record or the record of this case to rebut that presumption" and because the "basic registration requirements are self-evidently de minimis." *Id*. at 1255. Similarly, the Fifth Circuit upheld a firearms restriction on young adults under 21 based on a historical analysis that looked to the colonial era. The Fifth Circuit's extensive historical analysis of the Founding Era determined "the term 'minor' or 'infant'—as those terms were historically understood—applied to persons under the age of 21." *NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185, 201 (5th Cir. 2012). Even then, "in an abundance of caution", the Fifth Circuit assumed intermediate scrutiny applied to the restriction before upholding it. *Id*. at 204.

The restrictions at issue in this litigation should also not be deemed presumptively lawful as conditions and qualifications on the commercial sale of

---

[3] Plaintiffs have not challenged the <u>basic</u> registration requirement in Hawaii law.

7

arms as opined by *Heller*. That passage does not suggest some commercial regulation of arms falls outside of constitutional scrutiny. Rather, unlike historically unprotected conduct, the *Heller* Court was simply stating that post-*Heller,* many regulations on the sale of arms would still be constitutional rather than be outside of constitutional scrutiny. Plaintiffs' position makes sense in light of *Heller*'s holding that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." *District of Columbia v. Heller*, 554 U.S. 570, 634.

Precedent makes clear that the regulations at issue in this litigation infringes on protected conduct.  In *Jackson v. City & Cty. of S.F.*, 746 F.3d 953 (9th Cir. 2014), the Ninth Circuit reviewed San Francisco's ban on the sale of hollow point ammunition.  Despite the law at issue regulating commercial sales of ammunition, it applied intermediate scrutiny to review the ban and it held the ban only burdened the right indirectly because the plaintiff could still use hollow points and possess them, she just could not purchase them in San Francisco.  *Jackson*, 746 F.3d at 968.

Similarly, in reviewing ten separate registration requirements, the D.C. Circuit court found that all ten were subject to constitutional scrutiny. "In *Heller II*, we held the additional requirements, as they then stood, 'affect[ed] the Second Amendment right because they [we]re not de minimis' — that is, they 'ma[d]e it considerably more difficult for a person lawfully to acquire and keep a firearm ... for the purpose

of self-defense in the home.' *Id*. at 1255… Those requirements are therefore subject to intermediate scrutiny." *Heller v. District of Columbia*, 801 F.3d 264, 274 (2015) (*Heller III*). Similarly, the Ninth Circuit assumed intermediate scrutiny applied in *Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), when evaluating a challenge to a ban on the sale, but not ownership of, certain types of handguns. And in *Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016), in evaluating a challenge to California's ten-day waiting period, the Ninth Circuit "assume[d], without deciding, that the regulation is within the scope of the Amendment and is not the type of regulation that must be considered presumptively valid." *Id*. at 826-827. This Court should find that the laws Plaintiffs complain of infringe on protected conduct. Even if this Court were to find the laws at issue are presumptively lawful, it should find Plaintiffs have rebutted that presumption. "Unless flagged as irrebuttable, presumptions are rebuttable. [citations omitted]" *Binderup v. AG of United States*, 836 F.3d 336, 350 (3d Cir. 2016).

This is in accord with the Sixth Circuit in *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) which found some people who have been involuntarily committed may have Second Amendment rights. "As the Seventh Circuit has recognized, the *Heller* Court's observation regarding the presumptive lawfulness of longstanding bans is precautionary, not conclusive…." *Tyler*, 837 F.3d at 687 (citation omitted). Similarly, in *Heller II*, the D.C. Circuit "presume[d]" that

9

"the District's basic registration requirement…does not impinge upon the right protected by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011). It only upheld that presumption because it "[found] no basis in either the historical record or the record of this case to rebut that presumption" and because the "basic registration requirements are self-evidently de minimis." *Heller II*, 670 F.3d at 1255. Most recently, the U.S. District Court for the Southern District of California adopted this approach and found "a longstanding regulation of commercial sales of arms is presumptively lawful, but a plaintiff may "'rebut this presumption by showing the regulation does have more than a de minimis effect upon his [Second Amendment] right.'" *Pena*, 898 F.3d at 1010 (quoting *Heller II*, 670 F.3d at 1253)." *Renna v. Becerra*, 2021 U.S. Dist. LEXIS 78634, at *14 (S.D. Cal. Apr. 23, 2021).

