## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................... i

TABLE OF AUTHORITIES ........................................ ii

I.   INTRODUCTION ........................................... 1

II.  THE HISTORY OF HAWAII'S FIREARM PERMITTING
     AND REGISTRATION LAWS ................................ 2

III. STANDARD OF REVIEW .................................... 8

IV.  ARGUMENT .............................................. 8

     A.   Ninth Circuit Law on the Second Amendment ................... 8

     B.   Plaintiffs' Claim That the Ten-Day Statutory Expiration
          Date on the Validity of Permits to Acquire Handguns
          Violates Their Second Amendment Rights is Meritless,
          and Summary Judgment Should Enter in Favor of Defendant..........11

     C.   Plaintiffs' Claim That Their Second Amendment Rights
          are Being Violated by Requiring In-Person Inspection of
          Firearms is Likewise Meritless, and Summary Judgment
          Should Enter in Favor of Defendant......................................18

V.   CONCLUSION ............................................ 25

## TABLE OF AUTHORITIES

<u>CASES</u>

*Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988) ................... 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................ 8, 9, 12, 15, 21

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ................................................. 13

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .................... 13, 22

*Heller v. District of Columbia*, 45 F. Supp. 3d 35 (D.D.C. Cir. 2014) ................. 21

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ....................... 18-19

*Jackson v. City and County of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) .................... 8, 9, 10, 11, 12, 14, 15, 21, 22, 24

*National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco,
    Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012) ............................ 13

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) .......................... 10, 12, 14, 21, 23

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ................................. 10, 21

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ............................ 20, 24

*United States v. Mobley*, 956 F.2d 450 (3rd Cir. 1992) ......................................... 21

*Young v. State of Hawaii*, 992 F.3d 765 (9th Cir. 2021) ........................................ 11

STATUTES

1907 Haw. Sess. Laws Act 85 ................................................................. 2

1919 Haw. Sess. Laws Act 124 ............................................................... 3

1923 Haw. Sess. Laws Act 156 ............................................................... 3

1927 Haw. Sess. Laws Act 206 ...................................................... 3, 4, 25

1933 Haw. Sess. Laws Act 26 ........................................................ 4, 5, 12

Revised Laws of Hawaii §§ 2541 and 2542 (1935) ................................ 6

Hawaii Revised Statutes §§ 134-2, 134-3, and 134-10 (1968) ............... 6

1988 Haw. Sess. Laws Act 275 ............................................................ 6-7

1990 Haw. Sess. Laws Act 195 ............................................................... 7

Hawaii Revised Statutes §§ 134-2, 134-3, and 134-10
    (2011 and Supp. 2018) ............................... 6-7, 14, 18, 19, 20, 22, 24

Hawaii Revised Statutes § 134-7(c)(1) and (3), 134-7(f) ..................... 17

Hawaii Revised Statutes § 134-8 ......................................................... 19

Hawaii Revised Statutes § 134-8.5 ...................................................... 19

Hawaii Revised Statutes §§ 134-23(a)(6), 134-24(a)(6),
    and 134-25(a)(6) ................................................................... 20, 22

1923 Ark. Acts 430 .............................................................................. 12

1926 Mass. Acts 395 ........................................................................... 12

1927 Mich. Pub. Acts 372 ................................................................... 13

1921 Mo. Law  H. B. 168 ..................................................................... 12

## COMMITTEE REPORTS

S. Stand. Comm. Rep. No. 388 in 1919 Senate Journal ............................... 3, 14, 23

S. Stand. Comm. Rep. No. 384 in 1927 Senate Journal ........................................... 4

H. Stand. Comm. Rep. No. 89 in 1933 House Journal  ........................................... 4

S. Stand. Comm. Rep. No. 3058 in 1990 Senate Journal ........................................ 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>               Plaintiffs,<br><br>vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>               Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>MEMORANDUM IN SUPPORT OF MOTION |

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.     <u>INTRODUCTION</u>

This is a Second Amendment case in which the Plaintiffs ask this Court to find provisions in two statutes, Hawaii Revised Statutes ("HRS") §§ 134-2 and 134-3, unconstitutional.  Plaintiffs complain that pursuant to those statutes (1) a permit to acquire a handgun is only valid for ten days after the date of issuance, and (2) they must bring their newly acquired handguns to the Honolulu Police Department for registration.  Plaintiffs argue that their Second Amendment right to acquire handguns is substantially burdened by these provisions.

