# HAWAII REVISED STATUTES

## 2018 CUMULATIVE SUPPLEMENT

VOLUME 3

TITLES 10 – 12, CHAPTERS 121 – 200D

FOR USE WITH THE 2011 REPLACEMENT VOLUME

AND

VOLUME 4

TITLES 13 – 14, CHAPTERS 201 – 257

FOR USE WITH THE 2017 REPLACEMENT VOLUME



PUBLISHED BY AUTHORITY

**EXHIBIT "M"**

FIREARMS, AMMUNITION AND DANGEROUS WEAPONS 134-2

photographing of the applicant by the police department of the county of registration; provided that where fingerprints and a photograph are already on file with the department, these may be waived.

\*\*\*

(d) The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

(e) The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to issue a permit or to deny an application is made.

(f) In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to

39

Case 1:19-cv-00578-JMS-RT   Document 91-14   Filed 05/12/20   Page 4 of 10   PageID #: 361

**134-2**  PUBLIC SAFETY AND INTERNAL SECURITY

whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority that issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number, as applicable.

\*\*\*

(i) No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued.

(j) In all cases where a permit application under this section is denied because an applicant is prohibited from owning, possessing, receiving, or controlling firearms under federal or state law, the chief of police of the applicable county shall, within ten business days from the date of denial, send written notice of the denial including the identity of the applicant and the reasons for the denial to the:

(1) Prosecuting attorney in the county where the permit was denied;
(2) Attorney general;
(3) United States Attorney for the District of Hawaii; and
(4) Director of public safety.

If the permit to acquire was denied because the applicant is subject to an order described in section 134-7(f), the chief of police shall, within three business days from the date of denial, send written notice of the denial to the court that issued the order.

When the director of public safety receives notice that an applicant has been denied a permit because of a prior criminal conviction, the director of public safety shall determine whether the applicant is currently serving a term of probation or parole, and if the applicant is serving such a term, send written notice of the denial to the applicant's probation or parole officer. [am L 2016, c 108, §2; am L 2017, c 63, §1]

**Revision Note**

Only the subsections amended or added are compiled in this Supplement.

**Case Notes**

Plaintiff firearm permit applicant's allegations that: (1) plaintiff was deprived of plaintiff's fundamental constitutional right to bear operational firearms and ammunition as guaranteed by the Second Amendment; and (2) plaintiff was wrongfully denied a permit under this section without

**§134-3 Registration, mandatory, exceptions.** (a) Every resident or other person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within five days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:

 (1) A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve permit issued pursuant to section 183D-34;
 (2) A written document indicating the person has been invited to the State to shoot on private land; or
 (3) Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

Every person registering a firearm under this subsection shall be fingerprinted and photographed by the police department of the county of registration; provided that this requirement shall be waived where fingerprints and photographs are already on file with the police department. The police department shall perform an inquiry on the person by using the International Justice and Public Safety Network, including the United States Immigration and Customs Enforcement query, the National Crime Information Center, and the National Instant Criminal Background Check System, pursuant to section 846-2.7 before any determination to register a firearm is made. Any person attempting to register a firearm, a firearm receiver, or the parts used to assemble a firearm, and who is found to be disqualified from ownership, possession, or control of firearms or ammunition under section 134-7, shall surrender or dispose of all firearms and ammunition pursuant to section 134-7.3.

