CLARE E. CONNORS          7936
Attorney General of Hawaii

CARON M. INAGAKI         3835
KENDALL J. MOSER         6515
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1494
Facsimile:   (808) 586-1369
E-Mail: Caron.M.Inagaki@hawaii.gov
         Kendall.J.Moser@hawaii.gov

Attorneys for Defendant
CLARE E. CONNORS, in her
Official Capacity as the Attorney
General of the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and DAVID KIKUKAWA,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CLARE E. CONNORS, in her Official Capacity as the Attorney General of the State of Hawaii,<br><br>                    Defendant. | CIVIL NO. 19-00578 JMS-RT<br><br>DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S REPLY MEMORANDUM IN SUPPORT OF COUNTER MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>ECF No. 91 |

<u>Hearing</u>
Date: June 28, 2021
Time: 10:00 a.m.
Chief Judge J. Michael Seabright

Trial Date: February 23, 2022

DEFENDANT CLARE E. CONNORS, IN HER OFFICIAL CAPACITY
AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII'S
REPLY MEMORANDUM IN SUPPORT OF COUNTER
MOTION FOR SUMMARY JUDGMENT

Defendant Clare E. Connors, in her Official Capacity as the Attorney General of the State of Hawaii ("Defendant"), by and through her attorneys, Caron M. Inagaki and Kendall J. Moser, Deputy Attorneys General, hereby submits this Reply Memorandum in support of her Counter Motion for Summary Judgment filed on May 28, 2021 [ECF No. 91].

I.  The Plaintiffs Do Not Have an As-Applied Challenge Against Defendant.

As the Court is aware, in their original Complaint the Plaintiffs sued not only Defendant but the City and County of Honolulu as well, and later settled with the City and County and filed a stipulation for dismissal with prejudice. See ECF No. 53. The statutes the Plaintiffs challenge, Hawaii Revised Statutes § 134-2(d) and § 134-3(a), are clear that it is the county chiefs of police who issue permits to acquire firearms, and with whom firearms are registered. In the event Defendant was not clear in her Counter Motion for Summary Judgment, she is not merely "suggesting" that the Plaintiffs waived their as-applied challenge by dismissing the City and County, she is declaring unequivocally that they did so. Again, from *Young v. State of Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021): "A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law." The City and County

through its police department executes the statutory provisions the Plaintiffs complain of.  The Plaintiffs' as-applied challenge went away when they chose to dismiss the City and County with prejudice.  If the Plaintiffs had wanted to continue pursuing as-applied claims then they should not have voluntarily dismissed the City and County from this action.  Instead, they chose to pursue only their claims against Defendant in her official capacity, i.e. the State, and those claims cannot be as-applied challenges because the State does not apply the firearm permitting and registration laws.

II.   The Evidence Shows That the Challenged Statutes Are Not A Substantial Burden.

Throughout their Reply and Opposition the Plaintiffs complain that under Hawaii's statutes it is "difficult" to complete handgun purchases (pp. 3-4); that the statutes have more than a "de minimis" impact on their Second Amendment rights (p. 6); the statutes "severely hamper" the Plaintiffs' ability to purchase handguns because they must take time off work (p. 8); and that the statutes make it "very difficult" to purchase a handgun (p. 9).  But nowhere do the Plaintiffs provide evidence or even argument that the challenged statutes constitute a ban on them purchasing handguns, only that the laws make it inconvenient for them to do so.  Having to take time off work is not a sufficient basis upon which to invalidate state statutes designed to promote public safety.

As part of their Concise Statement (ECF No. 86), the Plaintiffs provide Hawaii firearm registration reports for the years 2017, 2018, 2019 and 2020. See Exhibits "B"-"E." Defendant has admitted that those reports are true and correct. What those reports evidence is that over the past four years only 2% of all approved firearm permit applications were voided after the applicants failed to return for their permits within the specified time period. Id. The other 98% of Hawaii's firearm applicants managed to timely pick up their permits. Given these facts, it cannot be said that Hawaii's permit to acquire statute constitutes a substantial burden on the Plaintiffs' right to obtain handguns. The Plaintiffs' arguments are without merit.

III.  The Laws Plaintiffs Challenge Are Longstanding.

As set out in Defendant's Counter Motion, the provisions in the Hawaii Revised Statutes ("HRS") that the Plaintiffs challenge, § 134-2 (permit to acquire) and § 134-3 (registration), date back more than 100 years to 1907 and 1919, only a few years after Hawaii became a Territory, and took their modern form in 1933-1934.[1] Relying on *Young v. State of Hawaii,* the Plaintiffs argue that these laws are not longstanding because they "are not old enough." See the Plaintiffs' Reply and Opposition at p. 4. Reliance on *Young* for this proposition is not helpful. The

---

[1] See Exhibits "A," "B," and "G" to Defendant's Concise Statement of Material Facts [ECF No. 92].

Court in *Young* based its holding in large part on the fact that there were carry restrictions in the Statute of Northampton which was enacted in 1328, four and a half **centuries** before the Second Amendment was ratified.  Open carry restrictions are obviously longstanding.  This is not an open carry case.

