```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3
     TODD YUKUTAKE and               ) CIVIL NO. 19-00578JMS-RT
 4   DAVID KIKUKAWA,                  )
                                      ) Honolulu, Hawaii
 5            Plaintiffs,             ) October 19, 2020
                                      )
 6        vs.                         )
                                      ) [54] PLAINTIFFS' MOTION FOR
 7   CLARE E. CONNORS, in her         )  SUMMARY JUDGMENT
     Official Capacity as the         ) [60] DEFENDANT CLARE E.
 8   Attorney General of the          )  CONNORS, IN H ER OFFICIAL
     State of Hawaii,                 )  CAPACITY AS THE ATTORNEY
 9                                    )  GENERAL OF THE STATE OF
              Defendant.             )  HAWAII'S COUNTER MOTION FOR
10   _____ )  SUMMARY JUDGMENT

11
              TRANSCRIPT OF VIDEO TELECONFERENCE PROCEEDINGS
12           BEFORE THE HONORABLE J. MICHAEL SEABRIGHT,
                 CHIEF UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
     For the Plaintiffs:       ALAN ALEXANDER BECK, ESQ.
15                             Law Office of Alan Beck
                               2692 Harcourt Drive
16                             San Diego, California  92123

17                             STEPHEN D. STAMBOULIEH, ESQ.
                               Stamboulieh Law, PLLC
18                             P.O. Box 428
                               Olive Branch, Mississippi  38654
19

20

21   For the Defendant:       KENDALL J. MOSER, ESQ.
                               Department of the Attorney General,
22                              State of Hawaii
                               425 Queen Street
23                             Honolulu, Hawaii   96813

24

25
```

1

2    Official Court                Cynthia Fazio, RMR, CRR, CRC
     Reporter:                     United States District Court
3                                  300 Ala Moana Blvd., C-270
                                   Honolulu, Hawaii  96850
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

1   MONDAY, OCTOBER 19, 2020                          9:55 A.M.

2          THE COURTROOM MANAGER:  Civil Number 19-00578JMS-RT,

3   Todd Yukutake, et al., versus Clare E. Connors.

4          This case has been called for hearing on Motions for

5   Summary Judgment by way of videoconference.

6          Counsel, please make your appearances for the record.

7          MR. BECK:  My name is Alan Beck for the plaintiff.

8          THE COURT:  Yes, good morning, Mr. Beck.

9          MR. MOSER:  Good morning, Your Honor.  Kendall Moser

10   for defendant Clare Connors.

11          THE COURT:  Yes, good morning to you as well.

12          All right.  Who else is on?

13          MR. STAMBOULIEH:  Steven Stamboulieh for the

14   plaintiff, Your Honor.

15          THE COURT:  All right.  Mr. Beck will be arguing; is

16   that right?

17          MR. STAMBOULIEH:  That's correct, sir.

18          THE COURT:  Good.  I ask everyone if you're not

19   speaking to stay muted.  I will try to remember to do the same

20   so we have less feedback.

21          Well, thank you all for appearing today by Zoom.

22          I do have some matters I want to cover first.  I have

23   some real -- a level of discomfort in going forward with this

24   and where the state of the record is right now, and I want to

25   cover several matters and then get your input as to -- as to my

1    thoughts on these -- on these matters.

2            First, we know that the complaint predated both

3    obviously the settlement with HPD, and I understand the

4    settlement with HPD, if I understand it correctly, permits the

5    e-mailing of permits to acquire rather than having them

6    physically picked up at HPD and also extends the unit, the

7    firearm unit's hours.  But more importantly probably is the

8    state law change, the amendment to 134-3(c) that became law in

9    September of this year.

10           Now, I understand that the plaintiff's position is it

11   didn't really change anything.  The State's position in answers

12   to interrogatories is it didn't change anything, but in the

13   briefing the suggestion is different than that.

14           And so it leaves an area that's already sufficiently

15   complex, it leaves a lot of uncertainty to me as to the right

16   way to proceed here.  And I'm not going to do this, I want all

17   counsel to be aware, I'm not going do this sort of on the

18   cheap, if you will.  And I don't mean that in a derogatory

19   sense.  I just mean that, you know, everyone is going to have

20   to roll up their sleeves and work hard to get this case

21   resolved, and that includes me and I'm more than willing to do

22   that, but I need everyone's help on that.

23           So my view on that is, Mr. Beck, we need an amended

24   complaint is what we need because, you know, right now you've

25   asked for injunctive relief on a statute that doesn't even

1   exist any more in part and is messy and I don't think we want

2   to go somewhere with that sort of record on this matter.