By analogy, this Court should find that Plaintiffs have rebutted the presumption of constitutionality if it finds the Hawaii laws at issue are presumptively lawful. First, the restrictions are not *de minimis*. They are a substantial burden on Plaintiffs' rights as demonstrated herein. Second, the traditional justification for the relevant registration laws is no longer present with digital programs such as rap back in use, as discussed below. For all these reasons, even if this Court finds that the laws at issue are presumptively constitutional, it should find that Plaintiffs have rebutted that presumption and subject the laws to constitutional scrutiny.

10

b. <u>Strict Scrutiny Applies to Both Requirements</u>

The Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016). "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' [*United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)], based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). If the challenge survives the first step, the next step is to determine the appropriate level of scrutiny. "In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id*. at 960-61.

"The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id*. at 961. That is what was involved in *District of Columbia v. Heller*, 554 U.S. 570,

11

628-629 (2008). A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. *See Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny is appropriate. "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, the court may apply intermediate scrutiny." *Silvester*, 843 F.3d at 821. "Indeed, in *Chovan*, we applied 'intermediate' rather than 'strict' judicial scrutiny in part because section 922(g)(9)'s 'burden' on Second Amendment rights was 'lightened' by [various] mechanisms." *Fisher v. Kealoha*, 855 F.3d 1067,1071 (9th Cir. 2017).

Here, strict scrutiny should apply to both laws because they both implicate a core Second Amendment right and impose substantial burdens on Plaintiffs' Second Amendment rights. This case is also like a recent case from the Northern Marianas Islands. There, the district court held that a firearm registration scheme did not "rationally serve [the] interest" of protecting public welfare. *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, at *35 (D. N. Mar. I. Sep. 28, 2016). It did so despite the government alleging that the registration was a *de minimis* burden. Regardless of whether this Court "implements an 'important government objective' (intermediate scrutiny) or a 'compelling state interest' (strict scrutiny)", these laws are "neither 'substantially related' nor 'narrowly tailored' to

12

such interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014).

    c.    <u>The Ten-Day Expiration of the Permit to Acquire Handguns is Unconstitutional</u>

It is important to note that the issue here is the permit to acquire a handgun. As the Supreme Court stated, "… the American people have considered the handgun to be the quintessential self-defense weapon." *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 2818 (2008). While not a ban on the possession inside the home like the *Heller* case, Hawaii's law imposes substantial burdens on the core right secured by the Second Amendment.

In *Silvester v. Harris,* the Ninth Circuit reviewed and ultimately upheld, California's ten-day waiting period to purchase a firearm and assumed intermediate scrutiny applied. The Ninth Circuit upheld the waiting period because the purpose of the waiting period was to provide a "cooling-off period to deter violence resulting from impulsive purchases of firearms" and was sufficiently tailored to the government's interest of public safety. *Silvester v. Harris*, 843 F.3d 816, 829 (9th Cir. 2016). The instant case is distinguishable. Plaintiffs already must undergo a 14-day waiting period pursuant to Hawaii law. *See* H.R.S. 134-2. Unlike the waiting period in *Silvester*, the ten-day requirement to use a permit to acquire does not further any public safety interest because the applicants have already been vetted and cleared under the 14-day waiting period/background check. Instead, invalidating an

13

otherwise valid permit on an arbitrary timeline creates a substantial burden on Plaintiffs' Second Amendment rights.

The State may argue the requirements are needed to find out whether applicants have become addicted to drugs, diagnosed with mental disorders, and/or had a restraining order issued against them.[4]  However, there is already a mechanism within the H.R.S. to notify the police of these facts. H.R.S. 134-7(g) already requires "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3." As for protective orders, H.R.S. § 134-7(3)(f) already notifies the police and requires that they seize firearms owned by anyone that has had a protective order issued against them.

Strict scrutiny applies when a law causes a "substantial burden" on a litigant's Second Amendment rights. *See Silvester,* 843 F.3d at 827.  Here, the law is a substantial burden on Plaintiffs' Second Amendment rights as Plaintiffs are required to take time off work to make their firearms purchase in quick succession after they have already taken several other days off work to obtain the permit to acquire and after they have already waited 14 days for the waiting period/background check and

---

[4] It boggles the mind that within a ten-day period, the State actually thinks any of this may or will happen, but if it does happen, it will only happen with respect to a handgun permit to acquire and not a long gun permit to acquire.

then to return to the police department for an in-person registration of their newly purchased firearm.  This Court should strike Hawaii's laws because they do not survive strict scrutiny.

But even under intermediate scrutiny, the laws are unconstitutional. The intermediate scrutiny test under the Second Amendment requires that "(1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *United States v. Chovan*, 735 F.3d at 1139).  "In order to survive intermediate scrutiny, a law must be narrowly tailored to serve a significant governmental interest." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) (punctuation and citation omitted).