For the reasons and authorities discussed below, Defendant respectfully requests that summary judgment be entered in her favor and against the Plaintiffs.[1]

II.   THE HISTORY OF HAWAII'S FIREARM PERMITTING AND REGISTRATION LAWS.

Hawaii's firearm permitting and registration laws date back well before Hawaii became a state.  A basic registration requirement was first adopted by the Territorial Legislature in 1907.  *See* Defendant's (1) Opposition to Plaintiffs' Separate Concise Statement of Material Facts in Support of Motion for Summary Judgment, and (2) Concise Statement of Material Facts in Support of Counter Motion for Summary Judgment ("Concise Statement") at #1.  Act 85 required "any person, firm, corporation or copartnership" residing or doing business in Hawaii that has "any fire arm or fire arms or any ammunition" in its possession to file a "description" of the firearm, firearms, or ammunition with the county clerk.  *Id. at #2*.  The description included the "class of fire arms," the "name of the maker[,] and the factory number."  *Id. at #3*.  The name of the owner or possessor, the person's address, and the person's signature also had to be included on the description form.  *Id. at #4*.

---

[1] Plaintiffs settled their as-applied claims against the City and County of Honolulu. Only Plaintiffs' claims against Defendant Connors in her official capacity remain in this action.

In 1919, the Territorial Legislature adopted a "permit to purchase" requirement for firearms. *Id. at #5.* Act 124 provided that:

> Any person, firm, or corporation, dealing in or keeping for sale firearms, or any other person in possession of firearms, shall not make an individual or retail sale of any such firearms, unless the person desiring to purchase the same shall first have obtained from the sheriff or a deputy sheriff of the county or city and county a written permit for such purchase[.]

*Id.* The Senate Committee on Military stated the purpose of this provision in its report:

> The purpose of this amendment is to have the sheriff or deputy sheriff of the county or City and County issue a permit to any one desiring to purchase firearms or ammunition, said permit to be presented to the vendor of said article and to be endorsed on the back thereof by said vendor describing the article so purchased, said permit to be immediately transmitted to the officer issuing the same. As this will enable the police authorities to have a better supervision and check over the sale of firearms, your Committee would recommend the passage of this bill.

*Id. at #6.*

In 1923, the Territorial Legislature passed Act 156 which changed the language from a "permit to purchase" to a "permit to acquire." *Id. at #7.*

In 1927, the Territorial Legislature passed Act 206. *Id. at #8.* Act 206 clarified that the required "description" had to be in a "report" to the county sheriff (Section 18) and that the "permit to acquire" applied to a "sale, gift, loan or

otherwise" (Section 9) and not just to disposition by dealers (Section 23). *Id. at #9.* Act 206 also added a scheme by which firearms would be confined to a person's "dwelling house or business office" (Section 5), unless the person obtained a license to carry (Section 7). *Id. at #10.* An exception was also made for transporting a firearm in a wrapper between a place of purchase or repair, a home, or a place of business (Section 6). *Id. at #11.* Act 206 also prohibited the alteration of identifying marks: "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver" (Section 13). *Id. at #12.*

In passing Act 206, the Legislature indicated that its purpose was to make the firearms statutes more effective. *Id. at #13.* The bill "seeks to make effective the existing firearms statutes found in Chapter 128 of the Revised Laws of Hawaii 1925, those statutes having heretofore been of no practicable benefit to the people of this Territory because of inconsistencies and ambiguities." *Id.*

In the 1933-1934 Special Session, the firearms statutes were comprehensively revised when the Territorial Legislature passed Act 26. *Id. at #14.* The Legislature stated that "[t]he purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms and ammunition." *Id. at #15.* Act 26 provided in relevant part:

4

SECTION 3:  Every person residing or doing business or temporarily sojourning within the Territory on the effective date of this Act who possesses a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, not already registered in the name of the present possessor, or who possesses ammunition of any kind or description, except shotgun ammunition, shall, **within ten days** of said effective date, register the same with the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein is his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn.