 (b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration of all firearms shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has been

assembled from separate parts and an unfinished firearm receiver, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "assembled from parts" shall be recorded in the space provided for model.  If the firearm has been assembled from parts created using a three-dimensional printer, the entity that registered the firearm receiver shall be recorded in the space provided for the name of the manufacturer and importer, and the phrase "3-D printer" shall be recorded in the space provided for model.  ==If the firearm has no serial number, the registration number shall be entered in the space provided for the serial number, and the registration number shall be engraved upon the receiver portion of the firearm before registration.==  On firearms assembled from parts created using a three-dimensional printer, the serial number shall be engraved on stainless steel and permanently embedded to the firearm receiver during fabrication or construction.  All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required:
    (1)  For processing the registration;
    (2)  For database management by the Hawaii criminal justice data center;
    (3)  By a law enforcement agency for the lawful performance of its duties; or
    (4)  By order of a court.
  (c)  Dealers licensed under section 134-31 or dealers licensed by the United States Department of Justice shall register firearms pursuant to this section on registration forms prescribed by the attorney general and shall not be required to have the firearms physically inspected by the chief of police at the time of registration.  An authorized dealer, as provided in section 134-31, or a dealer licensed by the United States Department of Justice, who brings, assembles, or causes to be brought into the State by any other means, separate parts and an unfinished firearm receiver that when assembled create a firearm, or parts created by a three-dimensional printer that when assembled create a firearm, shall register the unfinished firearm receiver and receive a serial number before the assembly of the firearm or the sale or transfer of unassembled firearm parts or a receiver to a third party in accordance with subsection (b).  Any sale or transfer of unfinished firearm receivers by an authorized dealer to a third party shall be conducted as if they were fully assembled firearms with a serial number engraved on the firearm receiver and in accordance with the firearms permitting process in section 134-2.  ==All other firearms and firearm receivers registered under this section shall be physically inspected by the respective county chief of police or the chief's representative at the time of registration.==
  (d)  Registration shall not be required for:

    (1)    Any device that is designed to fire loose black powder or that is a firearm manufactured before 1899;
    (2)    Any device not designed to fire or made incapable of being readily restored to a firing condition; or
    (3)    All unserviceable firearms and destructive devices registered with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice pursuant to Title 27, Code of Federal Regulations.

    (e)  Every person who permanently moves firearms out of the State shall contact and notify the county police department in the county where the firearms are registered about the removal of the firearms within five days of the removal from the State.  Any person who fails to timely notify the appropriate police department shall be subject to a civil penalty of $100 per firearm.

    (f)  No fee shall be charged for the registration of a firearm under this section, except for a fee chargeable by and payable to the registering county for persons registering a firearm under subsection (a), in an amount equal to the fee charged by the Hawaii criminal justice data center pursuant to section 846-2.7.  In the case of a joint registration, the fee provided for in this section may be charged to each person.

    (g)  No person less than twenty-one years of age shall bring or cause to be brought into the State any firearm. [L 1988, c 275, pt of §2; am L 1994, c 204, §4; am L 1999, c 217, §2; am L 2007, c 9, §7; am L 2013, c 254, §2; am L 2016, c 108, §3; am L 2019, c 257, §2; am L 2020, c 68, §2 and c 74, §5]

Previous                     Vol03_Ch0121-0200D                Next



[§134-6.5]  **Relief from federal firearms mental health prohibitor.**  (a) Any person who is prohibited from shipping, transporting, possessing, or receiving any firearm or ammunition, pursuant to title 18 United States Code section 922(d)(4) or (g)(4), having been adjudicated as a mental defective or having been committed to a mental institution under the laws of this State, may petition the circuit court in the circuit where the adjudication or commitment was made, in a civil proceeding, for relief from the federal firearm prohibitor based on the adjudication or commitment. The attorney general shall represent the State; provided that the attorney general, with the prosecuting agency's consent, may designate the prosecuting attorney for the county in which the petitioner seeks relief to represent the State.

(b)  In the civil proceeding, the court shall consider:
(1)  The circumstances regarding the adjudication or commitment from which relief is sought, including the court files of the adjudication or commitment;
(2)  The petitioner's mental health and criminal history records, if any;
(3)  The petitioner's reputation in the community, developed at a minimum through character witness statements, testimony, or other character evidence; and
(4)  Changes in the petitioner's condition or circumstances since the disqualifying events relevant to the relief sought, including medical documentation that the petitioner is no longer adversely affected by the condition that resulted in the petitioner's adjudication or commitment and is not likely to act in a manner dangerous to public safety.