A more useful analysis is found in the cases discussed in Defendant's Counter Motion, which hold that firearms regulations dating back to the early 20th century are sufficiently longstanding so as to qualify for what the Supreme Court in *Heller I* called "presumptively lawful regulatory measures."  *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (mentioning "early twentieth century" laws); *National Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012) ("By 1923, therefore, twenty-two States and the District of Columbia had made 21 the minimum age for the purchase or use of particular firearms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1254-55 (D.C. Cir. 2011) ("*Heller II*") ("The Court in *Heller [I]* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century.").

There can be no reasonable dispute that Hawaii's permit to acquire and registration provisions are therefore presumptively lawful under *Heller I*.  That should end the analysis.  The Plaintiffs argue, however, that they have rebutted the

4

presumption of constitutionality because the challenged provisions are a substantial burden on their rights, and the justifications for registration laws have been eclipsed by modern technology.

IV.     HRS § 134-2 Survives Intermediate Scrutiny.

As explained in Defendant's Counter Motion, and in section II. above, using a permit to acquire a handgun within ten days is not a substantial burden on conduct protected by the Second Amendment. Strict scrutiny therefore does not apply. The ten-day requirement in HRS § 134-2 affects only *the manner* in which a person obtains a handgun. It is not a ban. *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014). Defendant briefed these issues on pp. 13-18 of her Counter Motion and need not repeat her arguments here.

In response to the Plaintiffs' arguments beginning at p. 11 of their Reply and Opposition, it was the Hawaii Legislature's decision whether to treat pistols and revolvers differently than rifles and shotguns. "[I]n the face of policy disagreements, or even conflicting legislative evidence, 'we must allow the government to select among reasonable alternatives in its policy decisions.' . . . Our role is not to re-litigate a policy disagreement that the [Hawaii] legislature already settled, and we lack the means to resolve that dispute." *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018). If the Legislature felt that the concealability of pistols and revolvers justified limiting permits to acquire to ten days rather than the

5

one year accorded to rifles and shotguns, it was entitled to make that determination. Furthermore, *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*") itself makes a significant distinction between handguns and other firearms, such as long guns. *Heller I* gave handguns "special consideration" because they are the "quintessential self-defense weapon." *See Kolbe v. Hogan*, 849 F.3d 114, 138-39 (4th Cir. 2017); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 144 (3d Cir. 2016). If the Supreme Court can distinguish handguns from long guns, so can the Hawaii Legislature.

The Plaintiffs further argue that the difference between the expiration periods for handguns and long guns makes the permitting statute constitutionally underinclusive. However, the Ninth Circuit has held that "underinclusiveness does not doom [a statute] under intermediate scrutiny." *Pena*, 898 F.3d at 981. Under intermediate scrutiny, "[t]he government must show that the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, but not necessarily that the chosen regulation is the least restrictive means of achieving the government's interest." *Id.* at 979 (internal quotation marks omitted). Here the ten-day expiration date promotes public safety, which would be less effectively achieved otherwise, and even if a longer expiration date, such as for long guns, were possible, it is not required.

The Plaintiffs argue that permits should be given a longer expiration date than ten days because under HRS § 134-7(g), "[a]ny person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section 134-7.3."  Relying on voluntary surrender in this way ignores reality.  Many people may not realize that they are supposed to turn in their firearms.  Other people may simply refuse to do so.  The requirement of having to get a new permit for each pistol or revolver, with an expiration date of ten days for each, ensures that a person's qualifications will be checked again each time he or she applies for a new permit.  The governmental objective of public safety is promoted because a relatively short expiration date will ensure that the information in a person's application remains accurate when they acquire their firearm.

V.     <u>HRS § 134-3 Survives Intermediate Scrutiny.</u>

As the Plaintiffs point out, HRS §134-3, which dates back nearly one century, was amended in 2020, during the pendency of this action, to require in-person inspection of firearms at the time of registration.  This does not change the statute's constitutionality.  The provision at issue dates back to 1919 and constitutes a longstanding "condition and qualification on the commercial sale of arms." *Heller I*, 554 U.S. at 626-27 & n.26.  *See also Silvester v. Harris*, 843 F.3d

816, 829-32 (9th Cir. 2016) (Thomas, C.J., concurring) (applying the "conditions and qualifications on the commercial sale of arms" exception). If the Court goes on to the second step of the analysis, intermediate scrutiny should be applied because an in-person inspection requirement merely affects the manner in which registration takes place rather than imposing a complete ban. And it is not hard to bring a firearm to a police station in any event. Moreover, an in-person inspection protects public safety by ensuring that the registration information is accurate, ensuring that the firearm complies with Hawaii law, and confirming the identity of the firearm to facilitate tracing by law enforcement. *See Heller v. District of Columbia*, 801 F.3d 264, 285-86 (D.C. Cir. 2015) ("*Heller IV*") (Henderson, J., concurring in part and dissenting in part); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

VI. Conclusion

Based on the foregoing reasons and authorities, and those in her Counter Motion, Defendant respectfully requests that this Court enter summary judgment in her favor and against the Plaintiffs.

//

//

//

//

8

DATED:  Honolulu, Hawaii, June 14, 2021.

        STATE OF HAWAII

        CLARE E. CONNORS
        Attorney General
        State of Hawaii

        /s/ Kendall J. Moser
        KENDALL J. MOSER
        Deputy Attorney General

        Attorney for Defendant
        CLARE E. CONNORS, in her
        Official Capacity as the Attorney
        General of the State of Hawaii