3          Second issue, there is this issue of -- based on

4   *Heller* and the discussion in circuit and district courts around

5   the country since *Heller* on what -- you know, what is a

6   longstanding regulation.  What does that look like, what time

7   period do we look at and so forth.  In the Ninth Circuit, we as

8   far as I can see, we have two sort of opposing statements, both

9   in dicta.  In the *Fyock* case, F-Y-O-C-K, 779 F.3d 991, a 2015

10  case, the court said:  "Although not from the founding era,

11  early 20th century regulations might nevertheless demonstrate a

12  history of longstanding regulation if their historical

13  prevalence and significance is properly developed on the

14  record."  That looks to me, sounds to me like dicta when you

15  look at the whole case.

16         More recently in *Duncan*, 970 F.3d 1133, a 2020 case,

17  this is at Page 1150, the court says:  Its earlier discussion

18  raises the question of what is a sufficient longstanding

19  regulation.  They say:  "In our circuit we have looked for

20  evidence showing whether the challenged law traces its lineage

21  to founding era or reconstruction era regulations."  That too

22  appears to me to be dicta.

23         Now, I don't know if the *Young* case -- and I don't say

24  this because the *Young* case comes out of Hawaii.  The *Young*

25  case could be coming out of any district in the Ninth Circuit.

1    But when you look at Judge Clifton's dissent in the three-judge

2    opinion -- now, I know that's been vacated, but I'm just

3    looking at what's going on, you know, in the context of that

4    case, he talks at some length about longstanding regulations

5    and how to look at that.

6           So, you know, I'm sort of thinking of waiting until

7    *Young* comes out, which I don't think will be very long and

8    hopefully we'll get some clarification.  We may not and I fully

9    recognize that, we may not.  But we might get some

10   clarification on what the test is and what I look at in the

11   Ninth Circuit.

12          The third thing, I know this is a lot I'm throwing at

13   you guys, but here's the third thing, okay, which is, I'm

14   concerned with the state of the record right now, Mr. Moser, on

15   your argument that this is a longstanding regulation.  And I'm

16   not talking about now the fact that you trace it back to early

17   20th century.  That I'll make a decision.  We'll see if *Young*

18   clarifies, you know, and where that takes us.  So I'm not

19   talking about necessarily the era.  But what you do is you cite

20   one state only, Hawaii, and no others.  And I haven't found any

21   case that accepts that as a appropriate framework.  And if you

22   sort of tease it out, I think it doesn't make sense that you

23   could look at just one state.  And let me just give you a

24   hypothetical that I thought of.  And, you know, if you want to

25   push back, please do if you think I'm wrong.  I'm not

1    suggesting I'm right.  I'm telling you what my thoughts are.

2          So Hawaii has the law it has.  And let's just say

3    hypothetically under your theory, Mr. Moser, as you at least

4    seem to express it is, you know, that's enough to show there's

5    a longstanding regulation as to this particular law and

6    therefore it sort of escapes, if you will, the intermediate or

7    the strict scrutiny analysis because of the longstanding

8    regulation.  But let's say that no other state has it and Maine

9    adopts our law in whole.  It just word-for-word copies and

10   pastes Hawaii law into the Maine revised statutes in 2020.

11          You know, I don't think you'd look at Maine and say,

12   well, there's no longstanding, you know, regulation in Maine,

13   so it is going to be looked at differently than in Hawaii.  In

14   other words, I don't think the Second Amendment is looked at

15   differently in one state versus another.  It's going to be

16   looked at the same.  So I think there has to be a much broader

17   view as to what is longstanding.  That is a time extensive and

18   expensive, I'm sure, opposition to do.  But, again, if the

19   State wants to rely on that, I think we need to take a harder

20   look at that.

21          So, I know I'm throwing a lot out at you folks.  I

22   want both of you to know I'm taking this very seriously as far

23   as looking at this very hard, but I do have these concerns that

24   I think we need to sort of regroup a little bit given sort of

25   the legislative change.  Wait and see if we get some help with

1    the en banc Ninth Circuit case that should be coming out within

2    a month or so, I would think.  I would hope at least.  I don't

3    know, but I'd hope.  Maybe we'll get some guidance there.

4             So I'm thinking sort of a three-step process.  Let

5    Mr. -- and I will give you leave to do it, Mr. Beck, to amend,

6    to make it real clear where -- what you're alleging now based

7    on the law today and what you're seeking.  And then wait for

8    *Young* and then start over again on the briefing.  And, you

9    know, as soon as *Young* comes down we can talk about that

10   briefing schedule and what it would look like.