Here, the stated government interest is to "ensure[] that a person's qualifications for owning a firearm are legitimate at the time of purchase and the information is not stale."  *See* Defendant's Responses to Interrogatories, No. 9, Exhibit "A".[5]  Yet if this were the case, as described more fully below, then permits to acquire long guns would expire in 10 days as well.  Because the ten-day handgun

---

[5] While Plaintiffs disagree this is a valid interest, "… the assertion of a valid governmental interest cannot, in every context, be insulated from all constitutional protections." *Packingham*, 137 S. Ct. at 1736 (citation and punctuation omitted).

permit to acquire expiration date substantially burdens Plaintiffs' Second Amendment rights, it fails heightened scrutiny.

Hawaii's "Firearm Registrations in Hawaii, 2020"[6] ("2020 Report") further belies the Defendant's differing treatment of long guns and handguns. The 2020 Report states that there were "25,024 permits issued statewide in 2020 [for] a total of 53,481 firearms registered through the year…" *Id*. at p. 2. Further, "[l]ongarms accounted for 55.7% (29,799) of all firearms registered during 2020 …[and] [t]he remaining 44.3% (23,682) of firearms registered throughout 2020 were handguns." *Id*. Of all these firearm permits issued for both long guns and handguns (the state does not appear to differentiate between the two), 357 applications were initially approved and then the permit was voided because the individual did not pick up the permit in time.[7] *Id*. at pp. 1-2.

Tellingly, the report says nothing about revocations of existing permits to acquire, either for handguns or long guns. One would think, if the stated interest that a person does not receive a permit to acquire and then commit a felony and just

---

[6] Available at https://ag.hawaii.gov/cpja/files/2021/03/Firearm-Registrations-in-Hawaii-2020.pdf (last accessed 4.21.2021) (attached as Exhibit "B").

[7] While the 2020 Report does not differentiate, there does not appear to be a requirement to physically pick up the long gun permit to acquire and use it within ten days because it lasts for one year and multiple purchases, as such, it can be assumed the voided permits are all handgun permits to acquire. *See* H.R.S. § 134-2(e).

16

go back and purchase another handgun is a legitimate concern, then the State would have evidence to support this contention.  Or because long gun permits to acquire last for a year, then some evidence would be shown that some long gun permits were revoked due to criminal offenses after the permits issued.[8]  But the 2020 Report shows no revocation of permits to acquire, even for a long gun permit which is valid for one year.  This demonstrates the stated interest is not a legitimate governmental interest.

There also can be no argument that in person registration is needed to verify "identifying marks on a weapon, like the serial number…" for tracing purposes.   In order to apply for a handgun permit to acquire, one needs the "Make, Model, Caliber, Type/Revolver/Semiautomatic etc, Barrel Length, and Serial Number."[9]  If a Federal Firearms Licensee (FFL) is selling the firearm to a prospective purchaser, the FFL is required by federal law to complete a Firearms Transaction Record (ATF Form

---

[8] Nothing is demonstrated for 2019 either:
https://ag.hawaii.gov/cpja/files/2020/03/Firearm-Registrations-in-Hawaii-2019.pdf (*see* Exhibit "C"); Or in 2018: https://ag.hawaii.gov/cpja/files/2019/05/Firearm-Registrations-in-Hawaii-2018.pdf (*see* Exhibit "D"); Or in 2017: https://ag.hawaii.gov/cpja/files/2018/05/Firearm-Registrations-in-Hawaii-2017.pdf (*see* Exhibit "E").

[9] http://www.honolulupd.org/information/index.php?page=gunmain. *See also* VAC, ¶ 16.

4473)[10] which includes the make, model, serial number and caliber or gauge of the firearm being sold.  It also requires the duplicative information required by Hawaii state law.[11]  One may ask, what if someone purchases a handgun from a non-FFL?  H.R.S. § 134-2(f) contains the requirements for that scenario.[12]

Common sense dictates that the person selling the firearm will want to verify that all the permit information is 100% correct so that IF the firearm is used in a crime, the person selling can prove the sale.  And, the "registering authority", which would already be in possession of the initial registration document, could simply cross-reference the initial registration against the mailed-in permit.  In-person registration is unnecessary because it is duplicative of what is already required.

   d.  Hawaii's Ten-Day Expiration for Permits to Acquire Handguns is Underinclusive

Underinclusivity is a doctrine that can be used to determine whether a law is properly tailored. In constitutional law, underinclusivity follows necessarily from

---

[10] https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

[11] *See* H.R.S. § 134-7 for list of disqualifications for firearm applicants, much of which mirrors the federal disqualifiers.  *See generally* 18 U.S.C. 922(g).  Also, during discovery, the City provided its forms and applications for the permit to acquire firearms.  *See* Exhibit "F".