Every person arriving in the Territory after the effective date of this Act, who brings with him firearms or ammunition of the type and description set out in this section, shall register the same in a similar manner within forty-eight hours after arrival.

. . . .

SECTION 4:  No person residing or doing business or temporarily sojourning within the Territory shall take possession of any firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior Acts or unregistered, or of any ammunition of any kind or description, except shotgun ammunition, either through sale, gift, loan, bequest, or otherwise, whether procured in the Territory or imported by mail, express, freight, or otherwise, until he shall first have procured from the chief of police of the city and county of Honolulu or the sheriff of the county, other than the city and county of Honolulu, wherein his place of business, or if there be no place of business, his residence, or if there be neither place of business nor residence, his place of sojourn, a permit to acquire as prescribed herein. . . . Such permit shall be void unless used **within ten days** after the date of issue. . . .

Any person acquiring a firearm or ammunition under the provisions of this section shall, **within five days** of acquisition, register same in the manner prescribed by Section 3 of this Act.

. . . .

5

*See* Exhibit "G" to Defendant's Concise Statement (emphases added). *See also* Revised Laws of Hawaii ("RLH") §§ 2541 and 2542 (1935) regarding registration and permits to acquire, attached to Defendant's Concise Statement as Exhibit "I".

Thus, by 1933-1934, Hawaii's permitting and registration laws were taking their modern form. The modern terminology, "registration" and "permit to acquire," had replaced the previous language. The ten-day deadline to use a permit to acquire was adopted. And the five-day deadline to register a firearm after acquiring it was also adopted. The place to keep provision also took on its more modern language, requiring persons to confine their firearms to the "possessor's place of business, residence, or sojourn," except if it is carried in a wrapper between a place of purchase or repair, a home, a place of business, or a place of sojourn, or except if a concealed carry permit is granted.

In 1968, the Hawaii Revised Statutes ("HRS") replaced the Revised Laws of Hawaii. The firearm registration provision was codified as HRS § 134-2, and the permit to acquire provision was codified as HRS § 134-3. *Id. at #16.* The prohibition on alteration of identification marks was codified as HRS § 134-10. *Id. at #17.*

In 1988, HRS Chapter 134, Part I, was entirely recodified. *Id. at #18.* The registration and permitting provisions were reversed, with the permit to acquire

provision becoming HRS § 134-2 and the registration provision becoming HRS § 134-3. *Id. at #19.*

Amendments have since been made to these statutes; however, they remain fundamentally the same. The current permit to acquire provision continues to be located in HRS § 134-2, *Id. at #20*, and the current registration provision continues to be located in HRS § 134-3. *Id. at #21.* The prohibition against alteration of identification marks is still located in HRS § 134-10. *Id. at #22.*

Hawaii's firearm registration and permitting statutes date back more than 100 years to 1907 and 1919, respectively, and took what is essentially their modern form in 1933-1934. As recently as 1990, the Legislature reasserted the public safety purpose underlying these statutes.

In 1990, the Legislature considered amending the statutes to prohibit the possession of firearms near public and private schools. *Id. at #23.* Ultimately, however, the Legislature decided to instead increase the penalties under the existing firearms laws. *Id. at #24.* The Senate Judiciary Committee explained: "While your Committee strongly agrees that our educational institutions should be places of sanctuary, we believe just as strongly that ***our entire community*** should be a ***safe place*** to live and learn and that ***everyone*** deserves to feel free from the ***threat of harm wherever they go.***" (emphases added). *Id. at #25.* Consequently,

the purpose behind Hawaii's firearm registration and permitting statutes is to make the entire community safer by reducing the threat of gun violence.

III.   STANDARD OF REVIEW

Defendant Connors agrees with the legal standards applicable to motions for summary judgment set out in the Plaintiffs' motion.  There are no genuine issues of material fact that would preclude the entry of summary judgment in this case.

IV.   ARGUMENT

A.   Ninth Circuit Law on the Second Amendment.

Following the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), most courts of appeals, including the Ninth Circuit, have adopted a two-step analysis for Second Amendment cases. "The two-step inquiry . . . '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.'" *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

In the first step, the question is "'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Id.* (citations and brackets

8

omitted).  In *Heller I*, the Supreme Court set forth non-exhaustive categories of "presumptively lawful regulatory measures" that are presumed to be consistent with the historical scope of the Second Amendment:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on ***longstanding*** prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or ***laws imposing conditions and qualifications on the commercial sale of arms***.