(c)  The court shall grant the petition for relief if the petitioner proves, by clear and convincing evidence, that the petitioner will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. The court shall make written findings of facts and conclusions of law on the issues before it and issue a final order.

(d)  When a court issues an order granting or denying a petition for relief, the court shall forward this information to the Hawaii criminal justice data center, which in turn shall forward this information to the Federal Bureau of Investigation, or its successor agency, for inclusion in the National Instant Criminal Background Check System database. The information shall also be maintained by the Hawaii criminal justice data center for disclosure to and use by law enforcement officials for the purpose of firearms permitting or registration pursuant to chapter 134.

42

## FIREARMS, AMMUNITION AND DANGEROUS WEAPONS  134-7.2

(e) A person may file a petition for relief under this section no less than two years after the adjudication or commitment from which the relief is sought, and no more frequently than once every three years thereafter.

(f) For purposes of this section, the terms "adjudicated as a mental defective", "committed to a mental institution", and "mental institution" shall be construed in accordance with title 18 United States Code section 922, title 27 Code of Federal Regulations section 478.11, and judicial interpretations of those provisions.

(g) Any relief granted pursuant to this section shall not constitute relief from any other federal prohibitors or from any state prohibition pursuant to chapter 134. The State, its officers, and its employees shall not be liable for any damages, attorneys' fees, or costs related to this relief process.

(h) The petitioner may appeal a denial of relief, and the standard of review on appeal shall be de novo. [L 2014, c 87, §2]

### §134-7  Ownership or possession prohibited, when; penalty.

#### Case Notes

Summary judgment granted to defendants where plaintiff's 1997 harassment conviction constituted a conviction for a "misdemeanor crime of domestic violence" and, as a matter of statutory construction, the unavailability of a procedure for either expungement, set-aside, pardon, or civil rights restoration did not remove plaintiff from the ambit of federal prohibition or by extension, this section. 855 F.3d 1067 (2017).

Defendant police chief was entitled to qualified immunity from plaintiff firearm permit applicant's 42 U.S.C. §1983 claims for monetary damages for alleged violations of plaintiff's Second Amendment right to bear arms and Fourteenth Amendment procedural due process right because a reasonable official in defendant's circumstances would not have understood that defendant's conduct violated a right that was clearly established at the time of the denial of plaintiff's permit; this section, on which the denial was based, had not been invalidated by case or legislative action. 869 F. Supp. 2d 1203 (2012).

Plaintiff firearm permit applicant's allegations that plaintiff was denied a permit and ordered to surrender plaintiff's weapons due to a conviction of harassment under §711-1106 more than ten years before and that the conviction was not a crime of violence under subsection (b) or federal law for the purposes of prohibiting ownership or possession of firearms were sufficient to state a 42 U.S.C. §1983 claim for a violation of plaintiff's Second Amendment rights. 869 F. Supp. 2d 1203 (2012).

Genuine issue of material fact existed regarding: (1) whether plaintiff had been under counseling for addiction to, abuse of, or dependence upon a drug or intoxicating liquor; and (2) whether plaintiff had been "medically documented to be no longer adversely affected" by drugs or intoxicating liquor. As a result, plaintiff had not established a Second Amendment right to possess firearms. 976 F. Supp. 2d 1200 (2013).

Subsection (b) did not disqualify plaintiff from exercising plaintiff's Second Amendment rights because the court could not conclude that plaintiff's convictions for harassment constituted a crime of violence. 976 F. Supp. 2d 1200 (2013).

Where defendants argued that plaintiff was prohibited from possessing firearms under federal law because of the federal Lautenberg Amendment, which prohibits firearm ownership by any person who "has been convicted in any court of a misdemeanor crime of domestic violence", plaintiff's convictions for harassment did not qualify as a misdemeanor crime of domestic violence under federal law. 976 F. Supp. 2d 1200 (2013).