11            Mr. Moser, you can take a look and say you can't

12   provide that evidence of a longstanding regulation.  I don't

13   know.  I really have no idea.  But I do have a pretty strong

14   belief just citing Hawaii history is not enough.  That's one.

15   But I think you need a lot more than that.

16            So, I've thrown a whole lot out to you folks.  I have

17   a number of subsequent questions I will get to if we were going

18   to go forward today with the merits of the case.  But maybe I

19   can hear from each of you in these sort of three areas that I

20   have some concerns about and my idea of sort of regrouping a

21   little bit on this case.

22            Mr. Beck, you're the plaintiff, so maybe it's fair for

23   me to start with you.

24            MR. BECK:  Right.  Good morning, Your Honor.  Can you

25   hear me well?

1          THE COURT:  I can.  Yes.

2          MR. BECK:  Yes.  I -- we actually briefed a lot of the

3     same issues in *Young*.  So, since myself, Mr. Stamboulieh are

4     both familiar, you know, I do want to be up-front with the

5     Court that we briefed a lot of the same, of longstanding issues

6     in the en banc briefing.  So, there is actually a pretty good

7     chance that they're going to touch on that since the State of

8     Hawaii in *Young* stated that they -- they look to laws from the

9     1920s, handgun carry laws to state that their laws for -- that

10    the handgun carry law, HRS 134-9 is longstanding.  So it is

11    strongly possible we're going to get something from *Young* as to

12    whether -- what exactly longstanding is.  I --

13         THE COURT:  I'm sorry.  I had muted.

14         And I have to say that's a really important issue

15    obviously.  It's an important issue for all courts.  And when I

16    look right now, and I did not look at this obviously, you know,

17    when I -- until last week or so when I started really focussing

18    on this, you know, I didn't sort of draw the potential

19    connection between *Young* and a decision that could be helpful

20    here.

21         Initially I asked myself whether, you know, we should

22    stay this case because of *Young*, and then I saw the issues were

23    sufficiently different I didn't think that was necessarily

24    based on the statutory framework.  But, you know, as I dug

25    deeper into this, it seems to me it makes sense to see what

1   kind of help we get on this issue of what is longstanding and

2   how the court looks at it.  Go ahead, Mr. Beck.

3          MR. BECK:  It's -- I would say the briefing is -- on

4   the longstanding issue is very similar.  I mean I wrote both of

5   them.  I mean it's -- I mean I think that maybe the better

6   posture is first to argue and just see what happens with *Young*

7   since -- I mean, I don't know how much the briefing is

8   necessarily going to change.

9          But there's one thing I would like to touch about

10  *Duncan*.  I agree with your analysis as to the part of *Duncan*

11  that you discussed, Your Honor.  However there's another part

12  of *Duncan* that I disagree is dicta.  And in *Duncan*, the State

13  of California stated that the magazine law is longstanding.

14  And they're able to point to -- to a few magazine laws from

15  about the 1920s.  However only one of them had not been --

16  what's the word -- gotten rid of.

17         THE COURT:  Repealed?

18         MR. BECK:  Repealed, yes, Your Honor.  And that was a

19  D.C. magazine law from 1924, Your Honor.  And that -- the

20  *Duncan* court found that that was insufficient evidence for

21  the -- to be deemed longstanding.  And so it didn't find it

22  necessary to look to see whether, you know, a sufficient amount

23  of laws from the 1920s would be enough to make something 19 --

24  longstanding since the only law that the State of California

25  was able to cite to was -- it was only one from 1924.  So --

1    and I think that puts us in a very similar position and --

2          THE COURT:  Let me interrupt.  I understand what

3    you're saying, Mr. Beck, but, you know, this is an extremely --

4    to me, any Second Amendment case is one the Court, you know,

5    has to look at very hard.  And you know I've done that,

6    Mr. Beck.  We've had some cases.

7          MR. BECK:  Yes.

8          THE COURT:  And you know I've interjected and tried to

9    settle where I thought it should be settled and, you know, I've

10   ruled where I've had to rule.

11         But, you know, I don't know given the uncertainty of

12   all of this and to hope that *Young* may give us something more,

13   I'm inclined, even though I understand you may not like this,

14   but to give the State the option to kind of reexamine where it

15   is on this argument, to give Mr. Moser that ability.

16         Now, he may come back later and say we don't want to

17   do that.  I don't know.  But *Duncan* is a, you know, of recent

18   vintage, as you know, just came out.  We may get more clarity.