[12] Requirements for transferring a firearm include (among other requirements), verifying the person buying is the person named on the permit, make, model and serial number of the firearm, and to send "by registered mail to the issuing authority within forty-eight hours after transferring the firearm."

the evaluation of a fit between means and ends. S*ee Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001). Under this standard, what matters is not whether a regulation is specifically overinclusive, but rather by how much it is either over- or underinclusive. *See, e.g., City of Cincinnati v. Discovery Network*, *Inc*., 507 U.S. 410, 428 (1993) (holding a city ordinance intended to advance safety and aesthetic interests unconstitutional because it unjustifiably affected only a small fraction of operating news racks, thus constituting an unreasonable fit between ends and means). In this circuit, when applying intermediate scrutiny, if the exceptions to the law are "so pervasive or without basis as to make the fit unreasonable" it is unconstitutionally underinclusive. *Pena*, 898 F.3d at 981.

Here, the law is underinclusive because permits to acquire long guns (rifles and shotguns, *see* H.R.S. § 134-2(e)) are valid for one year but permits to acquire handguns are valid only for ten days. There is no legitimate reason or basis in making a long gun permit to acquire one year and a handgun permit to acquire for ten days. Whatever government interest there might be in one is the same as for the other. The State's response to an interrogatory demonstrates the ill fit of this requirement. Plaintiffs asked the State to "explain in detail how mandating a permit to acquire a handgun becomes void if 'not used within ten days after the date of issue' further[s] a governmental interest." The Defendant's response was that it "ensures that a person's qualifications for owning a firearm are legitimate at the time

19

of purchase and the information is not stale.  An example is if someone gets a permit but does not use it, and a month later commits a felony and is charged.  Without an expiration date, that person could let a registered firearm be seized and then use the permit to purchase another firearm."  *See* Defendant's Responses to Interrogatories, No. 9, Exhibit "A".

But the Defendant completely ignores the differing treatment of long guns and handguns.  Plaintiffs sought out this information in another interrogatory, asking the Defendant to "describe the difference in permits to acquire long guns and handguns" and to explain "why permits to acquire long guns are valid for one year and multiple long guns, but permits to acquire handguns are valid for ten days and one handgun." Defendant merely objected to the interrogatory and claimed that it would not "lead to the discovery of admissible evidence."   *See* Defendant's Responses to Interrogatories, No. 13, Exhibit "A".  In short, there is no real difference and they should not be treated differently.  The ten-day expiration of handgun permits to acquire is an arbitrary number and unsupported by evidence.

Further, Defendant's purported justification is belied by current state law requiring purchasers of firearms to be entered into an FBI database for "*constant criminal record monitoring*." HRS § 846-2.7(b)(43) provides authority for "The county police departments on applicants for permits to acquire firearms pursuant to section 134-2 and on individuals registering their firearms pursuant to section 134-

3…" to enter firearm purchasers in "rap back".[13]  Rap back is a "service of the [FBI] that provides continuous criminal record monitoring … and notifies them when an individual subject to a criminal history record check is arrested for a criminal offense anywhere in the country.  This notification will allow county police departments in Hawaii to evaluate if the owner of a firearm may continue to legally possess and own firearms."  *See* Exhibit "G", p. 1 (SB 2954, signed into law on 6/22/2016).[14]

In other words, if the Defendant's stated interest is blocking a person from using a permit after committing a felony, it is unnecessary and an additional unjustifiable burden because rap back provides the same "service". Rap back would constantly monitor the criminal records of the gun owner and notify the proper authorities if the owner became prohibited.  As such, the government interest in having a ten-day expiration on handguns permits does not fit at all with Hawaii's stated interest or their ability to register their gun owners on a national database and have "constant criminal record monitoring".

Defendant's other briefly stated interest, of having information that isn't "stale", doesn't hold any water either.  The person's "qualifications" is that he or she isn't a prohibited person and that he or she has completed (at any time prior to the

---

[13] HRS § 846-2.7(a) explicitly mandates that these individuals participate in the "rap back program".

[14] https://www.capitol.hawaii.gov/Archives/measure_indiv_Archives.aspx?billtype=SB&billnumber=2954&year=2016. (last accessed 4.23.21).

issuance of the permit) various safety and educational programs on firearms.  *See* HRS § 134-2(g).  Nowhere in this section does it state these qualifications expire.