*Heller I*, 554 U.S. at 626–27 & n.26 (emphases added).  The Court, however, did not define the contours of these "presumptively lawful" categories.  *See id.* at 635 ("[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when these exceptions come before us.").

"If a prohibition falls within the historical scope of the Second Amendment, [the court] must then proceed to the second step of the Second Amendment inquiry to determine the appropriate level of scrutiny." *Jackson*, 746 F.3d at 960.  When ascertaining the appropriate level of scrutiny, courts consider: "(1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Id.* at 960-61 (internal quotation marks omitted).  "A law that implicates the core of the Second Amendment right ***and*** severely burdens that right warrants strict scrutiny.  Otherwise, intermediate scrutiny is appropriate.

'[I]f a challenged law does not implicate a core Second Amendment right, *or* does not place a substantial burden on the Second Amendment right,' the court may apply intermediate scrutiny." *Silvester v. Harris*, 843 F.3d 816, 822 (9th Cir. 2016) (emphases added) (citations omitted).

"[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013).  And in determining whether a burden is substantial, the Ninth Circuit has held that "laws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Jackson*, 746 F.3d at 961 (emphasis in original).  Furthermore, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Id.*

If a challenged law does not implicate a core Second Amendment right or does not place a substantial burden on the Second Amendment right, then intermediate scrutiny may be applied.  *Id.* at 961.  Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective.  *Id.* at 965. "[I]ntermediate scrutiny does not require the least restrictive means of furthering a

given end." *Id.* at 969.  Even if there are "less burdensome means," a law can

survive intermediate scrutiny.  *Id.*

In a recent Second Amendment decision, *Young v. State of Hawaii*, 992 F.3d

765 (9th Cir. 2021), the Ninth Circuit explained that "[a] facial challenge is a claim

that the legislature has violated the Constitution, while an as-applied challenge is a

claim directed at the execution of the law," and that "[b]ecause a facial challenge is

directed to the legislature, the plaintiff must show that 'no set of circumstances

exists under which the [statute] would be valid.'"  Id. at 779 (citations omitted).

B.   Plaintiffs' Claim That the Ten-Day Statutory Expiration
     Date on the Validity of Permits to Acquire Handguns
     Violates Their Second Amendment Rights is Meritless,
     and Summary Judgment Should Enter in Favor of Defendant.

Plaintiffs argue that their Second Amendment rights are being violated

because permits to acquire handguns are valid for only ten days.  This claim lacks

merit because (1) this statutory provision is longstanding, (2) it does not impose a

substantial burden on the Plaintiffs, and (3) it furthers the governmental objective

of public safety.

The first step in the Ninth Circuit's Second Amendment analysis is

determining "whether the challenged law burdens conduct protected by the Second

Amendment[.]"  *Jackson*, 746 F.3d at 960.  The first step includes considering

whether there are "presumptively lawful" "longstanding" exceptions that are

applicable.  *Heller I* listed "laws imposing ***conditions and qualifications on the***

*commercial sale of arms*" as one of those exceptions.  *See Heller I*, 554 U.S. at

626-27 & n.26 (emphasis added).  *See also Silvester*, 843 F.3d at 829-32 (Thomas,

C.J., concurring) (applying this exception to waiting periods).  Registration and

permitting requirements are conditions and qualifications attached to the sale (or

other transfer) of firearms.  In Hawaii, registration and permitting requirements, in

general, date back to 1907 and 1919, respectively.  Therefore, a ten-day expiration

date, as part of the permitting process, should be included in the exception.

More specifically, in Hawaii, the ten-day expiration date for permits to

acquire dates back to 1933-1934.  *See* Act 26, § 4 at p. 37, Exhibit "G" to

Defendant's Concise Statement.  Other states passed similar laws during that era.