Where defendants asserted that plaintiff lacked standing to bring a lawsuit because plaintiff was precluded from obtaining firearms under this section, and, therefore, could not establish a violation of plaintiff's Second Amendment rights, police department's denial of plaintiff's application for a firearms permit, order to surrender firearms plaintiff possessed, and letter affirming the denial of the application constituted an "injury-in-fact" sufficient to meet the minimum requirements of Article III standing. 49 F. Supp. 3d 727 (2014).

Where plaintiff was disqualified from possessing firearms under 18 U.S.C. §922(g)(9) and applying subsection (a) would not have an impermissible retroactive effect, subsection (a) precluded plaintiff from acquiring a firearms permit. 49 F. Supp. 3d 727 (2014).

Where the State's evidence only went so far as to show defendant's ownership and presence in the vehicle and defendant's proximity to the firearm and ammunition, absent evidence of intent, the circuit court correctly granted defendant's renewed motion of judgment of acquittal; the appeals court thus erred in vacating circuit court's judgment by concluding that there was sufficient evidence of intent for jury to infer that defendant constructively possessed the subject rifle and ammunition in violation of subsection (b). 128 H. 18, 282 P.3d 560 (2012).

### §134-7.2  Prohibition against seizure of firearms or ammunition during emergency or disaster; suspension of permit or license. (a) Notwithstanding any

43

**134-7.2**  PUBLIC SAFETY AND INTERNAL SECURITY

provision of chapter 127A or any other law to the contrary, no person or government entity shall seize or confiscate, under any emergency or disaster relief powers or functions conferred, or during any emergency period, as defined in section 127A-2, or during any time of national emergency or crisis, as defined in section 134-34, any firearm or ammunition from any individual who is lawfully permitted to carry or possess the firearm or ammunition under part I of this chapter and who carries, possesses, or uses the firearm or ammunition in a lawful manner and in accordance with the criminal laws of this State.

(b) Notwithstanding any provision of chapter 127A or any other law to the contrary, no person or government entity shall suspend, revoke, or limit, under any emergency or disaster relief powers or functions conferred, any lawfully acquired and maintained permit or license obtained under and in accordance with part I of this chapter.
***

[am L 2014, c 111, §7]

### Revision Note

Only the subsections amended are compiled in this Supplement.

§**134-7.3  Seizure of firearms upon disqualification.**  (a) If any applicant is denied a permit, the chiefs of police of the respective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition. If an applicant fails to voluntarily surrender or dispose of all firearms and ammunition within thirty days from the date notice was mailed, the chief of police may seize all firearms and ammunition.

(b) Any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7, within seven days of disqualification, shall voluntarily surrender all firearms and ammunition to the chief of police where the person resides or dispose of all firearms and ammunition. If any person fails to voluntarily surrender or dispose of all firearms and ammunition within seven days from the date of disqualification, the chief of police may seize all firearms and ammunition.

(c) For any person disqualified from ownership, possession, or control of firearms and ammunition under section 134-7(c), or because the person has been admitted to a psychiatric facility, whether for emergency or involuntary hospitalization, pursuant to part IV of chapter 334, once the chief of police is notified that the person is disqualified, the chief of police shall promptly issue a notice to the disqualified person to immediately surrender all firearms and ammunition. The notice shall be in writing, shall set forth the reasons for the disqualification, and shall state the requirement that the person immediately surrender all firearms and ammunition to the chief of police. If any person fails to voluntarily surrender all firearms and ammunition upon receiving notice, the chief of police may seize all firearms and ammunition. The firearms and ammunition shall be held in police custody until the person has been medically documented to be no longer adversely affected as provided in section 134-7 or until transferred or sold by the owner. Nothing in this subsection shall be construed to limit the duties imposed by subsection (b).