19   And if the State was under the view that just one state,

20   regardless of the time frame, would be enough, you know, I have

21   some real problems with that.

22         And I think, you know, in fairness to the job I have

23   to do, and I'll be very blunt about this, you know, to do it

24   right I would have a law clerk go and look at all 50 states and

25   the history.  But I don't have time to do that.  My law clerks

1   don't have time to do that.  That's the job the parties should

2   do, not the Court.  And I think both of you can agree with that

3   in the first instance.

4           MR. BECK:  Yes, Your Honor.

5           THE COURT:  I shouldn't have to go and have to do that

6   in these cases.

7           We've yet to hear from Mr. Moser.  I understand what

8   you're saying, Mr. Beck, and you may have a substantive

9   argument there, but, again, you know, we'll see what *Young*

10  brings us and hopefully it won't be too long.

11          MR. BECK:  I hope so as well, Your Honor.

12          THE COURT:  Let's go to issue one.  I assume you're

13  okay with amending the complaint and trying to just clear that

14  underbrush of the issue of the change in 134(c) so that we can

15  move forward with a fresh understanding of what you're seeking

16  based on the new statute as opposed to where it stands right

17  now, which is a little too murky for my -- for my liking.

18          MR. BECK:  We're happy to litigate this however this

19  Court wants in order to get a final ruling.  If the Court needs

20  an amendment to the complaint, that's something we obviously

21  would be willing to do, Your Honor.

22          THE COURT:  Okay.  So let me turn to you, Mr. Moser,

23  then.  And, you know, I'll hear again from you, Mr. Beck, but I

24  know, Mr. Moser, this is a lot I've thrown out at you and, you

25  know, I doubt you came prepared to discuss these exact issues

1    today.  But let me hear from you your thoughts on what I've

2    thrown out here.

3            MR. MOSER:  Yes, Your Honor.  Thank you.

4            As I've been listening, I think -- well, the State's

5    position is that I've come to in the last few minutes is that

6    we have no objection to an amended complaint.  I think that's

7    wise given what has happened not only while this case has been

8    pending but more recently while these motions have been

9    pending.

10           I mean as the Court pointed out at the outset, the

11   amendment only occurred barely over a month ago.  And so we've

12   got a challenge to a statute which doesn't exist in the form

13   that it did at the time of the filing of the complaint and of

14   the motions.

15           I -- I was not one of the attorneys in the *Young* case

16   at any stage, including on the appeal, but I did have occasion

17   to view the entire hearing a week or two ago at which Mr. Beck

18   argued.  And I think it would be helpful or could be helpful to

19   see what the en banc panel decides in *Young* and see if it

20   provides us with any guidance for this case.  Because I'm

21   convinced that whoever ends up losing -- losing these summary

22   judgment motions, our side or the plaintiffs' side, is going to

23   file an appeal.  So we might have some issues resolved by the

24   benefit of the *Young* decision that we don't need to take up

25   again, either with Your Honor or with the Ninth Circuit if we

1    should go there.

2          And then I -- I hear what the Court is saying about

3    needing to take a broader view of what longstanding is.  So we

4    are happy do that.  And we should do that.

5          THE COURT:  Okay.  All right.  Well, I appreciate

6    that.  And, you know, I mean you have expressed, Mr. Moser,

7    sort of my thoughts, which is no district court judge wants to

8    be in a position where there's sort of a pending matter you

9    know about and you rule anyways, and then the Ninth -- you

10   know, and one of you appeal, it goes to the Ninth Circuit, I

11   lose jurisdiction, but we all know that what I did was

12   incorrect because of a intervening Ninth Circuit case law,

13   right?  That's not a position anyone wants to be in, certainly.

14   It doesn't, you know, scream out judicial economy or fairness

15   at all.

16         So, what I -- what I am inclined to do is to deny the

17   pending motions as -- as moot, maybe I'll call it, without

18   prejudice.

19         Mr. Beck, how long would -- two weeks would be enough

20   time for you to amend your complaint, is that sufficient time?

21         MR. BECK:  Yes, Your Honor.

22         THE COURT:  Okay.  So, you know, I will make clear if

23   that date has passed, I have no idea if it did, but in an EO

24   for today I'm saying now you have permission to file an amended

25   complaint.  Okay?  So we'll give you a deadline two weeks from

1   today, whatever that is, to file an amended complaint.

2          Then we'll await the *Young* decision.  I'll know when

3   it comes down.  You folks will know when it comes down.  What I

4   suggest we do is we have a status conference right after it

5   comes down, within a week of it coming down.  And then in the

6   interim you folks could talk a little bit and see if you can

7   agree on process going forward.  And then you can get me online

8   as well and we can have a discussion as to that as well.