As already stated, if Defendant is worried about a permit being used to acquire a firearm after the person becomes prohibited, then rap back already covers that. And in any event, it completely ignores how long gun permits are treated as they are valid for one year and can be used multiple times to purchase multiple long guns. Further, H.R.S. § 134-2(e) mandates that "if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority."  There is simply no fit here with the purported interest.

Here, the law at issue bears striking similarities to *NYSRPA v. NYC*, 140 S.Ct. 1525 (2020). There, a majority of the Court vacated as moot a decision upholding a New York City ordinance that restricted the scope of Second Amendment, with four Justices of the Court (three dissenters lead by Justice Alito and Justice Kavanaugh in concurrence), writing separately to explain why lower court's Second Amendment analysis was error. The dissent found it is not a reasonable fit to allow people to travel on a road to in-City ranges but not on the same road to ranges outside the City.  It is likewise not a reasonable fit for a handgun permit to acquire to expire in ten days, but a long gun permit to acquire is valid for one year.

e.   The In-Person Registration is Unconstitutional

The in-person registration requirement is found in H.R.S. § 134-3(c), effective September 15, 2020, as amended by HB 2744 H.D. 1, S.D. 2, and requires that "[a]ll other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration."

The in-person registration requirement is not sufficiently tailored to survive either strict or intermediate scrutiny. The permit to acquire requires the make, model, serial number, and other identifying marks on the firearm. *See* H.R.S. § 134-2(f). A registrant would provide that information correctly to ensure the accuracy of the registration certificate, which protects the person from arrest for an unregistered firearm. Hawaii is an outlier state as it is the only state left with this requirement as Michigan repealed a similar requirement for handguns, and that law aimed only to allow for "safety inspections" rather than crime control. 2008 Mich. Pub. Acts No. 195 (2008) (repealing Mich. Comp. Laws § 28.429).

The Defendant has not provided any evidence that in-person registration is required to promote any real government interest. The Defendant's only proffered justification is that "[i]n-person handgun registrations can prevent fraud and reduce or eliminate discrepancies."[15] *See* Response to Interrogatories, No. 6, Exhibit "A".

---

[15] But, the response does not say that it "does" prevent fraud and reduce discrepancies, only that it "can".

The Defendant was specifically asked in Plaintiffs' Request for Production of Documents to "[p]roduce all documents that support Hawaii's interest in maintaining an in-person registration of handguns." The State responded as follows: "[d]iscovery is ongoing. Defendant will supplement her responses as appropriate in accordance with applicable court rules." *See* Responses to Plaintiffs' Request for Production of Documents, No. 10, Exhibit "H". What in-person registration also does, as alleged in the Verified Amended Complaint, is cause a hardship on law-abiding citizens, such as Plaintiff Yukutake, by mandating that he takes off work on an additional day to get the firearm registered. And, if he misses that day, or if it were to fall on a day the police department is closed for registration, then he could be in violation of the law by not registering the firearm in person.

The District of Columbia also offered no real justification for the in-person requirement, which created the "risk that the gun may be stolen en route or that the person may be arrested or even shot by a police officer seeing a man with a gun (or a gun case)." *Heller v. Dist. of Columbia*, 801 F.3d 264, 277 (D.C. Cir. 2015) (*Heller III*). In the District of Columbia's former code, it stated that "[t]he Metropolitan Police Department (MPD) can require a potential registrant to present his firearm for inspection. D.C. Code § 7-2502.04(c)." *Heller III*, at 285. The MPD wanted to conduct a physical inspection to "verify that the application information is correct

and that the firearm has not been altered." *Id.* The D.C. Circuit struck this requirement as violative of the Second Amendment.

This Court should also rule in favor of Plaintiffs because to do otherwise would mean a lack of uniformity in the case law of the nation. In the past, the Ninth Circuit has warned against creating circuit splits and is "hesitant to create such a split, and we do so only after the most painstaking inquiry…" *Zimmerman v. Oregon Dept. of J.*, 170 F.3d 1169, 1184 (9th Cir. 1999). The same reasoning should apply to a district court.  The people of Hawaii should be afforded the same rights as the people of the District of Colombia.

V.    Conclusion

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor, holding that the requirements of in-person registration and the ten-day expiration of permits to acquire handguns violate the Second Amendment to the United States Constitution.

Dated: April 28th, 2021.


/s/ Alan Alexander Beck
Alan Alexander Beck

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

25