For example, the state of Missouri's 1921 statute regulating the sale and possession

of firearms included a provision that permits for pistols, revolvers or firearms of

comparable size were valid for only thirty days after issuance.  *See* Exhibit "P" to

the Declaration of Kendall J. Moser at Section 2.  In 1923, Arkansas required that

any person who possessed a pistol or revolver "present" their firearm to the county

clerk for recordation.  *See* Exhibit "Q" to the Declaration of Kendall J. Moser at

Section 1.  Massachusetts amended its firearms statutes in 1926 to read that

permits to purchase pistols and revolvers were valid for no more than ten days, as

in Hawaii.  *See* Exhibit "R" to the Declaration of Kendall J. Moser at Section 3.

In 1927, Michigan too had a ten-day expiration date on licenses to purchase pistols, and required a safety inspection by the police. *See* Exhibit "S" to the Declaration of Kendall J. Moser at Sections 2, 9.

Numerous federal cases hold that firearm regulations dating back to the early 20th century are sufficiently "longstanding" so as to qualify for the exception. *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (mentioning "early twentieth century" laws); *National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012) ("By 1923, therefore, twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1254-55 (D.C. Cir. 2011) ("*Heller II*") ("The Court in *Heller [I]* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century."). Therefore, the ten-day expiration date for permits to acquire, which dates back to 1933-34, is a presumptively lawful longstanding exception to the Second Amendment and that should be the end of the analysis.

If the Court proceeds to the second step of the *Jackson* analysis, the core of the Second Amendment is presumably implicated since Plaintiffs state that they want to purchase handguns. But the requirement of using a permit to acquire within ten days is not a substantial burden. It affects only ***the manner*** in which a

person purchases or obtains his or her firearm and is not a ban. *See Jackson*, 746 F.3d at 961. Moreover, ten days is not unreasonably burdensome. For pistols and revolvers, a separate application and permit is required for each transaction. HRS § 134-2(e). Consequently, each permit is good for only one thing. Ten days is enough time within which to perform a single transaction, which is the only thing the permit is for. In contrast, permits to acquire rifles and shotguns are good for subsequent purchases. *Id.* Therefore, they are valid for a longer period -- one year. *Id.* For these reasons, the ten-day expiration date for pistols and revolvers is not a substantial burden. Although the core of the Second Amendment may be implicated, there must ***also*** be a substantial burden in order for strict scrutiny to be applied. *See Silvester*, 843 F.3d at 822. Plaintiffs' argument that strict scrutiny applies is clearly incorrect. *See* Memorandum, ECF 85-1 at p. 17 of 30. Because there is no substantial burden, intermediate scrutiny should be applied. *See Silvester*, 843 F.3d at 822.

In general, the "significant, substantial, or important" government objective in requiring people to comply with permitting requirements is public safety in that such requirements provide more effective supervision and control over the sale, transfer, and possession of firearms. *See* S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at p. 1420, Exhibit "C" to Defendant's Concise Statement. More specifically, a ten-day expiration date ensures that the information in the permit is

current and it minimizes the risk of an unauthorized person using it if it is lost or stolen.  Plaintiffs' objection to the ten-day expiration date for permits to acquire is more a matter of the "reasonable fit" between the challenged law and the asserted objective.  *See Jackson*, 746 F.3d at 965.  Plaintiffs argue that ten days is too short and the fact that rifles and shotguns have a one-year expiration date means that it is possible to lessen the burden.  However, intermediate scrutiny does not require the least restrictive means of furthering a given end.  *Id.* at 969.  Therefore, even if permits for pistols and revolvers could have a longer expiration date, there is no constitutional imperative that requires it.

There are in fact strong reasons for distinguishing between pistols and revolvers on one hand and rifles and shotguns on the other.  Pistols and revolvers are more concealable and therefore more dangerous.  This is the reason why sawed-off shotguns and switchblades are considered dangerous and unusual weapons.  *See Heller I*, 554 U.S. at 625; *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988).  Therefore, it makes sense to impose stricter permitting requirements on pistols and revolvers than on rifles and shotguns.