(d) For the purposes of this section, "dispose" means selling the firearms to a gun dealer licensed under section 134-31, transferring ownership of the firearms to any person who meets the requirements of section 134-2, or surrender-

#### FIREARMS, AMMUNITION AND DANGEROUS WEAPONS    134-16

ing all firearms to the chief of police where the person resides for storage or disposal; provided, for a person subject to section 134-7(f), "dispose" shall not include transferring ownership of the firearms to any person who meets the requirements of section 134-2.

  (e) The chief of police of the respective counties shall adopt procedures to implement and administer the provisions of this section by December 31, 2001. [L 2000, c 127, §1; am L 2004, c 4, §2; am L 2016, c 110, §2; am L 2018, c 158, §1]

  **[§134-8.5]  Bump fire stock, multiburst trigger activator, or trigger crank; prohibition.** (a) Any person in this State who manufactures or causes to be manufactured, imports into the State, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any bump fire stock, multiburst trigger activator, or trigger crank shall be guilty of a class C felony.

  (b) As used in this section:

  "Bump fire stock" means a butt stock designed to be attached to a semiautomatic firearm and designed, made, or altered to increase the rate of fire achievable with such firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

  "Multiburst trigger activator" means:
  (1) A device that simulates automatic gunfire by allowing standard function of a semiautomatic firearm with a static positioned trigger finger or a device that fires multiple shots with the pull and release of the trigger; or
  (2) A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it simulates automatic gunfire.

  "Trigger crank" means any device to be attached to a semiautomatic firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion, but does not include any firearm initially designed and manufactured to fire through the use of a crank or lever. [L 2018, c 157, §1]

  **§134-9  Licenses to carry.**

                                     Case Notes

Discussed: 911 F. Supp. 2d 972 (2012).

  **§134-16  Restriction on possession, sale, gift, or delivery of electric guns.**
***

  (b) Any electric gun possessed, offered for sale, held for sale, sold, given, lent, or delivered in violation of subsection (a) shall be confiscated and disposed of by the chief of police.

  (c) This section shall not apply to:
  (1) Law enforcement officers of county police departments;
  (2) Law enforcement officers of the department of public safety;
  (3) Conservation and resources enforcement officers of the department of land and natural resources;
  (4) Members of the Army or Air National Guard when assisting civil authorities in disaster relief, emergency management, or law enforcement functions, subject to the requirements of section 121-34.5; and

45

134-16  PUBLIC SAFETY AND INTERNAL SECURITY

 (5) Vendors providing electric guns to the individuals described in paragraphs (1) through (4);

provided that electric guns shall at all times remain in the custody and control of the law enforcement officers of the county police departments, the law enforcement officers of the department of public safety, the conservation and resources enforcement officers of the department of land and natural resources, or the members of the Army or Air National Guard.

\*\*\*

 (e) The department of land and natural resources and the department of public safety shall ensure that each of its conservation and resources enforcement officers and law enforcement officers who is authorized to use an electric gun and related equipment shall first receive training from the manufacturer or from a manufacturer-approved training program, as well as by manufacturer-certified or approved instructors in the use of electric guns prior to deployment of the electric guns and related equipment in public. Training for conservation and resources enforcement officers of the department of land and natural resources and law enforcement officers of the department of public safety may be done concurrently to ensure cost savings.

 (f) No later than June 30, 2018, the conservation and resources enforcement program of the department of land and natural resources shall meet the law enforcement accreditation or recognition standards of the Commission on Accreditation for Law Enforcement Agencies, Inc., in the use of electric guns. [am L 2012, c 148, §1; am L 2014, c 111, §28]

**Revision Note**

Only the subsections amended are compiled in this Supplement.

**[§134-23] Place to keep loaded firearms other than pistols and revolvers; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-24] Place to keep unloaded firearms other than pistols and revolvers; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-25] Place to keep pistol or revolver; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-26] Carrying or possessing a loaded firearm on a public highway; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).

**[§134-27] Place to keep ammunition; penalty.**

**Case Notes**

Discussed: 911 F. Supp. 2d 972 (2012).