9          I don't know what the *Young* court will do.  I have no

10  crystal ball.  But also, you know, if the *Young* court does

11  strike down the Hawaii law, it also may be worthwhile,

12  Mr. Moser, to wait until the legislative session and see if

13  there's a complete overhaul, which there could be if that's the

14  case, on the state statute.  You know, that might be worth

15  something to think about as well.  You know, I don't know that

16  would happen, I'm not saying it will, but I could see there be

17  a -- sort of a 360 review of the law if *Young* strikes down the

18  existing place to carry law.  It will give an opportunity to,

19  you know, review the entire statutory framework.  I'm not

20  saying that's right or wrong, I'm just saying that's another

21  possibility.

22          So, is there any -- let me just ask it this way:  Is

23  there any objection as to that as a framework going forward?

24  Mr. Beck?

25          MR. BECK:  No, Your Honor.

1          THE COURT:  All right.  Mr. Moser?

2          MR. MOSER:  No, Your Honor.  Thank you.

3          THE COURT:  All right.  So I'm just going to do an EO

4     or a minutes from today saying after this discussion, with

5     agreement of the parties, the pending, I think there were two

6     motions, right?  There's a -- Mr. Beck filed one and Mr. Moser

7     filed one.

8          MR. MOSER:  Yes.

9          THE COURT:  Cross-motion.  Those are denied by

10    agreement of the parties as moot, without prejudice to

11    refiling.  And then I'll sort of set forth a little bit of what

12    we discussed here today and agreed to here today.  And I think

13    I will be in a much better place and with much fuller

14    information to go forward, you know, afterwards.

15          I do have some questions that if we were going forward

16    today I would ask, but I don't think it appropriate to ask

17    those now because if we're going to have further briefing we'll

18    just wait for that if I -- you know, we'll have oral argument

19    on those -- that at that time, okay?

20          All right.  Anything else then from your perspective,

21    Mr. Beck?

22          MR. STAMBOULIEH:  Your Honor, I'm sorry to -- to --

23          MR. BECK:  I'm sorry.  No, Your Honor.

24          MR. STAMBOULIEH:  I just had a quick procedural

25    question, Your Honor.  Can you hear me?

```
 1              THE COURT:  Yes.
 2              MR. STAMBOULIEH:  We have previously dismissed the
 3    City and County.  I would assume in the amended complaint we
 4    would drop them as a party, correct, Your Honor?
 5              THE COURT:  I think that's right.  Right.
 6              MR. STAMBOULIEH:  Okay.  Thank you, Your Honor.
 7              THE COURT:  Right.  And I'm not real sure how that
 8    impacts the relief you're seeking, Mr. Beck.  You know, so that
 9    also is a little bit of the uncertainty I have.  And there may
10    be no overlap there at all, but, you know, you sort of say
11    we've settled and then you have a footnote and saying, yeah,
12    but they're not doing the job they're supposed to do.  So I
13    don't know where all that sits, you know.  I don't know what to
14    do with that.  If it's just you venting or it's meant to be
15    something, I'm not sure.
16              So you can think about all that and you have two weeks
17    to sort of amend without HPD or the City and County in the case
18    is fine.
19              I assume you agree with that, Mr. Moser?
20              MR. MOSER:  Yes, Your Honor.
21              THE COURT:  All right.  Anything further from you
22    then, Mr. Moser?
23              MR. MOSER:  No.  Thank you very much, Your Honor.
24              THE COURT:  All right.  Well, let me thank all of you
25    because I do appreciate the cooperation and it seems like we're
```

1   all agreeing on one thing, which is we want to get this case

2   briefed up correctly with the best information possible, both

3   on the law and the facts, to get a ruling that will take into

4   account as much as I have on the table.  So I appreciate it.

5   Okay?

6            Tammy, we are in recess.  Okay.  Thank you all.

7            MR. BECK:  Have a good day, Your Honor.

8            (The proceedings concluded at 10:18 a.m.,

9   October 19, 2020.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE

 2

 3          I, CYNTHIA FAZIO, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing pages is a

 6   complete, true, and correct transcript of the stenographically

 7   reported proceedings held in the above-entitled matter and that

 8   the transcript page format is in conformance with the

 9   regulations of the Judicial Conference of the United States.

10          DATED at Honolulu, Hawaii, September 30, 2021.

11

12

13                         /s/ Cynthia Fazio
                           CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25
```