Plaintiffs further argue that there is no need to require current information in a permit to acquire because information on applicants is continuously updated as a result of Hawaii's participation in the "Rap Back" Service.  *See* Memorandum,

ECF 85-1 at pp. 25-27 of 30.  The Rap Back Service is a service operated by the

Federal Bureau of Investigation:

> The Rap Back service allows authorized agencies to receive
> notification of activity on individuals who hold positions of
> trust (e.g. school teachers, daycare workers) or who are under
> criminal justice supervision or investigation, thus eliminating
> the need for repeated background checks on a person from the
> same applicant agency. Prior to the deployment of Rap Back,
> the national criminal history background check system provided
> a onetime snapshot view of an individual's criminal history
> status. With Rap Back, authorized agencies can receive on-
> going status notifications of any criminal history reported to
> the FBI after the initial processing and retention of criminal or
> civil transactions.  By using fingerprint identification to identify
> persons arrested and prosecuted for crimes, Rap Back provides
> a nationwide notice to both criminal justice and noncriminal
> justice authorities regarding subsequent actions.

Federal Bureau of Investigation, *Next Generation Identification (NGI):  Rap Back*,

https://www.fbi.gov/services/cjis/fingerprints-and-other-biometrics/ngi (last visited

May 22, 2021).  However, what Plaintiffs fail to understand is that under Rap

Back, Hawaii authorities will only receive notifications of further "criminal

history," such as arrests and prosecutions.  There are people other than criminals

who are also prohibited from owning or possessing a firearm, such as those "under

treatment or counseling for addiction to, abuse of, or dependence upon any

dangerous, harmful, or detrimental drug, intoxicating compound . . . or intoxicating

liquor" and those "diagnosed as having a significant behavioral, emotional, or

mental disorders as defined by the most current diagnostic manual of the American

Psychiatric Association or for treatment for organic brain syndromes[.]" *See* HRS § 134-7(c)(1) and (3), Exhibit "L" to Defendant's Concise Statement. The Rap Back Service will not provide notifications regarding such persons. Persons subject to civil protective orders or restraining orders are also disqualified from owning or possessing firearms, but they do not appear to be subject to the Rap Back Service since the initial granting of those orders is civil rather than criminal in nature. *See* HRS § 134-7(f). They would only be subject to the Rap Back Service if they subsequently violated those orders, which would then constitute crimes. Further, even regarding persons who commit crimes, the Rap Back Service is not infallible, and there is no reason why the information required in a permit to acquire should not supplement the Rap Back Service in case individuals fall through the cracks.

Plaintiffs further argue that there is no need to require current information in a permit to acquire because qualifications such as the completion of firearms safety and education programs do not expire. *See* Memorandum, ECF 85-1 at pp. 26-27 of 30. However, Plaintiffs ignore other information in permits to acquire that can go out of date. Background information (such as one's name or address) can change, one's physical appearance can change over time, and one's mental health history can also change. Applicants for permits to acquire are required to provide this information, in the application form or an attached photograph, when they

17

apply. *See* HRS § 134-2(b). A relatively short expiration date will ensure that the information remains accurate when the person acquires his or her firearm.

For these reasons, Plaintiffs' claim concerning the ten-day statutory expiration date for permits to acquire handguns is meritless. Summary judgment should therefore enter in favor of Defendant.

> C.   Plaintiffs' Claim That Their Second Amendment Rights are Being Violated by Requiring In-Person Inspection of Firearms at Registration is Likewise Meritless, and <u>Summary Judgment Should Enter in Favor of Defendant.</u>

Plaintiffs rely on the majority opinion in *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller IV*"), for their argument that requiring inspection of firearms at registration is improper. *See* Memorandum, at ECF 85-1 at pp. 29-30 of 30. In *Heller IV*, the majority struck down the District of Columbia's requirement that the person bring the firearm with him or her to be registered. *Heller IV*, 801 F.3d at 277. The majority did so based on the idea that a person would not go to the trouble of registering a weapon other than the weapon in his or her possession. *Id.* The majority also stated that bringing a firearm in to the police would more likely be a threat to public safety because of the risk that the gun might be stolen en route or that the would-be registrant might be arrested or even shot by police seeing a "man with a gun" or a gun case. *Id.*

The majority's reasoning is deeply flawed and this Court should not follow it. As the concurring and dissenting opinion in *Heller IV* pointed out, inspection of

the firearm would not just address deliberate falsehoods but also innocent mistakes. *Id.* at 285-86 (Henderson, J., concurring in part and dissenting in part). Some people might innocently make mistakes in transcribing serial numbers or other identifying information. More importantly, some people might not be aware that their firearm violates Hawaii law until they bring it to the police station and the police firearms unit inspects it. *See id.* at 286.

HRS § 134-10 prohibits "alter[ing], remov[ing], or obliterat[ing] the name of the make, model, manufacturer's number, or other mark of identity of any firearm or ammunition." HRS § 134-8 (2011) prohibits, among other things, "assault pistols . . . ; automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms . . . . ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol[.]" HRS § 134-8.5 (Supp. 2018) prohibits bump fire stocks, multiburst trigger activators, and trigger cranks. Some people might not be aware that their identifying marks have been altered, that their weapon constitutes an "assault pistol," that the barrel length of their rifle or shotgun is problematic, or that their accessories are prohibited.

The majority's argument in *Heller IV* that bringing the firearm to the police station itself threatens public safety is similarly weak. The risk that a firearm will

be stolen exists whenever it is taken out in public, not just when taken to a police station for inspection.  However, no one would argue that such a risk justifies banning the use of firearms for hunting or target shooting.  That is because the utility of lawful uses (like hunting and target shooting) outweighs the minimal risk of the firearm being stolen.  Similarly, the utility of bringing the firearm to the police station for inspection outweighs the minimal risk of it being stolen.  And Hawaii's place to keep laws expressly permit people to take firearms from their "place of business, residence, or sojourn" to "[a] police station" in an enclosed container.  HRS §§ 134-23(a)(6), 134-24(a)(6), and 134-25(a)(6) (2011).  Therefore, the police should be expecting people to bring their guns and gun containers to the police station, especially since registration is required by HRS § 134-3.

Further, the *Heller IV* majority overlooked the fact that the ability to trace firearms and identify their owners is critical to law enforcement.  *See United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) ("[P]reserving the ability of law enforcement to conduct serial number tracing . . . constitutes a substantial government interest.").  However, in order to trace a weapon, one needs to be sure of the identity of the owner, the link from the owner to the weapon, and the identity of the weapon.  But without verifying the identifying marks on a weapon, like the serial number, the identity of the weapon remains uncertain.  That is why

20

the District Court in *Heller III* said that bringing the gun in to verify the characteristics of the weapon is similar to the requirement of in-person identification of the registrant. *See Heller v. District of Columbia*, 45 F. Supp. 3d 35, 59 (D.D.C. 2014) ("*Heller III*"), *aff'd in part and rev'd in part*, 801 F.3d 264 (D.C. Cir. 2015) ("*Heller IV*"). The *Heller IV* majority ignored this critical link in the chain. *See United States v. Mobley,* 956 F.2d 450, 454 (3d Cir. 1992) ("It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible.").

Regardless of whether *Heller IV* is or is not followed, under the ordinary Ninth Circuit analysis, which is required under Ninth Circuit law, *see Silvester*, 843 F.3d at 820-22; *Jackson*, 746 F.3d at 960-61; *Chovan*, 735 F.3d 1136-37 (describing the Ninth Circuit's two-step inquiry), a requirement of bringing the firearm to the registration is constitutional. In the first step of the analysis, the requirement qualifies under the "presumptively lawful" "longstanding" exception for "laws imposing ***conditions and qualifications on the commercial sale of arms***[.]" *See Heller I*, 554 U.S. at 626-27 & n.26 (emphasis added); *Silvester*, 843 F.3d at 829-32 (Thomas, C.J., concurring). Registration and permitting requirements are conditions and qualifications attached to the sale (or other transfer) of firearms. In Hawaii, registration and permitting requirements, in

general, date back to 1907 and 1919, respectively.  Therefore, in-person inspections, as part of the registration process, should be included in the exception. Basic registration requirements are "longstanding in American law, accepted for a century in diverse states and cities and now applicable to more than one fourth of the Nation by population" and should be "presume[d] . . . not [to] impinge upon the right protected by the Second Amendment."  *See Heller II*, 670 F.3d at 1254.

If the analysis proceeds to the second step, the core of the Second Amendment is presumably implicated since Plaintiffs state that they want to purchase handguns.  But the requirement of bringing the firearm to the registration does not impose a substantial burden.  It affects only *the manner* in which a person registers his or her firearm; it is not a ban.  *See Jackson*, 746 F.3d at 961. Moreover, it simply is not that hard to bring a firearm to the police station.  To a certain extent, the police are already expecting it.  *See* HRS §§ 134-23(a)(6), 134-24(a)(6), and 134-25(a)(6) (place to keep laws expressly permit taking firearms to police stations); HRS § 134-3 (registration required within five days of acquisition).  Plaintiffs' complaint that they have to take off time from work is just a common and minor inconvenience, not a substantial burden.  *See* Memorandum, ECF 85-1 at pp. 1-3, 14, 24 of 30.  And convenience is not the standard.  Although the core of the Second Amendment may be implicated, there must *also* be a

substantial burden in order for strict scrutiny to be applied. *See Silvester*, 843 F.3d at 822.

In any event, as part of the Plaintiffs' settlement with the City and County of Honolulu in this case, the Honolulu Police Department Firearms Permit Unit agreed to extend their hours of operation. *See* the Declaration of Kendall J. Moser attached to Defendant's Concise Statement at ¶ 18. Presumably, the Plaintiffs, in coming to this agreement and choosing to dismiss with prejudice their claims against the City and County, deemed HPD's extended hours to be satisfactory and not in conflict with their work schedules.

Plaintiffs' argument that strict scrutiny applies is clearly incorrect. *See* Memorandum, ECF 85-1 at p. 17 of 30. Since there is no substantial burden, intermediate scrutiny should be applied. *See Silvester*, 843 F.3d at 822.

In general, the "significant, substantial, or important" government objective in requiring people to comply with registration requirements is public safety in that such requirements provide more effective supervision and control over the sale, transfer, and possession of firearms. *See* S. Stand. Comm. Rep. No. 388, in 1919 Senate Journal, at 1420, Exhibit "C" to Defendant's Concise Statement. More specifically, the "significant, substantial, or important" government objective in requiring people to bring the firearm to the registration is that it ensures that the registration information is accurate, it ensures that the firearm complies with

23

Hawaii law, and it confirms the identity of the firearm so as to facilitate tracing by law enforcement. *See Marzzarella*, 614 F.3d at 98. A "reasonable fit" between the challenged law and the asserted objective exists because ensuring that the registration information is accurate, ensuring that the firearm complies with Hawaii law, and confirming the identity of the firearm can easily be accomplished simply by bringing the firearm to the registration for inspection. *See Jackson*, 746 F.3d at 965.

It should also be noted that inspecting a firearm at the time of registration provides a significant benefit to the new owner of the firearm. HRS § 134-10 prohibits wilful alteration, removal, or obliteration of identifying marks on a firearm. However, it also states that "*[p]ossession* of a firearm or ammunition upon which any mark of identity has been altered, removed, or obliterated shall be *presumptive evidence* that the possessor has altered, removed, or obliterated the mark of identity." *Id.* (emphasis added). Nevertheless, if a person voluntarily brings the firearm to a police station for registration soon after acquiring it (HRS § 134-3(b) requires registration within five days), and the alteration is discovered then, that is strong evidence *rebutting the presumption* that the possessor wilfully altered the identifying marks. Under those circumstances, it is much more likely that the prior owner was responsible for the alteration rather than the new owner. Therefore, in-person inspection at registration sets a "base line" that protects the

24

new owner.  Without this base line, the new owner could be accused of the alteration at some point in the distant future when the alteration is finally discovered.  At that point, the new owner would be left with little evidence other than his or her own word.  It should also be noted that the prohibition against altering identifying marks dates back to 1927.  *See* Act 206, § 13 at p. 212, Exhibit "E" to Defendant's Concise Statement.

Consequently, the requirement of bringing the firearm to the registration survives intermediate scrutiny.  Accordingly, summary judgment should likewise enter in favor of Defendant as to Plaintiffs' in-person inspection claim.

V.    CONCLUSION

Based on the foregoing reasons and authorities, Defendant respectfully requests that this Court enter summary judgment in her favor and against the Plaintiffs.

DATED:  Honolulu, Hawaii, May 28, 2021.

STATE OF HAWAII

CLARE E. CONNORS
Attorney General
State of Hawaii

/s/ Kendall J. Moser
KENDALL J. MOSER
Deputy Attorney General

Attorney for Defendant
CLARE E. CONNORS